## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

Civil Action No.    15-cv-4958

REZAC LIVESTOCK COMMISSION CO., INC.

    Plaintiff,

v.

PINNACLE BANK; and DINSDALE BROS., INC.,

    Defendants.

_____

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER OR STAY
_____

Defendant Dinsdale Bros., Inc., submits this Memorandum in support of its Motion to Dismiss Amended[1] Complaint or, Alternatively, Transfer or Stay, stating as follows:

### STATEMENT OF THE NATURE OF THE MATTER BEFORE THE COURT

This Motion should be granted on two basic considerations:  (1) the location and possession of the **"Livestock"** on which Rezac Livestock Commission Co. bases its claims against Dinsdale Bros.; and (2) the timing of the filing of this lawsuit.  Dinsdale Bros. does not possess the Livestock, which are being fed and cared for in Colorado by Pacific Land and Cattle, LLC dba D&D Feedlot West (**"D&D"**).  D&D continues incurring significant expenses to feed and care for the Livestock, and D&D has an agister's lien claim on the Livestock that is superior to the claim of any other person, including Rezac.

---

[1] After Dinsdale Bros. filed its Motion to Dismiss or, Alternatively, Transfer or Stay (Doc. 3), Rezac filed its First Amended Complaint (Doc. 6), removing claims for replevin and injunction. The Amended Complaint does not change the fundamental nature of the claims asserted in this case, *i.e.* claims that require D&D as a party and with substantially the same issues as the First Filed Case.

But Rezac also claims an interest in the Livestock and, on October 12, 2015, Rezac sent a letter from Missouri to D&D in Colorado claiming to be the Livestock's seller and demanding the Livestock's return.  The letter did not threaten litigation in Missouri, Kansas, Colorado, or anywhere else.  So, D&D did not know if Rezac planned to allow D&D to continue incurring these significant expenses until the Livestock are fat, and only then file a lawsuit in Colorado for the Livestock's return.  Rather than continue incurring expenses at risk, D&D, accompanied by Dinsdale Bros., commenced a Colorado action currently captioned <u>Dinsdale Bros., Inc. and Pacific Land and Cattle, LLC dba D&D Feedlot West v. Rezac Livestock Commission Company</u>, Civil Action No. 15-CV-2422-REB-KLM, United States District Court, District of Colorado (the **"First Filed Case"**).  After Dinsdale Bros. and D&D filed the First Filed Case in Colorado, Rezac filed this dueling lawsuit here.  But D&D is not subject to process in Kansas and Rezac did not include D&D as a party here.

D&D's absence from this lawsuit dooms the claims against Dinsdale Bros.  D&D is an indispensable party that possesses the Livestock and holds a superior lien on the Livestock and its proceeds.  The claims against Dinsdale Bros. cannot be resolved without D&D, which means they cannot be resolved here at all.  In addition to amounting to an empty endeavor, proceeding with the claims against Dinsdale Bros. will severely and unavoidably prejudice D&D, Dinsdale Bros., Pinnacle Bank, and Rezac.  Rule 19's considerations compel a dismissal of these claims.

The well-established first-to-file rule also compels a dismissal.  The First Filed Case chronologically precedes the claims against Dinsdale Bros. here, involves substantially similar parties and the same fundamental issues:  the Livestock's ownership, disposition, and value.  If not dismissed, the claims against Dinsdale Bros. should be transferred to the District of Colorado

under the first-to-file rule and 28 U.S.C. § 1404(a). Otherwise, the Court should stay those claims and let the District of Colorado complete proceedings in the First Filed Case.

## STATEMENT OF THE FACTS

The following facts are supported by Affidavit of Jerry Nickel of D&D (**"Nickel Aff."**), the Complaint filed in the First Filed Case, a copy of which is attached as Exhibit 1, and the later-filed First Amended Complaint in this lawsuit.

1. Dinsdale Bros. purchases feeder cattle to feed and to resell them to a packer when the cattle are fat. Complaint, ¶ 6.

2. D&D owns and operates feedlots in Colorado. D&D feeds cattle pursuant to feeding contracts and D&D is paid for the feed and care of cattle as itemized in regular feed bills (the **"Feed Bills"**). Nickel Aff., ¶ 4.

3. Dinsdale Bros. contracts with D&D for the feed and care of Dinsdale Brothers' cattle as itemized in regular Feed Bills. Complaint, ¶ 7.

4. In September 2015 Dinsdale Bros. purchased the Livestock, 668 head of cattle, from Leonard Cattle in Nebraska. The Livestock are called the "Cattle" in the Complaint. Complaint, ¶ 10.

5. Dinsdale Bros., Inc., placed the Livestock at D&D's feedlots in Ilif, Colorado, and Crook, Colorado. Dinsdale Bros. owes D&D regular Feed Bills for the Livestock's feed and care. Id., ¶ 11; Nickel Aff., ¶ 6.

6. D&D has a senior agister's lien pursuant to Colorado Revised Statutes § 38-20-203 for the Livestock's ongoing feed and care in the amount of its ongoing Feed Bills which have not been paid. Nickel Aff., ¶ 7

7. D&D's agister's lien is superior to all other claims to the Livestock, including Rezac's claims in this lawsuit. Id. ¶ 8.

8. D&D will not release the Livestock unless and until its agister's lien claim is satisfied and resolved in Colorado by its customer, Dinsdale Bros. Id. ¶ 9.

9. On October 12, 2015, a law firm from Missouri sent a letter to D&D in Colorado claiming that Rezac Livestock Commission, Inc., was the Livestock's seller and demanding the the Livestock's return to Rezac. Nothing in this letter indicated that Rezac intended to file suit in Kansas. Id. ¶ 10 & Exhibit 1.

10. The Colorado Agister's Lien Act, governs D&D's agister's lien and limits agister's lien foreclosure actions to

> the county or district court of the county or city and county in which:
> (I) The contract between the lienor and the owner of the livestock was entered into;
> (II) The owner resided at the time the foreclosure action commenced; or
> (III) The livestock are located.

Colorado Revised Statutes § 38-20-205. Id. ¶ 11.

11. Again, D&D is incurring significant ongoing expenses for the Livestock's feed and care. When Rezac made its October 12, 2015 demand from Missouri, D&D did not know if Rezac planned to allow D&D to continue incurring these expenses until the Livestock are fat, and only then file a lawsuit in Colorado for the Livestock's return. Id. ¶ 12.

12. Rather than continue to incur these significant feed and care expenses at risk, D&D commenced the First Filed Case in Logan County, Colorado (where the Livestock are located), which has now been removed to the United States District Court for the District of Colorado. Id. ¶ 13. The District Court in the First Filed Case has entered an Order setting a scheduling and planning conference in that Case, a copy of which is attached as Exhibit 2.

4

13. D&D commenced the First Filed Case with Dinsdale Bros. as its co-Plaintiff and the claims in this lawsuit against Dinsdale Bros. concern the same property, claims, and relief as the claims asserted in the First Filed Case. Id. ¶ 14.

14. The Livestock were delivered to D&D in Colorado. D&D has continuously fed and cared for the Livestock in Colorado. No part of D&D's involvement or dealings concerning the Livestock have occurred in Kansas. Id. ¶ 15.

15. All the individuals with knowledge of the Livestock's delivery to D&D reside or work in Colorado. None of these individuals reside or work in Kansas. Id. ¶ 16.

16. All of the documents concerning D&D's possession, feed, and care of the Livestock are in Colorado. None of these documents are in Kansas. Id. ¶ 17.

17. D&D does not conduct business in Kansas, nor is it authorized to do so, nor has D&D appointed an agent for service of process in Kansas. Id. ¶¶ 18-19.

18. D&D does not own or lease any real or personal property in Kansas, or maintain any offices in Kansas or maintain any bank accounts in Kansas. Id. ¶¶ 20-21.

19. D&D does not maintain any telephone or facsimile listings in Kansas or produce any advertisements targeted to Kansas. Id. ¶¶ 22-23.

20. D&D has never paid or owed income taxes to Kansas. Id. ¶ 24.

21. Based on the above stated facts, D&D will not accept service of process in the above-captioned lawsuit, or any action concerning the Livestock venued in Kansas. D&D is not subject to personal jurisdiction in Kansas and will challenge any effort by Rezac to assert claims against D&D in Kansas. Id. ¶ 25.

22. In their claims in the First Filed Case, Dinsdale Bros. and D&D seek judgments to resolve the competing claims to the Livestock and D&D's agister's lien. In its claims against Dinsdale Bros., Rezac claims that "Rezac is entitled to immediate possession of the Livestock as

rightful owner" and asserts claims based on Dinsdale Bros.' alleged refusal to return the Livestock.  Complaint, ¶¶ 10-28; First Amended Complaint, ¶¶ 29-30, 38-44.

## STATEMENT OF THE QUESTIONS PRESENTED

1. Does D&D's status as an indispensable non-party that cannot be joined here necessitate dismissal of claims against Dinsdale Bros.?

2. Does the first-to-file rule necessitate dismissal of claims against Dinsdale Bros. in favor of the First Filed Case?

3. If not dismissed, does the first-to-file rule and 28 U.S.C. § 1404(a) necessitate a transfer of claims against Dinsdale Bros. to the District of Colorado?

4. If not dismissed or transferred, does judicial economy, convenience, and justice necessitate a stay of claims against Dinsdale Bros. pending the First Filed Case's resolution?

## ARGUMENT

### I. THE COURT SHOULD DISMISS THE CLAIMS AGAINST DINSDALE BROS. UNDER RULE 19(b)

D&D, the essential player in the Livestock's disposition (and thus in the outcome of Rezac's claims against Dinsdale Bros.), is irreversibly absent here, compelling dismissal under Rule 19(b).  "Generally, when multiple parties claim ownership interests in the same property . . . all potential claimants must be joined to provide complete relief and protect the interests of the absent parties" or the case must be dismissed.  Cross Timbers Oil v. Rosel Energy, 167 F.R.D. 457, 460 (D. Kan. 1996)(dismissing for failure to join indispensable party).  So, "Rule 19 provides a mechanism for joining persons necessary for the just adjudication of a dispute, where feasible, and where it is not feasible to join such persons, for dismissing the case."  Bushnell, Inc. v. Brunton Co., 659 F. Supp.2d 1150, 1164-65 (D. Kan. 2009).

> A finding of indispensability under Fed.R.Civ.P. 19(b) has three parts. First, the court must find that a prospective party is "required to be joined" under Rule 19(a). Second, the court must determine that the required party cannot feasibly be joined. Then the court must determine, under Rule 19(b), whether the required-but-not-feasibly-joined party is so important to the action that the action cannot "in equity and good conscience" proceed in that person's absence. If that is the case, then the action "should be dismissed."

Northern Arapahoe v. Harnsberger, 697 F.3d 1272, 1278-79 (10th Cir. 2012)(citations omitted).

### A.     D&D is Required to be Joined Under Rule 19(a)

D&D's necessity cannot be understated. A person "must be joined as a party" under Rule 19(a) if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>    (i) as a practical matter impair or impede the person's ability to protect the interest; or
>    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Unlike any party here, D&D possesses the sole focus of Rezac's claim against Dinsdale Bros.: the Livestock. Rezac seeks "immediate possession of the Livestock" against a party that does not even possess the Livestock. D&D possesses the Livestock pursuant to unpaid feeding contracts and, in D&D's absence, this Court cannot accord complete relief among the existing parties.

"Rule 19, by its plain language, does not require the absent party to actually *possess* an interest; it only requires the movant to show that the absent party '*claims an interest* relating to the subject of the action.'" Potawatomi Nation v. Norton, 248 F.3d 993, 998 (10th Cir. 2001)(citation omitted; emphasis in original). D&D claims *and* possesses an interest in the sole

subject of the claims against Dinsdale Bros.  Colorado law grants D&D an agister's lien and seniority to claims by Rezac or any other claimant for D&D's ongoing feed and care of the Livestock.  See Colorado Revised Statutes § 38-20-203.  D&D will not release the Livestock unless and until its agister's lien claim is satisfied and resolved.

And that agister's lien is not a legal nicety—it represents significant costs incurred by D&D in Colorado.  In bringing this lawsuit in Kansas, Rezac seeks a free ride on D&D's back.  And that is not the only way Rezac's claims against Dinsdale Bros. impair or impede D&D's ability to protect its interest.  D&D must foreclose its agister's lien in Colorado, which cannot occur if the Livestock are hijacked to Kansas.  See Colorado Revised Statutes § 38-20-205.  Meanwhile, D&D's Colorado claims subject both Dinsdale Bros. and Rezac to double, multiple, or otherwise inconsistent obligations.  Under these circumstances, this Court can readily find the first element of indispensability.

### B.    D&D Cannot Feasibly be Joined

Rezac prompted the First Filed Case by threatening D&D in Colorado then left D&D out of this lawsuit, a seemingly puzzling tact explained by an undeniable fact:  D&D is not subject to service of process or jurisdiction in Kansas.  Joinder "is not feasible" when "the record contains no evidence that [the absent party] is subject to service of process."  Bushnell, 659 F. Supp.2d at 1165.  Here there is ample evidence that D&D **is not** subject to service of process.

As a general matter D&D has no presence in Kansas.  D&D conducts no business in Kansas and has no appointed an agent for service of process in Kansas.  D&D has no real or personal property or offices in Kansas.  D&D maintains no bank accounts or telephone or

8

facsimile listings in Kansas. D&D produces no advertisements or promotions specifically targeted to Kansas. And D&D has never paid or owed income taxes to Kansas.

And, unlike Rezac's purposeful direction into Colorado, no part of D&D's involvement or dealings concerning the Livestock have occurred in Kansas. The Livestock were delivered to D&D in Colorado. D&D has continuously fed and cared for the Livestock in Colorado. D&D cannot be feasibly joined here.

### C. D&D is so Important that Claims Against Dinsdale Bros. Cannot in Equity and Good Conscience Proceed in D&D's Absence

Proceeding with claims against Dinsdale Bros. would amount to a hollow and unavoidably prejudicial exercise.

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>     (A) protective provisions in the judgment;
>     (B) shaping the relief; or
>     (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). These "'four factors are not rigid, technical tests, but rather guides to the overarching equity and good conscience determination.'" Davis v. U.S., 343 F.3d 1282, 1289 (10th Cir. 2003)(citation omitted). And the "standards set out in Rule 19 for assessing whether an absent party is indispensable are to be applied 'in a practical and pragmatic but equitable manner.'" Symes v. Harris, 472 F.3d 754, 760 (10th Cir. 2006)(citation omitted).

The first factor "'considers the need to protect absent persons from litigation adversely affecting their interests and the need to protect those who are parties from the threat of multiple actions.'" Thompson v. Jiffy Lube, 505 F. Supp.2d 907, 918 (D. Kan. 2007). As detailed above, a judgment here will prejudice D&D *and* Dinsdale Bros. *and* Rezac.

D&D's possession of the Livestock would be decided outside the state where D&D and the Livestock are located. After honoring its obligation to feed and care for the Livestock, D&D would face a possible judgment that robs D&D of expenditures associated with that care and feeding. D&D's agister's lien would be absent from such a judgment, even though Colorado— the state where D&D took possession of and cares for the Livestock—mandates the seniority of that lien. Meanwhile, Dinsdale Bros. faces Rezac's claim to be "entitled to immediate possession of the Livestock" that Dinsdale Bros. does not possess. Correspondingly, Rezac seeks a proxy judgment that is impractical to the point of unenforceability. And Pinnacle, a stranger to these issues, will be forced to endure litigation over these issues. A judgment rendered D&D's absence will severely prejudice D&D and the existing parties.

And, under the second factor, there is no judgment magic that can transport the Livestock away from a Colorado non-party to Kansas or undo the Colorado General Assembly's grant of an agister's lien. This lawsuit concerns property held by a non-party and seeks commands that Dinsdale Bros. cannot fulfill. Third,

> Rule 19(b)'s third factor is not intended to address the adequacy of the judgment from the plaintiff's point of view. Rather, the factor is intended to address the adequacy of the dispute's resolution. The concern underlying this factor is not the plaintiff's interest "but that of the courts and the public in complete, consistent, and efficient settlement of controversies," that is, the "public stake in settling disputes by wholes, whenever possible."

Davis, 343 F.3d at 1293 (citation omitted).  The idea that a judgment concerning the Livestock rendered in the absence of the person holding the Livestock itself and a lien on the Livestock is preposterous.  A complete, consistent, and efficient resolution should occur in the state of the Livestock and its possessor and lienholder and the First Filed Case:  Colorado.

Finally, the First Filed Case provides a completely adequate remedy upon dismissal of for nonjoinder.  In fact, that Case involves all the correct parties and none of the legal and practical obstacles presented here.  The Court should dismiss the claims against Dinsdale Bros.

## II. THE COURT SHOULD DISMISS THE CLAIMS AGAINST DINSDALE BROS. UNDER THE FIRST-TO-FILE RULE

The First Filed Case is where Rezac's claims against Dinsdale Bros. belong.  "The Tenth Circuit applies the first-to-file rule, which 'permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court.'"  Roderick Revocable Living Trust v. XTO Energy, 679 F. Supp.2d 1287, 1296 (D. Kan. 2010)(citing Tenth Circuit cases).  "The first-to-file rule is a 'well-established doctrine that encourages comity among federal courts of equal rank.'"  Id. (citation omitted).  The rule "'normally serves the purpose of promoting efficiency well and should not be disregarded lightly.'"  Id. (citation omitted).  In Roderick, Judge Marten granted a defendant's motion to dismiss under the first-to-file rule and comprehensively detailed the rule's application in the Tenth Circuit and this District.  See id. at 1296-98.  Among the rule's facets are the following:

- "In determining whether the first-to-file rule applies, the court should examine the chronology of the actions, the similarity of the parties involved, and the similarity of the issues at stake";

- "The parties only need be substantially similar for the rule to apply";[2] and

- The rule applies even when the moving party "seeks a partial dismissal" and the entirety of the second-filed case need not be dismissed.

Id.  Under these considerations, the claims against Dinsdale Bros. should be dismissed.

The chronology is simple:  the First Filed Case was filed before this lawsuit.  And the parties are more than substantially similar.  As to claims against Dinsdale Bros. the parties are identical with the addition of D&D, an indispensable party, in the First Filed Case where the issues should be decided.  Those issues concern the Livestock's disposition and proceeds and the propriety of transactions involving the Livestock and the issues in the two cases are substantially similar.  Courts do not lightly disregard the first-to-file rule and this Court should not do so here.  This Court should decline jurisdiction in favor of the Colorado District Court and dismiss the claims against Dinsdale Bros.[3]

### III.     ALTERNATIVELY, THE COURT SHOULD SEVER AND TRANSFER CLAIMS AGAINST DINSDALE TO THE DISTRICT OF COLORADO

Under first-to-file rule, "'the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy.'"  Roderick, 679 F. Supp.2d at 1297 (citation omitted).  And "[f]or the convenience of parties and witnesses, in the

---

[2] See Ed Tobergte Assocs. v. Zide Sport Shop, 83 F. Supp.2d 1197, 1198 (D. Kan. 1999); Graphic Tech. v. McDonald's Operators Assn., 2000 WL 1920034, at *1 n. 2 (D. Kan. 2000).

[3] The Roderick court noted cases from other jurisdictions in which the first-to-file rule may be denied under certain circumstances, but also noted that these cases were limited to "extraordinary circumstances" where "a plaintiff has stolen a march to race to the courthouse door."  Id. at 1298.  No such extraordinary circumstances exist here.  As explained in the Nickel Affidavit, the First Filed Case's genesis was D&D's desire to avoid incurring feed and care expenses at risk.  Rezac had sent a letter from Missouri threatening D&D in Colorado, with no mention of a potential lawsuit in Kansas.  D&D, accompanied by Dinsdale Bros., sought to protect its interest, not to steal a race to the courthouse.

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). And, in doing so, this Court may sever and transfer the claims against Dinsdale Bros. while leaving the separate claims against Pinnacle Bank for resolution here. See Fed. R. Civ. P. 42(b). If it does not dismiss the claims against Dinsdale Bros., then the Court should order such a separation and transfer.

The Livestock's presence in Colorado alone compels a transfer to Colorado. Any relief by any party concerning the Livestock's disposition and proceeds will be infinitely easier to effectuate in Colorado. D&D's presence in Colorado alone also compels a transfer to Colorado. The Colorado District Court routinely deals with Colorado statutes like those governing D&D's agister's lien. All the individuals with knowledge of the Livestock's delivery to D&D reside or work in Colorado. None of them reside or work in Kansas. All the documents concerning D&D's possession, feeding, and care of the Livestock are in Colorado. None of them are in Kansas. Absent a dismissal, efficiency, judicial economy, convenience, and the interest of justice all warrant a transfer of the claims against Dinsdale Bros. to the District of Colorado.

## IV. IF NOT DISMISSED OR TRANSFERRED, CLAIMS AGAINST DINSDALE BROS. SHOULD BE STAYED

If the second district court declines to enforce the first-to-file rule, then "the *preference* is for the court of first-filing to decide the application of the rule." Roderick, 679 F. Supp.2d at 1296. See also Johnson v. Pfizer, 2004 WL 2898076 at *2 (D. Kan. 2004).[4] In such cases, "[i]t

---

[4] Rezac has filed competing motions to dismiss or transfer the First Filed Case in Colorado. Those motions will be opposed using the same points and authorities raised here. But Rezac's motion tactic underscores the conclusion that, if this Court elects not to dismiss or transfer under Rule 19 or out of comity to the Colorado District Court's pre-established jurisdiction, then this Court should stay proceedings here while the Colorado District Court decides the issues.

13

is well settled that a district court has the power to stay the proceedings before it, as an inherent part of the court's power to control its docket." Barton Solvents v. Sw. Petro–Chem, 836 F. Supp. 757, 763 (D. Kan. 1993). While Rule 19 warrants dismissal, and the first-to-file rule and 28 U.S.C. § 1404(a) warrant a dismissal or transfer, if the Court does not adopt those remedies it should stay the claims against Dinsdale Bros. until the District Court in Colorado cand decide the issues between Rezac and Dinsdale Bros.

## **CONCLUSION**

The circumstances presented here are what Rule 19 and the first-to-file rule were made for. There is simply no reason for secondary and duplicative and inefficient and impractical litigation to proceed here. The Court should grant Dinsdale Bros.' Motion.

Dated: November 30, 2015.

                SNELL & WILMER L.L.P.

By: *s/ Jason B. Brinkley*
Jason B. Brinkley, #24585
John O'Brien *Admitted Pro Hac Vice*
Scott C. Sandberg *Admitted Pro Hac Vice*
1200 17th Street, Suite 1900
Denver, Colorado 80202
***Attorney for Defendant Dinsdale Bros., Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2015, a copy of the foregoing was served via email on the following:

Robert M. Thompson
Michelle M. Masoner
Stephanie C. Bradshaw
Bryan Cave LLP
1200 Main Street, Suite 3800
Kansas City, Missouri 64105
Telephone:  816-374-3200
Facsimile:  816-374-3300
rmthompson@bryancave.com; michelle.masoner@bryancave.com
stephanie.bradshaw@bryancave.com
*Attorneys for Rezac Livestock Commission Co., Inc.*

*s/Pamela Thede*
for Snell & Wilmer L.L.P.

23001771