IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

REZAC LIVESTOCK COMMISSION CO. INC.

        Plaintiff,

v.

PINNACLE BANK AND DINSDALE BROS., INC.

        Defendants.

Case No.: 5:15-cv-4958-DDC-KGS

**DEFENDANT PINNACLE BANK'S MEMORANDUM BRIEF IN SUPPORT OF MOTION TO DISMISS**

This case arises out of the apparent insolvency of a cattle buyer, Defendant Charles D. Leonard ("Leonard"). The Plaintiff, Rezac Livestock Commission Co., Inc. ("Rezac Livestock") asserts that it sold cattle to Leonard for Dinsdale Bros., but was not paid for them. Rezac Livestock has not sued Leonard in this case, even though he was the person with whom Rezac contracted for the cattle sale. Apparently looking for a deeper pocket than Leonard's, Rezac Livestock has claimed Pinnacle Bank is responsible for Leonard's debt. However its claims are not valid, as a matter of law.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a motion to dismiss the claim/action may be filed where a pleading fails to state a claim on which relief can be granted. The court may grant the motion if the Complaint fails "to state a claim to relief that is plausible on its face." Robbins v. Oklahoma, 519 F. 3d 1242 (10th Cir. 2008) citing Bell Atlantic Corp. v. Twombley, 550 U.S. 554, 127 S. Ct. 1955 (2007). Even if the court accepts Rezac Livestock's factual allegations as true and draws all reasonable inferences in favor of Rezac Livestock, the Amended Complaint does not state a claim for which relief can be granted against Pinnacle Bank.

Pinnacle Bank served merely as the depository bank for Leonard's cattle transactions—a relationship which does not result in bank liability. Accordingly, Rezac Livestock's Complaint should be dismissed as to Pinnacle Bank.

## ARGUMENTS AND AUTHORITIES

**I. Count III of the Complaint (Conversion) Does Not Lie Against Pinnacle Bank.**

    **A.    Plaintiff's Allegations as to the Leonard Transaction.**

In Count III (the only claim alleged against Pinnacle Bank), Rezac Livestock asserts Pinnacle Bank is liable for the purchase price of the cattle for having converted money that was in Leonard's checking account. Pinnacle Bank is headquartered in Nebraska. Leonard, its account customer, is a Nebraska resident. The legal effect of what occurred with respect to Leonard's account is therefore most likely governed by Nebraska law. But as between Nebraska law and Kansas law, it makes little or no difference as to the pending motion. As defined by Kansas as well as Nebraska courts, the tort of conversion is a distinct act of dominion wrongfully asserted over another's <u>goods or chattels</u> in denial of or inconsistent with that person's rights. <u>Carmichael v. Halstead Nursing Center</u>, 237 Kan. 495, 701 P. 2d 934 (1985); <u>Temmen v. Kent Brown Chevrolet</u>, 227 Kan. 50, 605 P. 2d 95 (1980). <u>United General Title Insurance Company v. Malone</u>, 289 Neb. 1006, 858 N.W. 2d 196 (2015). In order to maintain an action for conversion, the plaintiff must establish a right to immediate possession of the property at the time of the alleged conversion. <u>Malone</u>, 289 Neb. 1006, 858 N.W. 2d 196.

In its Amended Complaint, Rezac Livestock alleges Leonard, as agent for Dinsdale Bros., bought 668 head of cattle at auction, and that in payment of that purchase, Leonard presented Rezac Livestock with a check for $980,361.45. (Amended Complaint at ¶14 and 15). However, Pinnacle Bank did not honor the check. (Complaint, ¶ 27 and 28).

2

Rezac Livestock asserts that after buying the cattle, Dinsdale Bros. paid Leonard for them with funds wired to Leonard's bank account at Pinnacle Bank. (Complaint at ¶ 19 and 20). Finally, Rezac Livestock asserts Pinnacle Bank knew Dinsdale Bros.' funds that were wired into Leonard's account were intended for Rezac Livestock. (Complaint at ¶25 and 26).

**B.     A Bank Account is a Debt Between the Bank and its Customer.  It is Therefore Intangible Property and Not Subject to a Conversion Claim.**

Money deposited in a general bank account is not a tangible asset. The funds are not segregated or physically maintained in a particular place. Rather, after deposit of funds in a bank account, *those funds cease to be the money of the depositor and they become the bank's money*. The depositor does not own the funds, but rather becomes a creditor of the bank to extent of that deposit. "When the checks were deposited, a creditor/debtor relationship was created between the account holder and the bank." Farm Bureau Mutual Insurance v. Carmody, 32 Kan.App.2d 754, 760, 88 P.3d 1250, 1255 (2004). See also Moore v. State Bank of Burden, 240 Kan. 382, 386, 729 P.2d 1205 (1986), cert. denied 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987); Glass v. Nebraska St. Bank, 175 Neb. 673, 122 N.W. 2d 882 (1963). Peter Kiewit & Sons, Inc. v. Douglas County, 172 Neb. 710, 111 N.W. 2d 734 (1961). The courts recognize the foundation of the relationship between a bank and its customer is the bank's agreement to pay out the customer's money on his or her order; the bank's relation to the depositor is that of debtor and creditor. Carmody, 32 Kan. App.2d 754, 88 P.3d 1250. Maddox v. First Westroads Bank, 199 Neb. 81, 256 N.W. 2d 647 (1977). In a general deposit account, title to the money deposited passes to the bank upon deposit. Citizens St. Bank of Petersburg v. Worden, 95 Neb. 53, 144 N.W. 1064 (1914). One reputable treatise states the principle of law this way:

> The foundation of the relationship between bank and customer is the bank's agreement to pay out the customer's money according to the customer's order. Although one might think of the bank as the bailee

>of the depositor's money, that would be wrong.  The bank has no obligation to keep one depositor's money segregated from another's; rather the law regards the bank's relation to its depositor as a debtor-creditor relation, with the customer as the creditor and the bank as the debtor.

White and Summers, Uniform Commercial Code, 886 (6th Ed. 2010).

It follows that the funds a bank customer claims are in his or her checking account are in fact not money or funds at all, but rather a debt owed by the bank.  As such, they are intangible property that is not subject to a conversion action.  "An action will not lie for conversion of a mere debt or chose in action.  Hence, where there is no obligation to return identical money, but only a relationship of debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor." Temmen v. Kent Brown Chevrolet, 227 Kan. 45, 50, 605 P.2d 95, 99 (1980) (citing 18 Am.Jur.2d, Conversion § 10;  Baker, Administrator v. Brial, 185 Kan. 322, 341 P.2d 987 (1959); Free v. Elberson et al., 157 Mont. 424, 486 P.2d 857 (1971))(additional citations omitted).  This rule of law is logical, given the definition of conversion and nature of funds deposited in a bank account.  Title to the funds Leonard deposited in his account passed to Pinnacle Bank upon their deposit.   Pinnacle Bank cannot be said to have "converted" them because it owned the funds.  Pinnacle Bank was exercising dominion and control over its own property.  Simply retaining what one owns is not conversion.

Another treatise explains it this way:

>A positive demand deposit account has not traditionally been considered "property" of the depositor in the sense that he "owns" the funds on deposit.  The balance in the account is simply a reflection of the debtor-creditor relationship at any one time.  Nothing in Article 4 [of the UCC] changes this traditional view.

Clark,  The Law of Bank Deposits and Collections, §3.01[1] (2015).

Moreover, when a deposit account is designated as a general account, and is not tagged as a special or custodial account, the funds in the account do not "belong" to the payees of checks just because those payees sold goods, the resale of which generated the funds in the account. Bailey, Brady on Bank Checks: The Law of Bank Checks, §18.12[2] (2009). It is well recognized in both Kansas and Nebraska that the relationship between a general depositor and his or her bank is that of creditor and debtor, and money deposited, unless segregated into a special account and designated to be kept separate, becomes the property of the bank. Chilson v. Capital Bank of Miami, 237 Kan. 442, 444, 701 P.2d 903 (1985). Therefore, unless intended to remain separate, money deposited in a bank ordinarily cannot be the subject of an action for conversion. E.g., Baker, Administrator v. Brial, 185 Kan. 322, 341 P.2d 987 (1959); Annot., 44 A.L.R.2d 927 § 7(c), p. 943. The presumption is that a deposit account is general and not special. Glass v. Nebraska State Bank, 175 Neb. 673, 677, 122 N.W. 2d 882 (1963); Miracle Hills Centre L.P. v. Nebraska National Bank of Omaha, 230 Neb. 899, 434 N.W. 2d 304 (1989). In this case, Plaintiff has not alleged the Leonard account was a special account, and such an allegation would be incorrect. Therefore, the payee on a check is not entitled to particular "funds" from such an account. The payee gets funds only if the check they receive is honored.

This case is no different than the situation where a wage-earner deposits a paycheck into his or her bank account. That deposit does not mean that the funds "belong" to the electric company that is one of several creditors who may be owed a payment by the wage-earner. If the wage-earner fails to pay the electric bill, or writes a bad check that does not clear, the electric company does not have a claim for that payment against the wage-earner's bank. If the electric company did have such a claim, banks would be, in essence, responsible for every debt their depositors incur but fail to pay.

5

Rezac Livestock appears to allege that the common ownership between Dinsdale Bros. and Pinnacle Bank requires a different result than would otherwise be the case. Rezac Livestock asserts Pinnacle Bank "knew" that a wire transfer from Dinsdale Bros. to Leonard's account at Pinnacle Bank "belonged" to Rezac. (Amended Complaint ¶23 and 27). But Pinnacle Bank's responsibility is to honor checks and other withdrawals that may be properly payable, for as long as funds are available. When funds run out, as they did here, Pinnacle Bank is not required to honor insufficient funds checks.

## CONCLUSION

Plaintiff seeks to blame Pinnacle Bank for its customers failure to pay for cattle, but banks are not liable for such events in most circumstances. The Plaintiff misunderstands the nature of a bank account and the funds on deposit. The account is merely a debt between Pinnacle Bank and its customer, Leonard. The funds in the account did not belong to Plaintiff or any other creditor. Stated another way, in this instance, Pinnacle Bank has no obligations that run to the customer of its customer. Pinnacle Bank's responsibility is to accept the deposit of good funds and pay them out according to the account owner's direction. Therefore, the court should dismiss this case, before the parties spend tens of thousands of dollars attempting to support a legal theory that will not survive.

Respectfully Submitted,

s/Timothy A. Shultz
Timothy A. Shultz, KS #16060
GOODELL, STRATTON, EDMONDS & PALMER, LLP
515 S. Kansas Ave.
Topeka, KS 66603
Phone: 785-233-0593
Fax:  785-233-8870
tshultz@gseplaw.com
**ATTORNEYS FOR PINNACLE BANK**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 7th day of December, 2015, a true and correct copy of the above and foregoing **MEMORANDUM BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** was served via the Court's Electronic Case Filing System, on

    Michelle M. Masoner
    Robert M. Thompson
    Stephanie C. Bradshaw
    Bryan Cave, LLP
    1200 Main St., Suite 3800
    Kansas City, MO

    Jason B. Brinkley
    John O'Brien
    Snell and Wilmer, LLP
    1200 Seventeenth St., Suite 1900
    Denver, CO 80202.

                                                     s/Timothy A. Shultz