IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **REZAC LIVESTOCK COMMISSION** ) | |
| **CO., INC.** ) | |
| ) | **Case No.:  5:15-cv-04958-DDC-KGS** |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | |
| **PINNACLE BANK, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

### MEMORANDUM IN OPPOSITION TO DINSDALE BROS., INC.'S
### MOTION TO DISMISS, OR ALTERNATIVELY, TRANSFER OR STAY

Rezac Livestock Commission Co., Inc. ("Rezac") opposes the motion to dismiss filed by Defendant Dinsdale Bros., Inc. ("Dinsdale") [ECF 15], because (1) Dinsdale's affiliated company is not a necessary party; (2) even if it was a necessary party, which it is not, Pacific Edge Land and Cattle LLC d/b/a D&D Feedlot West ("D&D") could seek to intervene in this action under Rule 24, and (3) the first-filed rule has no application in this case.

### FACTUAL BACKGROUND

This case presents a Uniform Commercial Code dispute over whether Dinsdale, as purchaser, and co-Defendant Pinnacle Bank, as secured lender, acted in good faith when they procured 668 head of cattle from Rezac without remitting the $1 million in sale proceeds to Rezac.  On September 29, 2015, Dinsdale sent its agent, Charles Leonard, into Kansas to purchase cattle on its behalf. [Complaint, ¶¶ 10-14.]  Dinsdale and Pinnacle Bank are both owned and operated by the Dinsdale family. [Complaint, ¶¶ 21-22.]  Dinsdale and Pinnacle Bank were both in contact with Leonard and both Dinsdale and Pinnacle Bank knew Leonard was engaged by Dinsdale to purchase cattle.  [Complaint, ¶¶ 23-27.]  Dinsdale and Pinnacle Bank, through common

directors from the same family and actual notice, allowed and facilitated Leonard's purchase of 668 head of cattle for Dinsdale then intercepted the payment to Rezac as it passed through Leonard's checking account at Pinnacle Bank.  [Complaint, ¶¶ 24-28.]  Dinsdale received 668 head of cattle, and Pinnacle Bank retained the purchase price.  [Id.]  Rezac has lost almost $1 million. [Complaint, ¶¶ 14, 30, 31.]

Nonparty and would-be-intervener D&D purportedly claims an interest in the cattle in the form of an agister's lien based on an unpaid feed contract with its sister-corporation, Dinsdale. [Motion to Dismiss, ECF 17.]  Dinsdale placed the cattle in its affiliated-company D&D's feed lots.  [ECF 16, ¶ 6.] Dinsdale owes D&D feed bills for the cattle under a contract between D&D and Dinsdale.  [ECF 16, ¶ 7.] D&D is not mentioned in Rezac's First Amended Complaint because Rezac is not making a claim against D&D.  [ECF 6.]

## PROCEDURAL BACKGROUND

On October 12, 2015, Rezac made demand for reclamation of the cattle.  [Complaint, ¶ 29].  Dinsdale and D&D responded by immediately filing a Complaint for Declaratory Judgment in Logan County, Colorado, on October 21, 2015 ("Colorado Action").  The Colorado Action seeks a declaration that Dinsdale owns the cattle, and D&D has an agister's lien in the same cattle.  [ECF 17-1.] The Complaint does not seek affirmative relief from Rezac.  [Id.] Unknown to Rezac that Dinsdale had made this anticipatory filing, Rezac filed its Petition for breach of contract, reclamation, and conversion against Dinsdale and Pinnacle Bank in Pottawatomie County, Kansas on October 22, 2015 – just 25 hours after the Colorado Action. Both actions have since been removed to federal court.  Rezac filed a Motion to Dismiss or Stay the Colorado Action, showing why Colorado does not have jurisdiction over Rezac, and showing why the Colorado court should abstain from hearing an anticipatory declaratory action filed in

2

bad faith.  That Motion is attached as **Exhibit A**, and is incorporated herein by reference.  On November 13, 2015, Rezac filed an Amended Complaint in this action seeking only damages from Dinsdale and Pinnacle Bank for the value of the cattle.  [ECF 6.]

## ARGUMENT

### I.    MOTION TO DISMISS STANDARD.

When reviewing a motion to dismiss, the standard is well settled; the Court must accept the allegations set forth in the complaint as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009).  Also, all reasonable inferences derived from those facts are viewed in the light most favorable to the plaintiff, and the pleadings must be liberally construed.  Archuleta v. Wagner, 523 F.3d 1278, 1283 (10th Cir. 2008).  A motion to dismiss, as opposed to a summary judgment motion, is determined based on the four corners of the complaint.  Thunder Basin Coal Co. v. Tuco, Inc., 156 F.R.D. 665, 673 (D. Wyo. 1994) *aff'd sub nom.* Thunder Basin Coal Co. v. Sw. Pub. Serv. Co., 104 F.3d 1205 (10th Cir. 1997).

### II.   D&D IS NOT AN INDISPENSABLE PARTY.

The Motion should be denied because all necessary parties are before the Court.  Dinsdale claims its affiliated feed lot owner, D&D, is an indispensable party because the cattle are being fed in its lots, and D&D claims an agister's lien.  [Motion, ECF 17, p. 1.]  D&D's purported claim is based on Dinsdale's failure to pay its bills.  [ECF 16, ¶¶ 6, 7, 9.]  In addition to failing to show a claim between D&D and Rezac, Dinsdale fails to show that D&D cannot intervene in this action even if it did have a claim.  Furthermore, Dinsdale fails to show that Rezac's claims for breach of contract or conversion, which relate solely to recovering monetary damages for the value of the cattle wrongfully taken by Dinsdale, cannot be completely resolved as between

Rezac and Dinsdale.  Dinsdale has not shown how the disposition of this action will have any impact whatsoever on D&D, let alone prejudice its substantive rights.

### A. D&D May Seek to Intervene Under Rule 24.

A party making a claim does not have to be added as a defendant under Rule 19; it may seek intervention as a matter of right or permissive intervention under Rule 24.  Thunder Basin Coal, 104 F.3d at 1211.  Personal jurisdiction is not a bar to a plaintiff-intervenor pursuing a claim.  Id.  In this case, a nonparty and would-be intervenor D&D, apparently refusing to submit to this Court's jurisdiction, nonetheless appears before this Court to argue that this case, to which it is not a party, should be dismissed, because it is not a party.  [Affidavit, ECF 16.]  D&D claims it is in possession of the cattle and "will not release the Livestock unless and until its agister's lien claim is satisfied and resolved in Colorado *by [its] customer, Dinsdale Bros*."  [ECF 16, ¶ 9 (Emphasis added.)]  Yet, D&D apparently refuses to bring any claim in Kansas.  D&D's decision does not deprive Rezac of its causes of action against Dinsdale and Pinnacle Bank as a matter of well-settled Tenth Circuit precedent.

If a nonparty is capable of intervening, then the nonparty cannot be considered indispensable under Rule 19(b).  Thunder Basin Coal, 104 F.3d at 1211.  The *Thunder Basin* rule precludes dismissal if D&D is entitled to intervene under Rule 24.  Lansing Trade Grp., LLC v. OceanConnect, LLC, No. 12-2090-JTM, 2012 WL 2449514, at *5 (D. Kan. June 26, 2012).

D&D's affidavit is a checklist of elements for a motion to intervene as a matter of right under Rule 24.  To intervene in a case as a matter of right, the nonparty must show (1) an interest in the subject matter of the litigation; (2) the interest may be impaired as a result of the litigation; and (3) the interest is not adequately protected by the existing parties.  Fed. R. Civ. P. 24(a).  Alternatively, a nonparty may be allowed to join the case through permissive intervention if it

has a claim or defense that shares common questions of fact or law with the main action.  Fed. R. Civ. P. 24(b)(1)(B); Lansing Trade Grp., 2012 WL 2449514, at *5.

By its affidavit, D&D claims,[1] (1) an interest in the cattle in the form of an agister's lien [ECF 16, ¶ 7]; (2) its interest may be impaired as a result of the litigation [ECF 16, ¶ 8]; and (3) Dinsdale does not adequately protect its interests because Dinsdale is not paying its feed bills. [ECF 16, ¶¶ 6, 7.]

*Thunder Basin* is directly on point and controlling authority that Dinsdale is not entitled to dismissal of the complaint under Rule 12(b)(7) for Rezac's failure to join D&D.  In *Thunder Basin*, the so-called "indispensable party" would not intervene because it did not want jurisdiction in Texas, and the defendant did not want to implead the "indispensable party" for the same reason.  Thunder Basin, 104 F.3d at 1212.  As in *Thunder Basin*, Dinsdale's failure to implead D&D and D&D's failure to intervene belies their collective claim that D&D is indispensable under Rule 19(b).  Dinsdale is not entitled to dismissal because D&D has knowledge of this suit and a procedural mechanism to protect its rights.  If it fails to do so, D&D's decision does not deprive Rezac of its claims against Dinsdale and Pinnacle Bank.  Id.

### B.  D&D is not a necessary party.

This Court need not decide whether D&D is a necessary party under Rule 19(a) because D&D is not an indispensable party under Rule 19(b).  Whether a party is indispensable is determined by considering the factors set forth in Rule 19. Salt Lake Tribune Pub. Co., LLC v. AT & T Corp., 320 F.3d 1081, 1096 (10th Cir. 2003). The analysis has two parts: (1) a

---

[1] Rezac denies D&D's claims to the extent they purport to assert an agister's lien against Rezac. See Colo. Rev. Stat. Ann. § 38-20-203 (Colorado's agister's lien provisions do not apply if the livestock has been unlawfully obtained.)  Rezac references D&D's affidavit only for purposes of responding to Dinsdale's motion to dismiss, and Rezac expressly reserves and any all rights, privileges, and defenses should D&D actually move to intervene.

1207228

determination of whether a party is necessary under Rule 19(a), and (2) a determination whether it is indispensable under Rule 19(b). Id. If the party fails either test, it is not indispensable. Thunder Basin, 104 F.3d at 1212.

D&D's affidavit shows it is not a necessary party under Rule 19(a). A party is necessary if it has such an interest in the subject matter of the action that no final judgment or decree can be entered that provides complete relief between the parties already before the Court without impairing the absent party's rights. Fed. R. Civ. P. 19(a)(1). Under this standard, joint tortfeasors are never necessary or indispensable parties. Temple v. Synthes Corp., Ltd., 498 U.S. 5, 7 (1990); Resolution Tr. Corp. v. Stone, 998 F.2d 1534, 1549 (10th Cir. 1993). Similarly, co-obligors are not necessary parties in a breach of contract action. Gall v. Brashier, 169 F.2d 704, 709 (10th Cir. 1948).

Rezac's claims are for the tort of conversion against Dinsdale and Pinnacle Bank or a breach of contract claim against Dinsdale. [ECF 6.] D&D is not a necessary party under either claim as a matter of law. Temple, 498 U.S. at 7; Gall, 169 F.2d at 709. Dinsdale attempts to frame this case as a dispute over D&D's possession of the cattle as Dinsdale's bailee. [ECF 17, p.6.] In fact, possession of the cattle is not an issue in the Amended Complaint because the replevin count has been removed, and Rezac seeks only monetary damages for the value of the cattle. [ECF 6.]. As such, this case presents a classic Uniform Commercial Code case about sale proceeds and whether Dinsdale Bros. and Pinnacle Bank can be a good faith purchasers when they acted with prior knowledge of Rezac's claims to the cattle and sale proceeds. Ranchers & Farmers Livestock Auction Co. v. Honey, 38 Colo. App. 69, 74, 552 P.2d 313, 317 (1976); Iola State Bank v. Bolan, 235 Kan. 175, 189, 679 P.2d 720, 732 (1984).

1207228

Meanwhile, D&D concedes it does not own the cattle and has represented itself as merely Dinsdale's affiliated-bailee holding and feeding the cattle under a contract with Dinsdale. [ECF 16, ¶¶ 6, 7. ("[Dinsdale] placed the Livestock with D&D…[Dinsdale] owes D&D regular Feed Bills for the Livestock's feed and care." The Feed Bills "have not been paid.")] D&D is not required to release possession of the cattle under any theory pled in the Amended Complaint. [ECF 6.] Indeed, Rezac does not need to seek relief from D&D to obtain compete relief from Dinsdale and Pinnacle Bank. Dinsdale and Pinnacle Bank can be held liable for the monetary value of the cattle without impairing D&D's purported lien in the cattle against Dinsdale, and Dinsdale fails to show otherwise.

Furthermore, Rezac did not place its cattle with D&D; Dinsdale did. [ECF 16, ¶ 6.] As such, D&D has no contract with and no claim against Rezac. D&D rights as bailee, if any, are completely dependent upon and derived from Dinsdale's right as bailor. Jensen v. Eagle Ore Co., 47 Colo. 306, 311, 107 P. 259, 261 (1910) (If the bailor has no title, the bailee can have none; for the bailor can give no better than he has.) The provisions of Colorado's agister's lien do not apply because Dinsdale unlawfully obtained the cattle. See Colo. Rev. Stat. Ann. § 38-20-203. Thus, Dinsdale's reliance on D&D's purported agister's lien based on Dinsdale's own failure to pay its feed bills is irrelevant to Rezac's claims.[2]

This Court may accord complete relief among Rezac, on the one hand, and Dinsdale and Pinnacle Bank on the other. *See e.g.,* Salt Lake Tribune, 320 F.3d at 1097. Dinsdale mistakenly assumes that the only remedy that will give complete relief is on order compelling D&D to

---

[2] The Amended Complaint does not seek to keep Dinsdale from paying its feed bills owed to D&D, and if Dinsdale really believes it owns the cattle free of Rezac's claims for conversion or breach of contract, Dinsdale has no apparent reason to fail to pay the feed bills. It certainly appears Dinsdale is withholding payment to create a claim for D&D, its affiliated company owned by at least one common individual.

7

release the cattle under K.S.A. 84-2-702.  Rezac can be awarded complete relief through a variety of remedies, for example, an action for price under K.S.A. 84-2-709, or for value of the converted property.  D&D is not a necessary party under Rule 19(a) because complete relief may be granted without D&D as a party.

### III.     THE FIRST-TO-FILE RULE DOES NOT APPLY IN THIS CASE.

Dindale's motion attempts to invoke the "first-to-file rule" which provides that "the first federal district court which obtains jurisdiction of parties and issues should have priority, and the second court should decline consideration of the action until the proceedings before the first court are terminated."  Cessna Aircraft Co. v. Brown, 348 F.2d 689, 692 (10th Cir. 1965).  Here, the first-to-file rule does not apply for four reasons.   First, no two federal courts have jurisdiction.  Second, when two lawsuits are filed within hours of one another, the first-to-file rule does not apply.  Third, issues in the Kansas and Colorado actions are substantially different.  Fourth, Dinsdale's anticipatory declaratory action falls within a well-established exception to the first-to-file rule.

#### A.     Only One Federal Court Has Jurisdiction.

Jurisdiction is a prerequisite for the first-to-file rule.  Cessna Aircraft, 348 F.2d at 692.  The District of Colorado does not have personal jurisdiction over Rezac – the only named defendant in the Colorado Action.  See Exhibit A.  Dinsdale's Colorado Action concedes, as it must, "[Rezac] cannot be found in the State of Colorado."  [ECF 17-1, ¶ 5].  Dinsdale asserts specific (as opposed to general) personal jurisdiction over Rezac based on one letter from Rezac's Missouri counsel demanding payment or return of the cattle under K.S.A. 84-2-702.

8

[ECF 17-1, ¶ 22.] [3] One demand letter does not establish personal jurisdiction over a non-resident.  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1082 (10th Cir. 2008) (A cease-and-desist letter alone cannot establish a basis for personal jurisdiction because, in the interests of fairness and justice, a patent holder should not "subject itself to personal jurisdiction in a forum *solely by informing* a party who happens to be located there of suspected infringement."); New Belgium Brewing Co., Inc. v. Travis Cty. Brewing Co., LLC, No. 15-CV-00272-MEH, 2015 WL 2106329, at *7 (D. Colo. May 1, 2015).  An act of purposeful availment giving rise to the cause of action in the forum state is required.  Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc., 148 F.3d 1355, 1361 (Fed.Cir. 1998).  The contacts must be directed at the forum state, and the cause of action must arise out of those contacts.  Kuenzle v. HTM Sport-UND Freizeitgerate AG, 102 F.3d 453, 456-57 (10th Cir. 1996).  The defendant himself must create the connection with the forum state – not the plaintiff.  Fairbrother v. Am. Monument Found., LLC, 340 F.Supp.2d 1147, 1152-53 (D. Colo. 2004).

      Dinsdale's attempt to justify personal jurisdiction based on a demand letter reveals its intent to forum shop and compel the victim, Rezac, to defend an action in the tortfeasor's choice of forum.  The tortfeasor does not get to choose the forum.  Buchanan v. Greene, No. 97-2569, 1998 WL 184448, at *3 (D. Kan. 1998) (*citing* Cunningham Bros. v. Bail, 407 F.2d 1165, 1167 (7th Cir. 1969)).  A demand letter is not a sufficient contact with Colorado for Rezac to reasonably anticipate being hailed to court there.  Colorado does not have jurisdiction over Rezac so the first-to-file rule does not apply.

---

[3]  Dinsdale failed to attach the complete Exhibit 3 letter which shows Dinsdale took possession of the cattle directly from Rezac and not Leonard.  Rezac has directed Dinsdale to this deficiency in prior pleadings, but Dinsdale has yet to correct the omission.  The complete letter is attached to Rezac's Motion to Dismiss attached hereto as Exhibit A, Rezac Decl. ¶ 9, Ex. A, p. 2.

1207228

**B.     The First-to-File Rule Does Not Apply When the Lawsuits Were Filed Almost Simultaneously.**

When two suits are filed in such close proximity to one another, the first-to-file rule is inapplicable and the timing of the filings is immaterial, being too small a concern for the court and of questionable value to determining which suit should proceed. Nacogdoches Oil & Gas, L.L.C. v. Leading Solutions, Inc., No. 06-2551-CM, 2007 WL 2402723, *3 (D. Kan. Aug. 17, 2007); Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1153 (S.D.N.Y. 1995); Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 219 (2d Cir. 1978) *abrogated on other grounds by* Pirone v. MacMillan, Inc., 894 F.2d 579 (2d Cir. 1990); cf. New England Mach., Inc. v. Conagra Pet Prods. Co., 827 F.Supp. 732, 733 (M.D. Fla. 1993) (court was unable to determine the priority of filing when the competing parties filed their suits on the same day); Topics Entm't Inc. v. Rosetta Stone Ltd., No. C09-1408RSL, 2010 WL 55900, at *4 (W.D. Wash. Jan. 4, 2010) (The fact that the suits were filed only two hours apart supports the Court's decision to depart from the first-to-file rule.); Revise Clothing, Inc. v. Levi Strauss & Co., No. 10 CIV 5843 DAB, 2010 WL 4964099, at *2 (S.D.N.Y. Dec. 6, 2010) (A court is not required to hear the first-filed action where the difference in filing date is "de minimus.").

The timing between the Kansas action and the Colorado Action is de minimus. Rezac submitted its Kansas Petition on Wednesday, October 21, 2015, by Federal Express. The only reason Dinsdale's Colorado Action beat Rezac to the courthouse was because Rezac filed by overnight delivery. The cases upon which Dinsdale relies for the first-to-file rule involve cases filed months, even years apart. In this case, the suits were filed just hours apart, so the first-to-file rule does not apply to deprive the true plaintiff, Rezac, its choice of forum. Nacogdoches, 2007 WL 2402723, at 3.

10

### C. The Issues Are Not Substantially Similar.

Additionally, the issues raised in the Colorado Action and this case involve substantially different issues, precluding dismissal of this action. When applying the first-to-file rule, the issues must be similar in that they seek like forms of relief and hinge on the outcome of the same legal/factual issues. Shannon's Rainbow, LLC v. Supernova Media, Inc., 683 F. Supp. 2d 1261, 1279 (D. Utah 2010).

As noted in the prior section, the Colorado Action seeks a declaration that Dinsdale owns the cattle, and D&D has an agister's lien in the same cattle. [ECF 17-1.] Rezac seeks only damages from Dinsdale and Pinnacle Bank under the UCC for the value of the cattle. [ECF 6.] The claims differ substantially rendering the first-to-file rule inapplicable.

### D. Dinsdale's Anticipatory Declaratory Action Falls within the Scope of an Exception to the First-to-File Rule

The Tenth Circuit disfavors anticipatory declaratory actions and finds such suits are exceptions to the first-to-file rule. Buzas Baseball, Inc. v. Bd of Regents of Univ. Sys. of Ga, 189 F.3d 477 at *3 (10th Cir. 1999); OpenLCR.com, Inc. v. Rates Tech., Inc., 112 F.Supp.2d 1223, 1231 (D. Colo. 2000); Qwest Commc'ns Int'l., Inc. v. Thomas, 52 F.Supp.2d 1200, 1206 (D. Colo. 1999) ("the presumption usually afforded the party who files first is not a mechanical rule. The mere fact that a declaratory judgment action, seeking nothing more than a declaration of the parties rights and defendant's non liability, is first-filed in a different federal court, does not entitle that action to deference."). A district court may decline to follow the first-to-file rule if a declaratory action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction. Buzas Baseball, 189 F.3d 477 at *3.

Anticipatory *declaratory* actions are particularly disfavored:

11

> Here, I find that Plaintiffs filed the instant case in direct response to Everest's demand, and an improper race-to-the-courthouse in anticipation of the filing of a breach of contract in New Jersey. This conclusion is supported by the timing of the filing, the nature of the action, and the fact that the Guaranty Agreements contain a permissive forum clause naming New Jersey as the appropriate forum. While this Court may have personal jurisdiction over the parties, and subject matter jurisdiction over the controversy, ***declaratory judgment suits are disfavored when an affirmative suit presenting the same issues is also pending***."

Sutton v. Everest Nat. Ins. Co., No. 07-cv-00425-WYD-BNB, 2007 WL 2438987 at *3 (D. Colo. Aug. 23, 2007) (emphasis added) (internal citation omitted).

Indeed, a ***declaratory suit is immediately suspect as an improper anticipatory filing*** because a declaratory action, generally speaking, is essentially the prosecution of an affirmative defense. Ontel, 899 F. Supp. at 1151; Nacogdoches, 2007 WL 2402723, at *2-3 (dismissing a declaratory judgment action, even though it was the first-filed, because it "appears to be an anticipatory filing that is more indicative of a preemptive strike than a suit for damages or equitable relief."); Buchanan, 1998 WL 184448 (Courts depart from the first-to-file rule in circumstances involving inequitable conduct, bad faith, ***anticipatory suits, or forum shopping***.)

The Colorado Action is an anticipatory declaratory action falling squarely within the first-to-file exception. The only claim for relief is for declaratory judgment. [ECF 17-1.] The Colorado Action does not raise a single affirmative cause of action. Dinsdale and D&D are related companies and only filed the Colorado Action after receiving written notice that Rezac would pursue legal remedies if Dinsdale did not honor its contractual obligations. [Complaint, ¶ 29]. Dinsdale filed the Colorado Action just hours prior to Rezac's petition. The Colorado Action is nothing more than a race to *res judicata* by means of a declaratory action when Rezac has a constitutional right to have its claims heard by a jury. Buchanan, 1998 WL 184448 at *2. A declaratory judgment action is inappropriate to simply proclaim that one party is not liable to

1207228

another. Id., at *3 (*citing* Cunningham, 407 F.2d at 1167). To compel Rezac to litigate its claims at a time and in a forum chosen by the alleged tortfeasor would be a perversion of the use of the declaratory judgment action. This Court should apply the clear and unambiguous precedent of the District of Kansas and the Tenth Circuit, find the first-to-file rule inapplicable, and deny Dinsdale's Motion to Dismiss.

## IV.   DINSDALE'S MOTION TO TRANSFER SHOULD BE DENIED.

The party moving to transfer a case pursuant to Section 1404(a) bears the burden of establishing that the existing forum is inconvenient. Cargill Meat Sols. Corp. v. Premium Beef Feeders, LLC, No. 13-CV-1168-EFM-DJW, 2014 WL 172197, at *1 (D. Kan. Jan. 15, 2014) (*citing* Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir. 1991)). "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." Id. Unless the balance of interests "is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." Id. Section 1404(a) does not allow a court to transfer a suit to a district which lacks personal jurisdiction over the defendant. Chrysler Credit, 928 F.2d at 1515.

Dinsdale bears the burden of proof. As discussed above and in the attached Exhibit A, the District of Colorado lacks personal jurisdiction over Rezac. Thus, Section 1404(a) does not allow this Court to transfer any part of this action to the District of Colorado. Moreover, Dinsdale again mistakenly bases its arguments on the location of the cattle. The location of the cattle is irrelevant to Rezac's damage claims. Lastly, the anticipatory declaratory action exception to the first-to-file rule rejects supports Rezac's assertion that its venue choice, as the true plaintiff in this dispute is entitled to deference and Dinsdale's choice is not. See, Qwest, 52 F. Supp. 2d at 1206 ("the presumption usually afforded the party who files first is not a

13

mechanical rule.  ***The mere fact that a declaratory judgment action, seeking nothing more than a declaration of the parties rights and defendant's non liability, is first-filed in a different federal court, does not entitle that action to deference***.") (emphasis added).  Rezac has chosen the appropriate forum, and Kansas law will undisputedly apply to its claims for conversion and breach of contract concerning the events of September 29, 2015, occurring in St. Marys, Kansas.  Accordingly, Rezac's choice of forum should not be disturbed based on Dinsdale's failure to pay its own related-feed-lot-owner.

## V.  DINSDALE'S MOTION TO STAY SHOULD BE DENIED.

Dinsdale fails to provide a compelling reason to stay this case.  Rule 19 and the first-to-file rule do not warrant dismissal or transfer because neither rule applies to this case.  When requesting a stay, a party "must make out a clear case of hardship or inequality in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."  Landis v. N. Am. Co., 299 U.S. 248, 255 (1936); see also, Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d 1477, 1484 (10th Cir. 1983) ("where a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others.")  A stay is within the court's discretion for the purpose of "economy of time and effort for itself, for counsel, and for litigants."  Barton Solvents, Inc. v. Sw. Petro-Chem, Inc., 836 F. Supp. 757, 763 (D. Kan. 1993).

Dinsdale's request includes no factual allegations demonstrating either the necessity of delaying these proceedings or the "hardship or inequality in being required to go forward."  In fact, hardship and inequality all fall upon Rezac.  Rezac is only located in in St. Marys, Kansas.  As Plaintiffs concede, "[Rezac] cannot be found in the State of Colorado."  [ECF 17-1, ¶ 5].

14

1207228

Rezac is the natural plaintiff in this case and should not be deprived of its choice of forum based on Dinsdale's procedural fencing. Rezac does not operate its business outside of Kansas and has not availed itself of the laws of the State of Colorado. One the other hand, Dinsdale is a multi-million dollar company that transacts business across the Midwest, including in the State of Kansas. Dinsdale is controlled by the Dinsdale family, who also own D&D and Pinnacle Bank. Pinnacle Bank has a total of over 130 locations in eight states, including Kansas, and has over $7 billion in assets. The Dinsdale family entities dwarf Rezac in terms of size, operations, and resources. The burden to litigate in Kansas is inconsequential to the Dinsdale entities. The burden on Rezac to litigate – in any state – is disproportionately greater. Accordingly, Dinsdale's motion should be denied in its entirety.

## CONCLUSION

For the reasons stated above, Rezac Livestock Commission Co., Inc. respectfully requests that this Court deny Defendant's Motion to Dismiss or, Alternatively, Transfer or Stay, and for such other relief the Court deems appropriate.

Respectfully Submitted,

**BRYAN CAVE LLP**

By: /s/ Michelle M. Masoner
    Robert M. Thompson    KS #14673
    Michelle M. Masoner    KS #18424
    Stephanie C. Bradshaw    KS #26716
    1200 Main Street, Suite 3800
    Kansas City, Missouri 64105
    Telephone:    (816) 374-3200
    Facsimile:    (816) 374-3300
    rmthompson@bryancave.com
    michelle.masoner@bryancave.com
    stephanie.bradshaw@bryancave.com

ATTORNEYS FOR
REZAC LIVESTOCK COMMISSION CO., INC.

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that the foregoing was served via the Court's Electronic Case Filing System, which served all counsel of record on December 21, 2015.

                                            /s/ Michelle M. Masoner
                                            Attorney for Plaintiff

16