IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**REZAC LIVESTOCK COMMISSION** )
    **CO., INC.** )
                                 )   **Case No.:  5:15-cv-04958-DDC-KGS**
              **Plaintiff,** )
**v.** )
                                )
**PINNACLE BANK, et al.,** )
                               )
             **Defendants.** )

## MEMORANDUM IN OPPOSITION TO PINNACLE BANK'S MOTION TO DISMISS

Rezac Livestock Commission Co., Inc. ("Rezac") opposes the motion to dismiss filed by Defendant Pinnacle Bank ("Pinnacle") [ECF 19], because a bank may not set off funds in a depositor's account when the bank knows or should know that the funds being set off belong to a third party.  <u>Iola State Bank v. Bolan</u>, 235 Kan. 175, 189, 679 P.2d 720, 732 (1984). Rezac alleges Pinnacle knew the funds wired to its bank belonged to Rezac, and Rezac alleges the funds were identifiable as a wire coming from Pinnacle's related company and co-Defendant Dinsdale Bros., Inc. ("Dinsdale").  Rezac has stated a claim for conversion against Pinnacle under *Iola State Bank*.  The Court should deny Pinnacle's motion.

### FACTUAL BACKGROUND

This case presents a Uniform Commercial Code dispute over whether Dinsdale, as purchaser, and co-Defendant Pinnacle, as secured lender, acted in good faith when they procured 668 head of cattle from Rezac without remitting the $1 million in sale proceeds to Rezac.  On September 29, 2015, Dinsdale sent its agent, Charles Leonard, into Kansas to purchase cattle on its behalf. [Complaint, ¶¶ 10-14.]  Dinsdale and Pinnacle are both owned and operated by the Dinsdale family. [Complaint, ¶¶ 21-22.]  Dinsdale and Pinnacle were both in contact with Leonard and both

Dinsdale and Pinnacle knew Leonard was engaged by Dinsdale to purchase cattle on Dinsdale's behalf. [Complaint, ¶¶ 23-27.] Dinsdale and Pinnacle, through common directors from the same family and actual notice, allowed and facilitated Leonard's purchase of 668 head of cattle for Dinsdale then intercepted the payment to Rezac as it passed through Leonard's checking account at Pinnacle. [Complaint, ¶¶ 24-28.] Dinsdale received 668 head of cattle, and Pinnacle retained the purchase price. [Id.] Rezac has lost almost $1 million. [Complaint, ¶¶ 14, 30, 31.]

## ARGUMENT

### I. MOTION TO DISMISS STANDARD.

When reviewing a motion to dismiss, the standard is well settled; the Court must accept the allegations set forth in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009). Also, all reasonable inferences derived from those facts are viewed in the light most favorable to the plaintiff, and the pleadings must be liberally construed. Archuleta v. Wagner, 523 F.3d 1278, 1283 (10th Cir. 2008). Courts disfavor motions to dismiss under Rule 12(b)(6), and granting one "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." Dias v. City & Cnty. of Denver, 567 F.3d 1169, 1178 (10th Cir. 2009) (citations omitted). "The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Near v. Crivello, 673 F. Supp. 2d 1265, 1276 (D. Kan. 2009) (*citing* Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002)).

### II. COUNT III STATES A CLAIM FOR CONVERSION AGAINST PINNACLE.

This case presents a Uniform Commercial Code case about sale proceeds and whether Dinsdale and Pinnacle can be good faith purchasers when they acted with prior knowledge of Rezac's claims to the cattle and sale proceeds. Ranchers & Farmers Livestock Auction Co. v.

Honey, 38 Colo. App. 69, 74, 552 P.2d 313, 317 (1976); Dick Hatfield Chevrolet, Inc. v. Bob Watson Motors, Inc., 238 Kan. 41, 45, 708 P.2d 494, 497 (1985).  The UCC defines good faith as honesty in fact and the observance of reasonable commercial standards of fair dealing.  K.S.A. 84-1-201(20).  Rezac's claims are based on both Dinsdale's and Pinnacle's actual knowledge that the sale of cattle was orchestrated in such a way as to give Dinsdale $1 million worth of cattle and $1 million to Pinnacle Bank.  [Complaint, ¶¶ 9-27.]  Neither Dinsdale nor Pinnacle can be good faith purchasers for value because of their actual knowledge and manipulation of Leonard's agency.  Ranchers, 552 P.2d at 317; Dick Hatfield, 238 Kan. at 46, 708 P.2d at 497.

      A.    **Rezac States a Claim under the UCC and Kansas Law as Stated in *Iola State Bank v. Bolan*.**

Where a bank knows funds deposited into one of its depositor's accounts belongs to a third party, the bank does not act in good faith when it sets off the account against the depositor's debts to the bank. Iola State Bank, 235 Kan. at 189, 679 P.2d 720.  Under such circumstances the third party has an action directly against the bank for conversion of the third party's funds from the debtor's accounts.  Id.  The law is the same in Nebraska.  Blanchette v. Keith Cty. Bank & Trust Co., 437 N.W.2d 488, 494 (1989).  "A bank is also denied the right of setoff where it has knowledge of circumstances sufficient to necessitate inquiry concerning the sums." Iola State Bank, 235 Kan. at 188, 679 P.2d 720.  Thus, either actual or constructive notice is sufficient to defeat a bank's right to setoff.

Rezac has pled a claim for conversion against Pinnacle under *Iola State Bank*.  In *Iola State Bank*, Biggs purchased and sold grain.  Iola State Bank, 235 Kan. 175, 679 P.2d 720.  The bank financed Biggs' grain operation pursuant to a promissory note and security agreements.  Biggs also maintained a checking account at the bank.  Id. The bank was concerned with the

loan, and bank examiners had criticized the Briggs loan. After harvest, checks issued by Biggs to purchase grain were presented to the bank for payment. Id. Biggs had sufficient funds in his checking account to cover all the outstanding checks; however, the bank setoff Biggs' general checking account and applied the funds against the balance due on Biggs' note. Id. In the bank's suit against Biggs for the deficiency, the farmers/sellers intervened in the suit alleging that the bank had converted their money. The Kansas Supreme Court found for the farmer/sellers based, in part, upon the bank's knowledge that the funds credited to Biggs' account belonged to the third parties. Id., 235 Kan. at 191, 679 P.2d 720. The Kansas Supreme Court further found that bank was not a good faith purchaser under the UCC and was not entitled to priority to the sale proceeds over the unpaid sellers because the bank acted with actual knowledge of their interests. Id. at 183.

In this case, Rezac has alleged the necessary elements of conversion against Pinnacle. Rezac alleges that Dinsdale hired Leonard to purchase cattle on its behalf. [Complaint, ¶ 9.] Rezac believes Dinsdale purposefully chose Leonard because Leonard was also a customer of Dinsdale's related entity, Pinnacle and owed Pinnacle a significant debt. Rezac alleges that Dinsdale wired the funds to purchase the cattle to Leonard's checking account at Pinnacle. [Complaint, ¶ 24.] Dinsdale concedes it wired the sale proceeds to Pinnacle and identified the wire as originating from Dinsdale. [ECF 17-1, p. 11.] Further, Leonard advised Pinnacle that Dinsdale would be wiring the funds to Pinnacle to pay for the cattle to Rezac. [Complaint, ¶ 25.] Roy Dinsdale, Chairman of Pinnacle and father of the president of Dinsdale, knew about the Rezac transaction. [Complaint, ¶¶ 22, 26.] Despite the fact that Pinnacle and Roy Dinsdale knew the funds delivered to Pinnacle from Dinsdale belonged to Rezac, Pinnacle set off

Leonard's account. [Complaint, ¶ 27.]  These allegations, as in *Iola State Bank*, state a claim against Pinnacle.

### B. Whether Leonard Also Has a Claim Against Pinnacle Is Not Relevant to Rezac's Claims.

Pinnacle's motion to dismiss argues that a bank's customer (in this case Leonard) cannot assert a conversion claim against the customer's own bank.  [ECF 20, pp. 3-5.]  In the cases cited by Pinnacle, a depositor has a breach of contract claim against his bank, not an action for conversion.  [Id. *citing* Moore v. State Bank of Burden, 240 Kan. 382, 386, 729 P.2d 1205 (1986), *cert. denied* 482 U.S. 906 (1987); Glass v. Nebraska St. Bank, 175 Neb. 673, 122 N.W. 2d 882 (1963).]   These cases and others cited by Pinnacle are not on point.  None of these cases involve a third-party or the bank's actual or constructive notice of the third-party's claims to the deposited funds.  *See e.g.,* Blanchette, 437 N.W.2d at 494 (A bank may not set off funds in a depositor's account in payment of the depositor's indebtedness to the bank when the bank knows or should know that the funds being set off belong to another.)

Pinnacle's motion cannot be sustained because Rezac does not challenge the general rule that the relationship between a bank and its depositors is one of creditor and debtor.  Rather, Rezac's claims are based on the exception to the rule that states when a bank has either actual or constructive notice or knowledge that a third party has an interest in the funds deposited in the depositor's account, the bank cannot apply the funds to the depositor's debt owed to the bank. Id.  Pinnacle cites *Miracle Hills*, which acknowledges the exception:  actual knowledge or notice of facts sufficient to put the bank on inquiry as to any claim of ownership of the funds is an exception the bank's setoff rights.  Miracle Hills Ctr. Ltd. P'ship v. Nebraska Nat. Bank of Omaha, 434 N.W.2d 304, 306 (1989).  In *Miracle Hills*, the plaintiff was unable to carry its

burden of proof regarding the bank's notice, but subsequently the Nebraska Supreme Court confirmed that a bank may not set off funds in a depositor's account when it knows or should know the funds belong to another.  Blanchette, 437 N.W.2d at 494.  As in *Iola State Bank*, the Nebraska bank knew about its depositor's car consignment business and knew money in the depositor's general checking account was meant for a consignor who had not been paid. Id.  Not only did the consignor-plaintiff state a claim in *Blanchette*, he prevailed, as did the sellers in *Iola State Bank* and *Dick Hatfield-Chevrolet*.

Pinnacle has failed to demonstrate a factual or legal basis for this Court to depart from the holdings of *Iola State Bank, Blanchette,* and *Dick Hatfield Chevrolet*.  Razac has stated a claim, and Pinnacle's motion should be denied.

## CONCLUSION

For the reasons stated above, Rezac Livestock Commission Co., Inc. respectfully requests that this Court deny Defendant Pinnacle Bank's Motion to Dismiss, and for such other relief the Court deems appropriate.

Respectfully Submitted,

**BRYAN CAVE LLP**

By: /s/ Michelle M. Masoner
    Robert M. Thompson    KS #14673
    Michelle M. Masoner    KS #18424
    Stephanie C. Bradshaw    KS #26716
    1200 Main Street, Suite 3800
    Kansas City, Missouri 64105
    Telephone:    (816) 374-3200
    Facsimile:    (816) 374-3300
    rmthompson@bryancave.com
    michelle.masoner@bryancave.com
    stephanie.bradshaw@bryancave.com

ATTORNEYS FOR
REZAC LIVESTOCK COMMISSION CO., INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served via the Court's Electronic Case Filing System, which served all counsel of record on December 28, 2015.

/s/ Michelle M. Masoner
Attorney for Plaintiff