IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**REZAC LIVESTOCK COMMISSION COMPANY, INC.,**

　　Plaintiff,

v.

**DINSDALE BROTHERS, INC.,**

　　Defendant.

Case No. 15-cv-04958-DDC-KGS

## MEMORANDUM AND ORDER

　　Rezac Livestock Commission Company, Inc. ("Rezac") has sued Pinnacle Bank and Dinsdale Brothers, Inc. ("Dinsdale"). Rezac's First Amended Complaint asserts a contract claim against Dinsdale and conversion claims against Dinsdale and Pinnacle Bank. Doc. 6. On August 26, 2016, the court granted Pinnacle Bank's motion to dismiss the only claim against it, so Pinnacle Bank was dismissed from this action.[1] Doc. 30.

　　In general terms, Rezac seeks to recover nearly $1 million for cattle that it claims it sold Dinsdale in September 2015. This matter comes before the court on Dinsdale's Motion to Dismiss Amended Complaint or, Alternatively, Transfer or Stay (Doc. 15). In its motion, Dinsdale asks the court to dismiss Rezac's First Amended Complaint for failing to join an indispensable party under Federal Rule of Civil Procedure 19 and for violating the first-to-file rule. Alternatively, Dinsdale asks the court to transfer the case to the United States District Court for the District of Colorado where another case between Dinsdale and Rezac is pending. Dinsdale asserts that the first-to-file rule and 28 U.S.C. § 1404(a) support such a result. And if

---

[1] Rezac filed a motion to reconsider the court's order dismissing Pinnacle Bank. Doc. 31. That motion is pending.

the court decides not to dismiss or transfer, Dinsdale asks to stay this case until the action pending in the District of Colorado is resolved.

Rezac filed a response opposing the motion (Doc. 24), and Dinsdale submitted a reply (Doc. 27).  After reviewing the parties' arguments, the court grants Dinsdale's motion in part and denies it in part, as explained below.

## **Background**

Because Dinsdale brings this motion under Federal Rule of Civil Procedure 12(b)(7), 28 U.S.C. § 1404(a), and the first-to-file rule, the court takes the controlling facts from Rezac's First Amended Complaint ("Complaint"), affidavits submitted by Dinsdale, and other information submitted by the parties.[2]

The Sale

Rezac is a Kansas corporation who sells cattle in St. Marys, Kansas.[3]  Defendant Dinsdale is a Nebraska corporation who buys and sells cattle.  At some point, Dinsdale hired Charles Leonard of Leonard Cattle Company to purchase cattle for Dinsdale.  On September 29, 2015, Mr. Leonard bought 668 head of cattle for Dinsdale from Rezac.  Altogether, the 668 head cost $980,361.

---

[2] *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1359 (3d ed. 1998), Westlaw (database updated Aug. 2016) ("In reviewing a Rule 12(b)(7) motion, a court must accept all factual allegations in the complaint as true and draw inferences in favor of the non-moving party." (footnotes omitted)); *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994) (explaining that affidavits and extra-pleading information may be considered on a Rule 12(b)(7) motion); *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1296–98 (D. Kan. 2010) (referencing pleadings, parties' arguments, and proceedings in another court when considering the first-to-file rule); *Boxercraft Inc. v. Spirit Clothing, Inc.*, No. 1:14-cv-684-RLV, 2014 WL 12061536, at *2 (N.D. Ga. June 10, 2014) (noting that the court considered "parties['] pleadings including the various exhibits attached to the parties' pleadings as well as" the parties' briefing in arriving at its decision on the first-to-file rule); *Aurora Bank, FSB v. Paramount Residential Mortg. Grp., Inc.*, No. 12-cv-03235-REB-BNB, 2013 WL 4079428, at *3–5 (D. Colo. Aug. 13, 2013) (considering parties' briefing on § 1404 transfer motion, and noting that "it [is] necessary to set out in [an] affidavit the substance of the evidence" the moving party relies upon (quoting *Chicago, Rock Island & Pac. R.R. Co. v. Hugh Breeding, Inc.*, 232 F.2d 584, 588 (10th Cir. 1956))).

[3] The court uses no apostrophe in St. Marys because the city of itself does not use one.

Rezac shipped the cattle to two Colorado feedlots owned by Pacific Land and Cattle, LLC dba D&D Feedlot West ("D&D"), expecting to receive payment from Mr. Leonard. Around October 1, 2015—after Rezac had shipped the cattle—Dinsdale wired funds to Pinnacle Bank to pay for the cattle. Mr. Leonard then wrote a check payable to Rezac for the full purchase price, but Mr. Leonard's bank[4] wouldn't honor the check. Rezac claims it never received payment for the cattle.

After several attempts to cash Mr. Leonard's check failed, Rezac sent a letter to D&D on October 12, 2015 attempting to reclaim the cattle. But Rezac did not succeed.

The D&D Feedlot

D&D is a Nebraska corporation with its principal place of business in Sterling, Colorado. Nickel Aff. at 1 (Doc. 16). D&D runs the feedlots where Rezac delivered the cattle. D&D feeds and cares for the cattle, but Dinsdale has not paid D&D yet. *Id.* at 2. So, D&D claims a lien, called an agistor's lien, against the cattle as security for Dinsdale's unpaid bills. *Id.* at 2. This lien is created by Colorado state law. Colo. Rev. Stat. § 38-20-203. In an affidavit submitted by Dinsdale with its motion, D&D claims that its lien is superior to all other claims against the cattle and that it will not submit to process in Kansas. Nickel Aff. at 2, 4 (Doc. 16).

The Colorado Action

From what the court can tell, D&D did not respond to Rezac's October 12, 2015 letter seeking to acquire possession of the cattle. Instead, nine days after D&D received the letter, Dinsdale and D&D filed a declaratory judgment action in Colorado state court (the "Colorado

---

[4] Mr. Leonard maintains a checking account with Pinnacle Bank, once a defendant in this lawsuit. The check Mr. Leonard wrote to Rezac was drawn on the account at that bank.

Action"), naming Rezac as the only defendant. Shortly thereafter, Rezac removed the Colorado Action to the United States District Court for the District of Colorado.[5]

The Colorado Action, a declaratory judgment action, asks the court to determine whether Dinsdale has "good title" to the cattle and whether D&D has a senior agistor's lien on the cattle. Nickel Aff. Ex. 2, at 4–5 (Doc. 16-2). D&D and Dinsdale seek no other affirmative relief from the Colorado court. As things stand today, the Colorado Action is ongoing. On August 10, 2016, a United States Magistrate Judge for the District of Colorado issued a report and recommendation urging the District Judge to dismiss the Colorado Action for lack of personal jurisdiction over Rezac. *Dinsdale Bros., Inc. v. Rezac Livestock Comm'n Co.*, No. 1:15-cv-02422-REB-KLM, ECF No. 42 (D. Colo. Aug. 10, 2016). And on August 24, 2016, Dinsdale and D&D objected to this report and recommendation. *Id.* at ECF No. 44. Dinsdale and D&D's objection is still pending before the United States District Judge assigned to the Colorado Action.

This Case

On October 22, 2015, just one day after Dinsdale and D&D filed the Colorado Action, Rezac filed this case in Kansas state court. Shortly thereafter, defendants removed the case to our court. In the Complaint, Rezac alleges breach-of-contract and conversion claims against Dinsdale and a conversion claim against Pinnacle Bank. Pinnacle Bank moved to dismiss the conversion claim against it, and, on August 26, 2016, the court granted that motion. Doc. 30. So, all that remains in this case are two claims against Dinsdale.

Count I of the Complaint here alleges that Dinsdale breached a contract with Rezac when Pinnacle Bank refused to honor Mr. Leonard's check. Rezac seeks to recover the cattle's full

---

[5] The court takes judicial notice of the parties' legal proceedings and related records in the District of Colorado. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004) (permitting judicial notice of facts in motions to dismiss); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (finding judicial notice of records of other courts appropriate if the proceedings are related).

4

sale price of $980,361 as damages for Dinsdale's breach. In Count II, Rezac alleges that Dinsdale's failure to return the cattle—though they now are in D&D's feedlots—constitutes conversion. This conversion entitles Rezac, it says, to recover at least the cattle's full sale price.

## Analysis

Dinsdale's Motion asks the court to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(7), dismiss, transfer, or stay this case under the first-to-file rule, or transfer this case to the District of Colorado under 28 U.S.C. § 1404(a). The following discussion analyzes all three requests.

### I.     Rule 12(b)(7) Motion to Dismiss:  Failure to Join an Indispensable Party

Rule 12(b)(7) allows the court to dismiss a case where the plaintiff has failed to join a party that is indispensable under Rule 19. Here, Dinsdale contends that D&D is an indispensable party, and so the court should dismiss this case.

Determining whether an absent party is indispensable is a three-part process. First, the absent party must be "required" under Rule 19(a). An absent party is required if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i)     as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). Then, if the absent party is required—in the sense that Rule 19 uses the term—the court determines whether joining the party is feasible. *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1278 (10th Cir. 2012). And last, if joining the party is not feasible,

5

the court determines whether the existing claims can, "in equity and good conscience," go forward without the absent party. Fed. R. Civ. P. 19(b). If not, the absent party is indispensable and dismissal is warranted. *N. Arapaho*, 697 F.3d at 1279.

Because Dinsdale is the proponent of this motion, it bears "the burden of producing evidence showing the nature of the interest possessed by [D&D] and that the protection of that interest will be impaired by [D&D's] absence." *Collier*, 17 F.3d at 1293 (citing *Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank*, 659 F.2d 234, 242 (D.C. Cir. 1981)). Dinsdale can meet this burden with affidavits and "other relevant extra-pleading evidence" showing that D&D at least claims an interest that is related to the subject matter of this case and that its interest would be impaired if the case proceeded without D&D. *Id.* (quoting *Martin v. Local 147, Int'l Bhd. of Painters*, 775 F. Supp. 235, 236 (N.D. Ill. 1991)); *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 998 (10th Cir. 2001). In determining whether Dinsdale has met its burden, the court exercises its discretion. *Collier*, 17 F.3d at 1293.

Dinsdale contends that D&D is an indispensable party for three reasons: (1) without D&D the court cannot grant complete relief to the parties, (2) D&D has an interest in the subject matter of this case that would be impaired if D&D is not joined, and (3) without D&D's presence as a party, Rezac and Dinsdale may be subject to multiple or inconsistent obligations. Doc. 17 at 7–8. The court concludes that D&D is not an indispensable party, and therefore denies Dinsdale's motion under Rule 12(b)(7).

### A. Dinsdale Fails to Meet Its Burden on Rezac's Breach of Contract Claim.

Dinsdale asserts that "D&D possesses the [cattle] pursuant to unpaid feeding contracts and, in D&D's absence, [the court] cannot accord complete relief to the existing parties." Doc. 17 at 7. But Dinsdale's characterization misapprehends Rezac's claim in this case. Rezac does

6

not "seek[] 'immediate possession'" of the cattle on its breach of contract claim. *Id.* Instead, Rezac merely seeks to recover money damages because Dinsdale has failed to pay for the cattle. Doc. 6 at 4–5. Resolving this claim, then, does not require possession of the cattle; the court can grant the parties complete relief without D&D's joinder.

Next, Dinsdale asserts that the agistor's lien asserted by D&D gives D&D an interest in the subject matter of Rezac's breach of contract claim. Again, Dinsdale misunderstands Rezac's claim. The subject of Rezac's breach of contract claim is Dinsdale's alleged failure to pay for the cattle—not the cattle themselves. The agistor's lien may give D&D an interest in the cattle, but the lien does not affect whether Dinsdale owes Rezac for the cattle. Rezac just seeks money damages for Dinsdale's alleged breach of contract—nothing else. Dinsdale's potential liability for money damages does not affect D&D's possession of the cattle or the lien it claims against them. So, proceeding without D&D would not impair its ability to protect its interest in the cattle.

Finally, Dinsdale asserts that proceeding without D&D would subject Dinsdale and Rezac to multiple or inconsistent obligations. Doc. 17 at 8. But Dinsdale never explains how this inconsistency might arise, so it has failed to satisfy its burden.

In sum, D&D may have an interest in the cattle whose purchase gave rise to Rezac's claim for breach of contract, but it isn't a required party to that contract claim. And because D&D is not a required party, the court need not consider the feasibility of joining D&D or whether it is an indispensable party. The court denies Dinsdale's Rule 12(b)(7) motion to dismiss Rezac's breach of contract claim.

7

### B.     Dinsdale Fails to Meet Its Burden on Rezac's Conversion Claim.

Dinsdale next asserts that "D&D possesses the [cattle] pursuant to unpaid feeding contracts and, in D&D's absence, [the court] cannot accord complete relief to the existing parties." Doc. 17 at 7. Dinsdale bases its argument on its characterization of Rezac's claim as "seek[ing] 'immediate possession of the [cattle].'" *Id.* Dinsdale's characterization, however, misrepresents Rezac's claim. Rezac does not "seek[] 'immediate possession of the [cattle].'" *See id.* Rather, Rezac alleges that it is "entitled to immediate possession" of the cattle. Doc. 6 at 5.

It is true that the right to possession of converted property is a key element of a conversion claim. *See Guernsey v. Fulmer*, 71 P. 578, 578 (Kan. 1903) ("[I]n an action for conversion, the petition must allege that at the time of the conversion the plaintiff was either in possession, or had a right to the possession, of the property converted."); *accord Barelmann v. Fox*, 478 N.W.2d 548, 558 (Neb. 1992); *Byron v. York Inv. Co.*, 296 P.2d 742, 746 (Colo. 1956). But alleging this right's existence in a conversion claim does not mean that the plaintiff seeks possession of the converted property. Indeed, conversion plaintiffs typically seek money damages equaling the property's value. 18 Am. Jur. 2d *Conversion* § 66, Westlaw (database updated Aug. 2016). Because Rezac is seeking money damages from Dinsdale—not possession of the cattle—the court can grant the parties complete relief without D&D's joinder.

Next, Dinsdale contends that D&D's agistor's lien gives it an interest that would be impaired if the case proceeded without D&D. Dinsdale states that, to protect its interest in the cattle, "D&D must foreclose its agist[o]r's lien in Colorado, which cannot occur if the [cattle] are hijacked to Kansas." Doc. 17 at 8. But again, Rezac's conversion claim here does not seek

8

possession of the cattle, so D&D's interest in possession of the cattle will not be impaired or impeded without its joinder.

Finally, Dinsdale asserts that proceeding without D&D would subject Dinsdale and Rezac to multiple or inconsistent obligations. But Dinsdale never explains how this inconsistency might arise, so it has failed to satisfy its burden.

Though D&D may have an interest in the cattle whose purchase gave rise to Rezac's conversion claim, it isn't a required party to that claim. And because D&D is not a required party, the court need not consider the feasibility of joining D&D or whether it is an indispensable party. The court denies Dinsdale's Rule 12(b)(7) motion to dismiss Rezac's conversion claim.

**II.     Motion to Dismiss, Transfer, or Stay Under the First-to-File Rule**

As an alternative to dismissal under Rule 12(b)(7), Dinsdale contends that the judicially created first-to-file rule requires the court to dismiss, transfer, or stay this case.

The first-to-file rule posits that "the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated." *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965) (citing *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961)). The rule applies when a complaint raises substantially the same issues between substantially the same parties as an action pending in another judicial district. *XTO Energy*, 679 F. Supp. 2d at 1296, 1298. If the rule applies, a court may dismiss, transfer, or stay the second-filed case. *Id.* at 1297. A second court—as Dinsdale contends our court is—can determine whether the first-to-file rule applies, and indeed must do so when presented with a motion based on it. *Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1167 (D. Okla. 2010); *see*

9

*also XTO Energy*, 679 F. Supp. 2d at 1297 (finding that a second court may determine whether the first-to-file rule applies).

The court applies this rule to Count I and Count II of the Complaint, in turn, below. *See XTO Energy*, 679 F. Supp. 2d at 1297 (explaining that courts may apply the first-to-file rule on a claim-by-claim basis).

### A.     Count I:  Breach of Contract

Rezac contests the District of Colorado's jurisdiction to hear the Colorado Action, so it is possible that the first-to-file rule does not apply to this case at all.  *See Dinsdale Bros.*, No. 1:15-cv-02422-REB-KLM, ECF No. 4 at 7–12.  But regardless of how the Colorado court decides that jurisdictional challenge, the rule does not apply to Rezac's breach of contract claim here.

Assuming, for the moment, that the District of Colorado has jurisdiction, the Colorado Action was filed first.  Dinsdale and D&D filed the Colorado Action on October 21, 2015, and Rezac filed this case one day later.  Also, the parties are substantially similar.  The Colorado Action involves one party not present in this case, but the presence of one additional party is not enough to prohibit application of the first-to-file rule.  *See Johnson v. Pfizer, Inc.*, No. 04-1178-MLB, 2004 WL 2898076, at *2 (finding the parties to be substantially similar despite the existence of one party who wasn't present in the other action).  Whether the issues in the two cases are substantially the same, however, requires more discussion.

Under the first-to-file rule, claims are substantially similar if there is "substantial overlap," making the claims "duplicative."  *XTO Energy*, 679 F. Supp. 2d at 1298 (quoting *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005)).  The Colorado Action is a declaratory judgment action seeking two separate declarations:  first, that Dinsdale has "good title" to the cattle; and second, that D&D has a senior agistor's lien against

the cattle.  Doc. 17-1 at 4–5.  Rezac bases its breach of contract claim here on Dinsdale's alleged failure to pay Rezac.  This claim for contract damages does not question the quality of Dinsdale's title to the cattle or the priority of D&D's agistor's lien.  Because Rezac's breach of contract claim does not overlap with the Colorado Action, the court finds that the first-to-file rule does not apply to that claim.  The court thus denies Dinsdale's motion to dismiss, transfer, or stay Count I of the Complaint based on the first-to-file rule.

### B.    Count II:  Conversion

Rezac's conversion claim is different, though, and that difference might matter to the first-to-file analysis.  In the Colorado Action, Dinsdale asks the District of Colorado to find that it has good title to the cattle.  Here, to prevail on its conversion claim, Rezac must prove that Dinsdale did not have the right to possession of the cattle when the purported conversion occurred.  *See Moore v. State Bank of Burden*, 729 P.2d 1205, 1210 (Kan. 1986) ("[Conversion is] the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another." (citing *Carmichael v. Halstead Nursing Ctr., Ltd.*, 701 P.2d 934, 938 (Kan. 1985))); *accord Barelmann*, 478 N.W.2d at 558; *Byron*, 296 P.2d at 745.  So, if Dinsdale has good title to the cattle, it may have a good—if not complete—defense to Rezac's conversion claim.  *See* 90 C.J.S. *Trover & Conversion* § 69, Westlaw (database updated Aug. 2016) ("It is competent and proper as a defense for a defendant . . . to claim title to the property in controversy . . . ." (footnote omitted)).  In light of this possibility, the potential exists that the Colorado Action and this case will overlap substantially.  Based on this potential overlap, the court turns to the other considerations implicated by Dinsdale's motion to dismiss, transfer, or stay Rezac's conversion claim.

When, as here, there is some question whether the first court has jurisdiction over the purportedly first-filed case, special concerns about efficiency and comity arise.  Dismissal generally is a disfavored remedy under the first-to-file rule, but it is disfavored even more when uncertainty exists whether the first court truly is the first court.  *See XTO Energy*, 679 F. Supp. 2d at 1299 (noting that courts rarely dismiss claims under the first-to-file rule).  This is so because the first court may conclude that it lacks jurisdiction over the first-filed case.  If it does, and the second court already has dismissed the second-filed case, the parties would have to start all over again, wasting the resources of the parties and the courts.  So dismissing a second-filed case while a motion to dismiss for lack of jurisdiction is pending in a first-filed case is premature and rarely the best course of action.

Transfer is disfavored also.  *Cessna*, 348 F.2d at 692.  In *Cessna*, the Tenth Circuit declined to transfer the purportedly second-filed case to the first court because doing so would "add nothing to the jurisdiction of that [court]" and if that court found that it did not have jurisdiction, the transfer merely would have added to "the knot of procedural complications" already present.  *Id.*  So in *Cessna*, the Tenth Circuit stayed the second-filed case until the first court ruled on the issue of jurisdiction.  *Id.*  District courts in our Circuit have followed *Cessna*, applying its reasoning and deciding to stay cases rather than transfer them.  *See, e.g.*, *Gage, Inc. v. Range Fuels, Inc.*, No. 09-cv-00062-WDM-MJW, 2010 WL 55493, at *3 (D. Colo. Jan. 4, 2010) (staying case until Utah court could decide whether it had jurisdiction over purported first-filed case); *Triple T Foods, Inc. v. Diversified Ingredients, Inc.*, No. 09-2334-JWL, 2009 WL 2969484, at *3 (D. Kan. Sept. 11, 2009) (noting that the first court must be given a chance to decide jurisdiction); *Ed Tobergte Assocs., Inc. v. Zide Sport Shop of Ohio, Inc.*, 83 F. Supp. 2d 1197, 1199 (D. Kan. 1999) (staying the case until the Ohio court could decide jurisdiction).

So it seems that staying a second-filed case is the preferred course of action when a question exists about whether the first court has jurisdiction over the first-filed case. With this principle in mind, the court declines Dinsdale's motion to dismiss or transfer, but grants its request to stay Rezac's conversion claim until Dinsdale notifies the court that the District of Colorado has resolved the Colorado Action.

### C. Equitable Exceptions to the First-to-File Rule

In its Response, Rezac asserts that the first-to-file rule does not apply here because of an equitable exception. This exception allows a court to treat the second-filed case as if it were filed first when the first-filed case is an anticipatory filing. Doc. 24 at 11–13. As with Dinsdale's motion to dismiss, Rezac's argument is premature. Until the District of Colorado decides the jurisdictional question, no one can tell whether the first-to-file rule even applies. Also, should the Colorado Action proceed, the court notes that Rezac's equitable-exception argument is pending before the District of Colorado[6] and "there is a preference for allowing the first-filed court to decide whether an exception applies." *Cherokee Nation*, 724 F. Supp. 2d at 1167.

Accordingly, the court denies Dinsdale's request to dismiss, transfer, or stay Count I of the Complaint under the first-to-file rule and declines to dismiss or transfer Count II. It grants, however, Dinsdale's request to stay Count II pending resolution of the Colorado Action.

### III. Motion to Transfer Under 28 U.S.C. § 1404(a)

The court construes Dinsdale's motion as seeking transfer under 28 U.S.C. § 1404(a) as well as under the first-to-file rule. *See* Doc. 17 at 12–13.

---

[6] *Dinsdale Bros.*, No. 1:15-cv-02422-REB-KLM, ECF No. 4 at 7–12. Also of note, the Magistrate Judge's report and recommendation did not address Rezac's first-to-file argument. *Dinsdale Bros.*, No. 1:15-cv-02422-REB-KLM, ECF No. 42.

Under § 1404(a), the court may transfer "any civil action to any other district or division where it might have been brought" if doing so is "[f]or the convenience of the parties and witnesses, [and is] in the interest of justice." Because Dinsdale asks the court for a transfer, it bears the burden of showing that the present forum is inconvenient. *See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010).

The court has broad discretion on motions to transfer and reviews such motions on a case-by-case basis. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). The Tenth Circuit has listed factors courts should consider when making this determination:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.* (citing *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

Dinsdale asks the court to transfer this case to the District of Colorado for three reasons. First, Dinsdale asserts that "[a]ny relief by any party concerning the [cattle's] disposition will be infinitely easier to effectuate in Colorado" and that the cattle's "presence in Colorado alone compels a transfer to Colorado." Doc. 17 at 13. As explained in Part II above, Rezac's claims here do not seek possession of the cattle. So the cattle's presence in Colorado is irrelevant. Second, Dinsdale contends that "D&D's presence in Colorado alone" is enough to require transfer. *Id.* D&D is not a party to this case, so D&D's presence in Colorado is irrelevant also. Third, Dinsdale argues that Colorado law will control all substantive question in this case, so transfer is appropriate. But Dinsdale never explains why Colorado law would control. The only

14

parties to this case are a Nebraska corporation and a Kansas corporation. Rezac sold the cattle in Kansas and suffered a financial injury in Kansas. Because Dinsdale does not explain why Colorado law should control over Nebraska or Kansas law, Dinsdale fails to support its assertion.

Because Dinsdale fails to establish that this forum is inconvenient, the court denies Dinsdale's motion to transfer under § 1404(a).

### IV. Conclusion

The court grants Dinsdale's motion in part and denies it in part. The court grants Dinsdale's request to stay Count II of the Complaint pending resolution of the Colorado Action, but denies the remainder of Dinsdale's motion for the reasons stated above.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Dinsdale's Motion to Dismiss Amended Complaint or, Alternatively, Transfer or Stay (Doc. 15) is granted in part. Count II of the Amended Complaint (Conversion Against Dinsdale Bros.) is stayed until the proceedings in the District of Colorado are concluded, or until other circumstances make relief from the stay appropriate. Dinsdale shall notify the court when the Colorado Action is resolved.

**IT IS FURTHER ORDERED BY THE COURT THAT** Dinsdale's Motion to Dismiss Amended Complaint or, Alternatively, Transfer or Stay (Doc. 15) is denied in part. Dinsdale's motion to dismiss the Amended Complaint under Rule 12(b)(7) is denied. Dinsdale's motion to dismiss, transfer, or stay Count I of the Amended Complaint (Breach of Contract Against Dinsdale Bros.) under the first-to-file rule is denied. Dinsdale's motion to transfer under 28 U.S.C. § 1404(a) is denied. Dinsdale's motion to dismiss or transfer Count II of the Amended Complaint (Conversion Against Dinsdale Bros.) under the first-to-file rule is denied without prejudice until the proceedings in the District of Colorado are terminated, or until further order of this court is appropriate.

**IT IS FURTHER ORDERED BY THE COURT THAT** Dinsdale's Motion to Dismiss or, Alternatively, Transfer or Stay (Doc. 3) is denied as moot.

**IT IS SO ORDERED.**

**Dated this 16th day of September, 2016, at Topeka, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**