IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **REZAC LIVESTOCK COMMISSION CO., INC.** | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) ) |
| **PINNACLE BANK, et al.,** | ) ) ) |
| **Defendants.** | ) |

Case No.:  5:15-cv-04958-DDC-KGS

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT DINSDALE BROS., INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR <u>FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

Rezac Livestock Commission Co., Inc. ("Rezac") opposes the motion to dismiss filed by Defendant Dinsdale Bros., Inc. ("Dinsdale") [ECF 49], because Rezac states a claim when it alleges that Dinsdale obtained a million dollars worth of cattle from Rezac, with full knowledge of Rezac's claim, without paying for them.  Accordingly, Dinsdale cannot be a good faith purchaser of the cattle.  <u>Ranchers & Farmers Livestock Auction Co. v. Honey</u>, 38 Colo. App. 69, 552 P.2d 313 (1976). Rezac states a claim and may state it in the alternative as breach of contract, conversion, and unjust enrichment.  Dinsdale's motion to dismiss implicitly concedes Rezac's Second Amended Complaint ("SAC") states a claim because Dinsdale's motion addresses a factual issue that it raised as an affirmative defense – that it was a good faith purchaser.  Dinsdale cannot prove, at the pleading stage (or at any other time), that Dinsdale was a good faith purchaser of the livestock because Dinsdale:

- chose to purchase livestock specifically from Rezac;

- sent its agent to Rezac for that sole and specific purchase;

- directed its agent to purchase a specific quantity and weight;

1244731.6

- knew the price owed to Rezac for the livestock Dinsdale ordered;

- knew that it should pay Rezac directly and not through its agent;

- knew its agent was being closely watched by Dinsdale's sister-company Pinnacle Bank as a distressed credit;

- communicated directly with its sister-company Pinnacle Bank about the status of its agent's accounts at Pinnacle Bank;

- knew in advance that Pinnacle Bank would setoff any deposits made into its agent's bank accounts; and

- obtained the livestock directly from Rezac with this knowledge and with the intent that Rezac would not be paid for the livestock.

Thus, Dinsdale acted at all times with knowledge of Rezac's claim to the livestock and cannot acquire the status of good-faith purchaser. Dinsdale's motion should be denied in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   Facts Alleged Against Defendants

Dinsdale's motion is based upon alternative facts and materially misrepresents Rezac's actual Complaint. [Dinsdale Motion ECF 49, p. 2.] An accurate summary of the SAC reveals that Dinsdale and Pinnacle Bank are both owned by the Dinsdale family. [SAC ¶¶ 20-21; Dinsdale Answer ECF 37, ¶¶ 21-22.] Dinsdale and Pinnacle Bank communicate regularly, if not daily, regarding Dinsdale's feedlot businesses, and in this instance the Rezac transaction. On September 28, 2015, Dinsdale specifically and intentionally sought out Charles D. Leonard d/b/a Leonard Cattle Company ("Leonard") for the purpose of attending a specific Rezac livestock auction in St. Marys, Kansas, on Dinsdale's behalf. [SAC at ¶¶ 9-10.] Dinsdale chose Leonard as its agent because Leonard was a longtime banking customer of Pinnacle Bank. [SAC ¶ 16.]

Because of Dinsdale's and Pinnacle Bank's close association and regular communications, Dinsdale knew Leonard was falling behind in repaying his debts to Pinnacle Bank, and Leonard's accounts at Pinnacle Bank were habitually overdrawn. [SAC ¶¶ 21, 24, 25, 26, 41.] With this knowledge, Dinsdale specifically chose Leonard and directed Leonard to purchase certain weights of cattle from Rezac. [SAC ¶ 13.] Leonard did as instructed and purchased 668 head of cattle (10 semi loads), for and on behalf of Dinsdale (the "Livestock"). [SAC at ¶ 14.] Meanwhile, Chris Dinsdale of Dinsdale communicated daily with Marc Hock at Pinnacle Bank about the status of Leonard's Pinnacle Bank accounts, the Livestock purchase in St. Marys, Kansas, and the payment owed to Rezac. [SAC ¶¶24 – 29, 96.]  Dinsdale and Hock coordinated the timing of the payment for the Rezac Livestock to go through Pinnacle Bank instead of directly to Rezac as both knew it should.  [SAC ¶¶ 28 – 32.] Once Pinnacle Bank received the funds, Pinnacle Bank setoff the funds against Leonard's accounts at the bank. [SAC ¶¶ 42 – 44.] By this scheme, Dinsdale was able to obtain the Livestock, AND Pinnacle Bank was able to seize and setoff a million dollar deposit – known to belong to Rezac – against a distressed credit at the bank.  [SAC ¶¶ 40, 96 – 100.]  Dinsdale and Pinnacle Bank conspired together in bad faith to use Leonard and Rezac to improve their own situations to Rezac's detriment.  Dinsdale's and Pinnacle Bank's conduct gives rise to Rezac's causes of action.

        **B.**     **The Procedural Quagmire that Has Stalled Justice for Rezac**

Dinsdale was the first party to preemptively file an anticipatory declaratory judgment action against Rezac in Colorado on October 21, 2015, after Rezac made a reclamation demand for the Livestock. [ECF 5-1.] Dinsdale did not have an affirmative claim, rather, Dinsdale pled an affirmative defense to its failure to pay Rezac for the Livestock [ECF 5-1, ¶ 22.] Meanwhile,

Rezac filed suit in Kansas to recover the value of the Livestock wrongfully taken. [ECF 1.] Both the Colorado action and the Kansas action were subject to motions to dismiss.

Despite two pending federal court actions, Dinsdale decided to pursue discovery against Leonard in a third court, the Nebraska bankruptcy court, alleging: "Dinsdale Bros. is a creditor of [Leonard] and has filed a proof of claim (Claim No. 14) in the amount of $1,004,361.49 in connection with 668 head of cattle purchased by Dinsdale Bros. from [Leonard] of which Rezac Livestock has challenged the Debtor's warranty of title." [Civil Action No. 15-cv-4958 (Bankr.Neb.) ECF 192, ¶ 2.] Dinsdale thereby forced Rezac to appear and participate in two separate court proceedings outside Rezac's home forum at the cost of much time and great and unnecessary expense.

The Colorado action was eventually dismissed a year later on September 19, 2016, for lack of jurisdiction over Rezac. [ECF 42.] This Court was rightly found to have jurisdiction over this dispute. Dinsdale then renewed its affirmative defense in a counterclaim in this Kansas action. [ECF 37.] Now, after thrice acknowledging this factual dispute to three different courts, Dinsdale's motion to dismiss attempts to shift the burden of proving its affirmative defense to Rezac at the pleading stage.

## MOTION TO DISMISS STANDARD

When reviewing a motion to dismiss, the standard is well settled; the Court must accept the factual allegations set forth in the complaint as true, and the factual allegations must state a plausible claim to relief. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Also, all reasonable inferences derived from those facts are viewed in the light most favorable to the plaintiff, and the pleadings must be liberally construed. <u>Archuleta v. Wagner</u>, 523 F.3d 1278, 1283 (10th Cir. 2008). Courts disfavor motions to dismiss under Rule 12(b)(6), and granting one "is a harsh

remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." Dias v. City & Cnty. of Denver, 567 F.3d 1169, 1178 (10th Cir. 2009) (citations omitted).

Fed. R. Civ. P. 8(a) states that in any pleading that sets forth a claim for relief, a party must provide "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends ..., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." These requirements ensure that the complaint "'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Res. Ctr. for Indep. Living, Inc. v. Ability Res., Inc., 534 F. Supp. 2d 1204, 1208 (D. Kan. 2008) (citation omitted).

### LAW REGARDING THE USE OF DOCUMENTS OUTSIDE THE PLEADINGS IN A RULE 12(b)(6) MOTION

Dinsdale improperly asserts that Rezac's claims should be dismissed for failure to state a claim under Rule 12(b)(6). But in essence, Dinsdale's motion asks the Court to accept its version of contested facts, which is not appropriate at this phase of the litigation. Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010). Because Dinsdale seeks dismissal based entirely on the bald assertions of counsel and matters outside the pleadings, Rezac's claims cannot be dismissed pursuant to Rule 12(b)(6). When reviewing a motion to dismiss a complaint, the court may only consider matters stated within the four corners of the complaint, and may not consider information outside of the confines of that pleading. Archuleta, 523 F.3d at 1281. If a court looks to information outside of the complaint, a motion to dismiss must be treated as a motion for summary judgment. Fed. R. Civ. P. 12; Prager v. LaFaver, 180 F.3d 1185, 1188–89 (10th Cir.

1999).  It is reversible error to consider and treat as true an assertion made in a defendant's response.  Casanova v. Ulibarri, 595 F.3d 1120, 1125 (10th Cir. 2010).

Dinsdale attempts to slide extraneous materials and exhibits in by claiming they are documents central to the complaint or public records. [Dinsdale Motion, ECF 49, p. 2.]

First, Exhibits 1, 4, and 5 are not public records.  Further, Exhibits 1, 4, and 5 are not central to the complaint, are not indisputably authentic copies, and constitute inadmissible hearsay in their presentation. *See, e.g.*, Prager, 180 F.3d at 1188–89 (documents claimed to be central to the complaint must be indisputably authentic copies to warrant an exception to Rule 12's exclusion of matters outside the complaint).  Exhibits 4 and 5 are not even Rezac's documents as falsely claimed by Dinsdale, but rather are documents produced to Rezac by third parties.  Rezac does not and cannot attest to their authenticity at this stage in the litigation.  Further, these inadmissible documents are bits and pieces of a much larger body of documentation produced regarding the September 29 auction.  By selectively choosing and mischaracterizing these documents, Dinsdale engages in contested fact pleading, and does not properly argue that the SAC fails to state a claim.  Rezac objects to Dinsdale's submission of inadmissible evidence and Dinsdale's mischaracterizations of the same.[1]

Second, Exhibits 2 and 3, while public records, are not material to Rezac's claims. Leonard's bankruptcy petition and Rezac's proof of claim are not part of the SAC.  Dinsdale also filed a proof of claim and is listed as a creditor of Leonard.  [Civil Action No. 15-cv-4958 (Bankr.Neb.) ECF 1, p. 24, 43; ECF 192, ¶ 2.] None of this is probative to this dispute, and Rezac did not plead any of these documents or their contents as providing the basis for any of its

---

[1]  The Court is requested not to consider the submission of Exhibits 1 through 5.

stated causes of action. The claims by both parties in the bankruptcy case are simply evidence of cautionary filings, depending on the outcome of this contested factual and legal dispute. Once again, Dinsdale's submission is incomplete, under-inclusive, and does not fall within the exception to the general rule that extraneous materials are not considered in a motion to dismiss.

Exhibits 1 – 5 are unauthenticated, inadmissible, under-inclusive, not part of the SAC, and cannot provide a basis for a motion to dismiss. Dinsdale's motion is exactly the type contested fact pleading that would result in reversible error should the Court consider it. The Court should not consider allegations that were not made within the four-corners of the Complaint. The Court would be well within its discretion to decline to consider the documents attached to Dinsdale's motion to dismiss. Prager, 180 F.3d at 1189. To the extent that the Court is inclined to consider the extraneous material, the Court must provide Rezac an opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12. Genuine issues of material fact permeate these claims precluding summary judgment relief at this early stage of the litigation. Moreover, Rezac should be entitled to conduct discovery into a variety of issues as permitted by Rule 56, which also precludes summary judgment on these claims.

## ARGUMENT

Rezac claims breach of contract based on Leonard's agency for Dinsdale. In the alternative, Rezac claims conversion based on Dinsdale's orchestration of the Livestock transaction which unjustly enriched both Dinsdale and Pinnacle Bank to Rezac's detriment. The SAC allegations preclude either Dinsdale or Pinnacle Bank from ever being able to prove either is a good faith purchaser. The allegations state that both Dinsdale and Pinnacle Bank knew every aspect of Leonard's transactions – so much so that Pinnacle Bank was in direct contact with Dinsdale *before* Dinsdale ever attempted to purchase the Livestock. This case involves a

conspiracy between Dinsdale and Pinnacle Bank to fill their own pockets and intentionally damage a Kansas livestock auction.

### A. Rezac States a Claim because Rezac Alleges Dinsdale Directed, Controlled and Managed the Purchase of the Livestock.

Dinsdale's motion to dismiss attempts to convince the court that there were two separate and independent transactions – one between Rezac and Leonard, and one between Leonard and Dinsdale.  Rezac alleges otherwise.

Rezac properly alleges a breach of contract claim which requires:  (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to plaintiff caused by the breach. Jones v. Culver, 329 P.3d 511 (Kan. App. 2014).

#### 1. Rezac Alleges an Auction Sales Contract with Dinsdale's Agent.

For an auction sales contract, it is long-settled that when an auction hammer falls in Kansas, and the auctioneer sells the lot to an agent, the sale may be enforced against the principal – whether or not the principal was disclosed prior to the sale. Grandi v. Thomas, 192 Kan. 741,744, 391 P.2d 35, 38 (1964). When a principal commissions a third-party as its agent to attend an auction and bid on its behalf, a special agency is created and the sale may be enforced both by and against the undisclosed principal. Id. at 745.  Dinsdale's mere denial that Leonard was its agent does not make it so. Under Kansas law, an agency relationship may exist notwithstanding a denial of the agency by the alleged principal. Appeal of Scholastic Book Clubs, Inc., 260 Kan. 528, 533, 920 P.2d 947, 951 (1996). Thus, a contract executed by an agent in his own name, but in fact on behalf of his principal, is the principal's contract, and when

discovered, the principal is liable to a third party on the contract. C. A. Karlan Furniture Co. v. Richardson, 182 Kan. 756, 324 P.2d 180 (1958).

Karlan Furniture is on point. In Karlan Furniture, the Richardsons directed Henderson to go buy a television set for them. Id. at 757. Henderson bought the set in his own name without telling Karlan Furniture that he was buying the set for the Richardsons. Id. at 758. Henderson directed the set be delivered directly to the Richardsons' home. Id. The Richardsons knew from where Henderson purchased the set because it was delivered to them in a Karlan Furniture van. Id. The court found that the Richardsons made Henderson their agent for purposes of buying the set for them, and when they paid the purchase price to Henderson, they made him their agent for the purpose of paying for the set. Id. When Henderson failed to deliver the purchase price to Karlan Furniture, the loss legally fell on the Richardsons and not on Karlan Furniture. Id. at 182.

The same facts are alleged in this case with one difference that makes Rezac's claims even stronger: Leonard told Rezac that his order was for Dinsdale before the Livestock left St. Marys, so Leonard was a disclosed agent for a disclosed principal. [SAC ¶ 11, 23.] Rezac also alleges that Dinsdale directed Leonard to attend the St. Marys auction. [SAC ¶ 10.] Rezac alleges Dinsdale directed the weight of the Livestock to be purchased. [SAC ¶ 13-14.] Rezac alleges that Dinsdale directed delivery of the Livestock direct from St. Marys to Dinsdale's feedlots. [SAC ¶ 22.][2] As in Karlan Furniture, Rezac did not release the Livestock into Leonard's possession. Id. The Livestock shipped directly from Rezac at St. Marys to Dinsdale's

---

[2] Dinsdale motion's Exhibit 4, although inadmissible and not authenticated, indicates the Livestock travelled from St. Marys directly to Dinsdale's feed lots. Leonard never had possession or entrustment of the Livestock. Rezac continues to object to the exhibit being considered for purposes of Dinsdale's motion. Even so, the exhibit undermines Dinsdale's version of the facts and further demonstrates this case should not be dismissed and is not properly briefed for summary judgment.

feed lots. [SAC ¶ 23.] Thus, whether Dinsdale was a disclosed principal or not makes no legal difference in this case. Dinsdale made Leonard its agent to purchase the Livestock and made Leonard its agent for paying the purchase price to Rezac. Dinsdale knew Rezac's claims to the Livestock before, during and after the September 29 auction so any loss is legally borne by Dinsdale. Rezac states a claim for breach of an auction sales contract.

### 2. Contractual Privity and Mere Denials of the Factual Allegations Provide No Basis for Dismissal.

Dinsdale's motion is based on a claim of lack of privity of contract and it's denial of Leonard's agency, but as previously discussed, an auction sales contract is a direct contract with the principal, and agency cannot be so easily denied. The cases cited by Dinsdale have no relevance to the facts alleged in the SAC, but their general legal precepts actually support Rezac's SAC. One case defines agency as "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Golden Rule Ins. Co. v. Tomlinson, 300 Kan. 944, 955, 335 P.3d 1178, 1188 (2014) [Dinsdale Motion, ECF 49, p. 6.] "A person manifests assent or intention through written or spoken words or other conduct." Id. Dinsdale notes that whether there is evidence of agency is a question of law, but Dinsdale fails to cite the rest of the precept that "resolution of conflicting evidence . . . is for the finder of fact." Aetna Cas. and Sur. Co. v. Hepler State Bank, 6 Kan.App.2d 543, 548, 630 P.2d 721, 726 (1981). "The weight to be given evidence and resolution of conflicts therein are functions of the trier of facts in the determination of whether there is a relationship of principal and agent. Where the existence of agency is disputed, its existence or nonexistence is ordinarily a question of fact for the jury, to be

determined upon proper instructions." <u>Golden Rule Ins.</u>, 300 Kan. at 954, 335 P.3d at 1187.  It is notable that none of Dinsdale's cases involve motions to dismiss but cases that were submitted to the fact finders.

For example, Dinsdale relies on <u>Shugar v. Antrim</u>, 177 Kan. 70, 276 P.2d 372 (1954), to claim that no agency existed between it and Leonard.  [Dinsdale Motion, ECF 49, p. 9.]  <u>Antrim</u> actually supports Rezac's position.  In this case, Antrim, which operated a wheat elevator, bought wheat on behalf of its principal, Continental, but Antrim also accepted wheat for storage that was not purchased for Continental.

<u>Antrim</u> is easily distinguished from the circumstances present here.  <u>Antrim</u> implicitly draws a distinction between wheat that was purchased by draft from Continental and the wheat that was not.  In concluding that there was no agency with respect to the wheat that was not purchased by draft by Continental, the court stated: "Continental [the principal] had no control over wheat which was not paid for by draft drawn upon it."  <u>Antrim</u> 177 Kan. at 73, 276 P.2d at 375.

To the contrary, here, Rezac has alleged numerous facts regarding Dinsdale's control over Leonard so as to support a finding of agency.  Rezac has alleged that Dinsdale directed Leonard in all aspects of one isolated transaction.  Dinsdale told Leonard where to go, when to go, what to buy and where to send it. (See SAC at ¶¶ 9, 10, 13, 14, 16, 22).   Leonard agreed and did as he was directed.  Leonard never took possession of the Livestock himself.  Rather, the Livestock was shipped directly to Dinsdale at Dinsdale's direction and, further, Rezac was told that Leonard was acting on their behalf and to ship the cattle to Dinsdale (SAC ¶¶ 11, 22).  Taking these allegations as true, the factual allegations are sufficient to find agency under Kansas law. Dinsdale's motion to dismiss the breach of contract claim should be denied.

### 3. Dinsdale's Affirmative Defense of Good Faith Purchaser Status is Premature.

The burden of proof is upon the party who claims the protection of a bona fide purchaser. Salisbury v. Barton, 63 Kan. 552, 66 P. 618, 619–20 (1901). Dinsdale, as purchaser, moves to dismiss arguing it acted in good faith when it procured 668 head of cattle from Rezac without remitting the $1 million in sale proceeds to Rezac.  Dinsdale will bear the burden to prove it acted with honesty in fact at trial, but its affirmative defense does not provide a basis to dismiss the complaint.  Dinsdale cannot be a good faith purchaser when it acted with prior knowledge of Rezac's claims to the cattle and sale proceeds as Rezac has properly alleged.  Ranchers & Farmers Livestock, 38 Colo. App. at 74, 552 P.2d at 317; Dick Hatfield Chevrolet, Inc. v. Bob Watson Motors, Inc., 238 Kan. 41, 45, 708 P.2d 494, 497 (1985); Iola State Bank v. Bolan, 235 Kan. 175, 679 P.2d 720 (1984).

### B. Rezac States Claims for Unjust Enrichment and Quantum Meruit.

Similar to its arguments regarding breach of contract, Dinsdale submits alternative facts to support dismissal of Rezac's quasi-contract claims.  Dinsdale attempts to establish, through inadmissible evidence, that it is the innocent third-party purchaser of Leonard.  These are Dinsdale's alternative facts and not the facts alleged by Rezac. To establish a quantum meruit claim against Dinsdale, Rezac alleges that it delivered material or services in good faith to the defendant, who accepted them, and that Rezac expected to be compensated for its efforts in the reasonable value of the materials provided or serviced rendered.  Brakensiek v. Shaffer, 203 Kan. 817, 821, 457 P.2d 511, 514 (1969).  Recovery under express contract for compensation and recovery for quantum meruit may be pursued in same action. Id. at 820.  To establish an unjust enrichment claim Rezac alleges: (1) a benefit conferred upon the defendant by the plaintiff;

(2) an appreciation or knowledge of the benefit by the defendant; and (3) acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.  The Superlative Grp., Inc. v. WIHO, L.L.C., No. 12-1468-JWL, 2014 WL 1385533 (D. Kan. Apr. 9, 2014).

In addition to alleging that Dinsdale chose its agent, the auction, and weight and quantities of Livestock [SAC ¶¶ 9-14], Rezac alleges Dinsdale took possession of the Livestock directly from Rezac; knew the price owed to Rezac for the Livestock; and knew it should pay Rezac directly.  [SAC ¶¶ 22-29.]  Before, during and after the September 29, 2015 auction, Dinsdale communicated directly with Pinnacle Bank about Leonard and the payment owed to Rezac. [SAC ¶¶24 – 32, 96.]  Dinsdale knew in advance that Pinnacle Bank would setoff Dinsdale's deposit, and Dinsdale thereby obtained the Livestock with advance knowledge that Rezac would not be paid.  [SAC ¶¶ 40, 96 – 100.]  Rezac states a claim when it alleges that Dinsdale accepted and retained Rezac's Livestock with advance notice of the Livestock's value and Rezac's claim to payment.  The circumstances of Dinsdale's and Pinnacle Bank's communications about the payment owed to Rezac, but never paid, makes it inequitable for Dinsdale to retain the Livestock without payment of its value.

      **C.**    **Alternative Theories of Recovery Are Allowed, and Rezac States a Claim for Conversion.**

Federal pleading rules have for a long time permitted the pursuit of alternative and inconsistent claims. *See* Campbell v. Barnett, 351 F.2d 342, 344 (10th Cir. 1965) (noting that Rule 8(d)(2) "permits a plaintiff to plead alternate, hypothetical and inconsistent claims"); *see also* Kikumura v. Osagie, 461 F.3d 1269, 1296 (10th Cir.2006), *abrogated on other grounds by* Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Boulware v. Baldwin, 545 F. App'x 725, 729

(10th Cir. 2013). To the extent this is a substantive rule, Kansas likewise permits a plaintiff to advance multiple theories of liability based either on a unitary course of conduct by a defendant or on a single legal injury. Price, Administrator v. Holmes, 198 Kan. 100, 103-04, 422 P.2d 976, 980 (1967) (plaintiff may plead causes of action in contract and in tort arising from a single transaction); Marshel Investments, Inc. v. Cohen, 6 Kan.App.2d 672, 679-80, 634 P.2d 133, 139 (1981); *see, e.g.*, Osterhaus v. Toth, 291 Kan. 759, 760, 249 P.3d 888, 892 (2011) (plaintiff brings claims under the KCPA, for fraud, and for breach of contract arising from a single transaction). A plaintiff may assert some available theories but not others. And the plaintiff may pick and choose at his or her discretion so long as the defendant has been fairly apprised of the circumstances. Golden v. Den-Mat Corp., 47 Kan. App. 2d 450, 463, 276 P.3d 773, 785 (2012).

Not all tort claims are barred by the existence of a contract. Burcham v. Unison Bancorp, Inc., 276 Kan. 393, 414, 77 P.3d 130, 145 (2003). When conduct could satisfy the elements of both a breach of contract or of an independent tort, a plaintiff may pursue both remedies. Id.; Regal Ware, Inc. v. Vita Craft Corp., 653 F. Supp. 2d 1146, 1152 (D. Kan. 2006).

Conversion is the unauthorized assumption and exercise of the right of ownership over personalty belonging to another to the exclusion of the other's rights. Carmichael v. Halstead Nursing Ctr., Ltd., 237 Kan. 495, 500, 701 P.2d 934, 938 (1985) (check proceeds are subject to a conversion claim). Rezac's SAC alleges that Dinsdale converted the Livestock without authorization, for its own use. These facts are sufficient to state a plausible cause of action against Dinsdale for conversion. To require anything more would be to require more than the liberal notice pleading of Rule 8(a). Res. Ctr. for Indep. Living, Inc., 534 F. Supp.2d at 1212–13.

The close relationship and joint scheme between Dinsdale and Pinnacle Bank is shown in Dinsdale's motion to dismiss when it mistakenly construes Count II Conversion against Dinsdale

as Count IV Conversion against Pinnacle Bank. [Dinsdale Motion ECF 49, p. 3 at ¶ 6.] In fact, Dinsdale borrows from Pinnacle Bank's prior motion to dismiss. [Compare ECF 49, p. 10 with ECF 20, p. 3-4.] However, Dinsdale's argument is misplaced. Rezac does not allege Dinsdale converted a debt as Dinsdale attempts to argue in its motion. Rezac alleges Dinsdale converted the Livestock. [SAC ¶ 52, 54, 56.] If Dinsdale cannot redeliver the Livestock, it must deliver the value of the Livestock wrongfully taken. Ranchers & Farmers Livestock Auction Co., 552 P.2d at 317. Rezac has stated a claim for conversion, and Dinsdale's motion to dismiss the conversion count should be denied.

### D. Rezac States an Unlawful Overt Act That Supports a Conspiracy.

To state a claim for civil conspiracy under Kansas law, Rezac must allege: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. Conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy. York v. Intrust Bank, N.A., 265 Kan. 271, 293, 962 P.2d 405, 422 (1998). The only element Dinsdale argues is missing is that Dinsdale claims Rezac does not state a claim for an underlying unlawful act. Conversion and civil theft support a claim for conspiracy. Res. Ctr. for Indep. Living, Inc., 534 F. Supp. 2d at 1213. Rezac has pled the commission of wrongs that give rise to four causes of action independent of the conspiracy claim.

### CONCLUSION

For the reasons stated above, Rezac Livestock Commission Co., Inc. respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety and for such other relief the Court deems appropriate.

Respectfully Submitted,

**BRYAN CAVE LLP**

By: /s/ Michelle M. Masoner
    Robert M. Thompson    KS #14673
    Michelle M. Masoner    KS #18424
    Stephanie C. Bradshaw    KS #26716
    1200 Main Street, Suite 3800
    Kansas City, Missouri 64105
    Telephone:    (816) 374-3200
    Facsimile:    (816) 374-3300
    rmthompson@bryancave.com
    michelle.masoner@bryancave.com
    stephanie.bradshaw@bryancave.com

ATTORNEYS FOR
REZAC LIVESTOCK COMMISSION CO., INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served via the Court's Electronic Case Filing System, which served all counsel of record on February 24, 2017.

/s/ Michelle M. Masoner
Attorney for Plaintiff