**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**REZAC LIVESTOCK COMMISSION CO. INC.**

**Plaintiff,**

**v.**

**PINNACLE BANK AND DINSDALE BROS., INC.**

**Defendants.**

**5:15 04958**

**DEFENDANT PINNACLE BANK'S RESISTANCE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

T. Randall Wright
of BAIRD HOLM LLP
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
Phone: 402-344-0500
rwright@bairdholm.com

and

Timothy A. Shultz
Goodell, Stratton, Edmonds & Palmer, LLP
515 S. Kansas Ave.
Topeka, KS 66603
Phone: (785) 233-0593
tshultz@gseplaw.com
**ATTORNEYS FOR**
**DEFENDANT PINNACLE BANK**

July 13, 2018

## INTRODUCTION

Plaintiff argues that even though the bank did not seize or set off the Dinsdale funds, and even though those funds did not go toward satisfaction of any prior Charles Leonard overdrafts or other bank obligations, the Bank is nevertheless liable for the bad check Leonard sent to Rezac. It's reasoning is that the Bank knew the purpose of the Dinsdale wire transfer into the Leonard account, and therefore had a duty to pay the Rezac check instead of the many other checks Leonard had written, that were presented on the account the same day. No recognized theory of law supports Plaintiff's claims.

Pinnacle Bank incorporates by reference in this response its Statement of Uncontroverted Facts as set forth in Pinnacle Bank's Memorandum in Support of its Motion for Summary Judgment (Doc. 105). Those facts are all that are necessary for the Court to deny Plaintiff's motion. But in addition, Plaintiff in its summary judgment memorandum asserts a number of facts to which the Bank will respond, because they include facts or inferences not warranted from the evidence. These will be pointed out below.

**Summary of Uncontroverted Facts from Pinnacle Bank's Memorandum in Support of Summary Judgment.**

We will not recite all the facts again. To summarize (and all facts in this portion of this Memorandum Brief are taken from Pinnacle Bank's Statement of Uncontroverted Facts in support of its Motion for Summary Judgment), Leonard used the bank account in question for all of his cattle purchases and sales, and, in addition, for personal and household expenses. One of his many transactions in 2015 was the purchase of 668 head of cattle from Rezac's auction, on September 29. Regardless of whether that purchase was as an agent for Dinsdale Bros. or not, Leonard invoiced Dinsdale Bros. reflecting a re-sale of the same cattle, and two days later, Dinsdale Bros.

paid for them with a wire to the Leonard account for slightly over a million dollars. At the time the wire was received, the account was showing a positive balance. Some 19 checks written by Leonard were presented against the account over the next two business days, and those checks resulted in exhaustion of the account balance.

Below, we point out several of the Plaintiff's asserted facts (none of which are relevant to the Bank's summary judgement argument) which are misleading or inaccurate.

**Pinnacle Bank's Responses to Plaintiff's Uncontroverted Facts.**

**Plaintiff's Asserted Fact No. 5. "Dinsdale Bros. and Pinnacle Bank are both owned by the Dinsdale Family."** To clarify, although various Dinsdale family members are owners of both companies, ownership of the two entities is not the same. John "Sid" Dinsdale testified that Pinnacle Bancorp is owned by various members of the Dinsdale Family, but Pinnacle Bancorp is not the bank, but is rather the holding company of the bank. (Depo. of John Dinsdale, Exhibit C to Plaintiff's Evidence, P. 14, line 8 -18.) Dinsdale Bros. is owned differently than Pinnacle Bancorp. It is true that the Dinsdale family that owns Dinsdale Bros. is part of the same family that owns Pinnacle Bancorp. Chris Dinsdale Dep. P. 73, lines 8-11. (Exhibit B to Plaintiff's Evidence)

**Plaintiff's Asserted Fact No. 18. Pinnacle had told Dinsdale Bros. about Leonard's overdrafts well before the Rezac transaction.** Marc Hock testified that he first talked to Chris Dinsdale about Charlie Leonard and his overdrafts in the late summer or early fall, when the bank started seeing large overdrafts in the Leonard Account. Plaintiff's Exhibit C—Marc Hock Depo. P. 99, lines 9. He did not indicate a date, nor when that date fell in relation to the Rezac transaction.

<u>Plaintiff's Asserted Fact No. 29</u>. **By 10 AM on September 30, 2015, Kimball had spoken to Roy Dinsdale, Chris Dinsdale, Steve Zey and Mark (sic) Hock about the fact that Dinsdale Bros had purchased the St. Mary's Livestock, that Leonard had written a check for the St. Mary's Livestock, that Leonard was a million dollars overdrawn on his account, and that Dinsdale Bros. had a million dollar wire it was planning to send to Leonard to pay for the St. Mary's Livestock.** This asserted fact implies that at the time the Dinsdale Bros. wire was received in the Leonard account, the account was overdrawn. However, the account statement (Exh. 2 to Kimball Decl. (Filing No. 106) reflects that the Dinsdale wire was received on October 1, and that the account was not overdrawn at the end of the prior day, nor at any time on October 1.

<u>Plaintiff's Asserted Fact No. 43</u>. **On September 30 and October 1, 2015, while Dinsdale Bros. had both the St. Marys Livestock and the sale proceeds under its control, it decided to wire the sale proceeds to Pinnacle instead of paying Rezac directly.** As reflected in the bank statements attached to the Kimball declaration, the Dinsdale Bros. wire was wired to Leonard's Account 161, at Pinnacle Bank. Depositing funds into a customer account is not the same as sending them to the bank.

<u>Plaintiff's Asserted Fact No. 45</u>. **On October 2, 2015, while Pinnacle still had control over the Dinsdale Bros. wire and after it had been told that the wire was meant for the St. Marys Livestock, Pinnacle decided to pay the St. Mary's Livestock sale proceeds to holders of others checks drawn on Leonard's account.** This asserted fact states or implies that Pinnacle Bank, rather than its customer, Leonard, decides how deposits made to a bank account are spent. The Spencer Kimball Declaration (Pinnacle Bank's Exhibit 1 in its Index of Evidence) explains that the bank automatically pays checks presented on a customer account from lowest in

amount to highest. When the Dinsdale Bros. wire came into Leonard's account on October 1, the account reflected a positive balance at the end of that day of $762,139.66. The next day, Leonard deposited an additional $570,000, but nearly $3 million in checks that Leonard had written earlier were presented to the account on October 2. After checks were honored from lowest to highest, the balance in the account was a negative $1,755,365.34. The next banking day (October 3 and 4 were weekend days), more funds came into the account, and more checks were honored, but the Rezac Check, presented on October 6, being the largest, was dishonored because the account lacked sufficient funds. (Filing No. 106, Exh. 1, Kimball Decl., ¶13 and 16.

**Plaintiff's Asserted Fact No. 50. Rezac's check for $980,361.45 was the only check Pinnacle decided to return as insufficient on October 6, 2015.** This asserted fact implies that the Bank used some criteria for returning checks other than its protocol of paying checks in order from lowest in amount to highest. There is no evidence that Pinnacle Bank decided to dishonor the Rezac check for any other reason. The Spencer Kimball Declaration (Filing No. 106, Exh. 1, Kimball Decl., ¶ 16) explains that the bank automatically pays checks presented on a customer account from lowest in amount to highest.

**Plaintiff's Asserted Fact No. 51. On October 6, 2015, Pinnacle received Leonard's check to Rezac for the payment of the St. Mary's Livestock, which Pinnacle knew Dinsdale Bros, had received, and instead of honoring the check with the available funds in Leonard's account, Pinnacle decided to pay the remaining funds in the Leonard account to holders of other checks.** Again, this asserted fact implies that the Bank used some criteria for returning checks other than its protocol of paying checks from lowest to highest. There is no evidence that Pinnacle Bank decided to dishonor the Rezac check for any other reason except that it was the highest dollar amount and the account lacked sufficient funds after all other checks were

paid. The Spencer Kimball Declaration (Filing No. 106, Exh. 1, Kimball Decl., ¶ 16) explains that the bank automatically pays checks presented on a customer account from lowest in amount to highest.

## ARGUMENTS AND AUTHORITIES

### I. The Law of the Case is that Conversion of a Bank Account is Not a Recognized Cause of Action, with two exceptions not present here---a bank set off or seizure, or a "special account."

"[T]he law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' " *United States v. Monsisvais,* 946 F.2d 114, 115 (10th Cir.1991) (quoting *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)). In the Court's Memorandum Decision dated August 26, 2016, which dismissed Plaintiff's initial Complaint (Doc. 30) the court held that a bank account cannot be the subject of an action for conversion, except in two instances: first, when the bank has *taken funds from a customer's account to pay debt owed the bank* if the bank knows (or should know) that the seized funds belong to someone else, (Doc. 30 at p. 4) citing *Iola State Bank v. Bolan*, 679 P.2d 720 (Kan. 1984); second, when funds are "segregated into a special account and designated to be kept separate," citing *Moore*, 729 P.2d at 1210. In this case, the Plaintiff appears to have conceded that no set off or seizure took place. And the facts are clear that Account 161 was not a "special account." The court's holding in this regard is the law of the case.

In response, the Plaintiff moved to amend its Complaint to assert that the Bank set off against the Leonard account. Its Second Amended Complaint alleges set off in at least five different paragraphs. (Plaintiff's Second Amended Complaint, Filing No. 46)

However, after taking the depositions of Leonard and half a dozen bank personnel, Plaintiff found that no set off occurred. Unable to prove set off or special account status, the Plaintiff has fallen back on the assertion that because the bank knew the Dinsdale funds were intended for payment of the Rezac cattle, the bank had a duty to see that Rezac was paid, even if the Dinsdale funds were spent by Leonard on other creditors. Its argument ignores the law of the case, as set forth in the Court's August 26, 2016 Order, and is unsupported by case law. Knowledge on the part of the bank, in the absence of one of the exception factors, is insufficient. Rezac cites to about a dozen cases where the bank in question had some kind of knowledge of the nature of the deposit. But upon examination, none of those cases support the claim. (Rezac Summary Judgment Brief, pp 20-22, including footnotes 3 and 4.)

**A. Eight Cases Cited by Plaintiff Involve a Bank Set Off or Seizure, which distinguishes them from this case**.

Eight of the cases Rezac cites to support its arguments are set off cases, in which the bank seized or set off funds in the account. That fact distinguishes them from this case, and as a result they do not help the Plaintiff's cause. *See*, *Emporia National Bank v. Layfeth*, 63 Kan. 17 64 P. 973, 974 (1901); *Globe Sav. Bank v. National Bank of Commerce*, 89 N.W. 1030 (Neb. 1902); *Blanchette v. Keith Cty. Bank and Trust Co*., 437 N.W. 2d 488 (Neb. 1989); *American National Bank of St. Paul v. National Indemnity Co. of Omaha,* 222 F. 2d 513 (8th Cir. 1955); *Blackwell Livestock Auction v. Community Bank of Shidler,* 864 P. 2d 12971299 (Okla. App. 1993); *Livestock Dealers, Inc. v. Security State Bank of Hedley, Texas,* 614 F. 2d 1056, 1059 (5th Cir. 1980); *Williams V. Hanston State Bank,* 140 Kan. 260, 36 P.2d 84, 86 (1934)***;*** *Drumm-Standish Commission Co. v. Farmers State Bank of Neosho Falls*, 132 Kan. 736, 297 P. 725 (1931). In each

of those cases, the bank's liability rested on the fact that it took the funds, a fact that is not present here.

**B. Five of the Cases Are Overdraft Cases, Which Similarly Distinguish Them From This Case.**

Five of the other cases cited by Plaintiff are what can be referred to as overdraft cases. In these cases, the bank applied the funds in question to a then pending overdraft on its customer's account, and according to those courts, that amounted to a taking or seizure of the funds. *Cady v. S. Omaha Nat'l Bank*, 65 N.W. 906 (Neb. 1896); *Scoby v. Bird City State Bank*, 112 Kan. 135, 211 P. 110, (1922); *Shotwell v. Sioux Falls Sav. Bank,* 147 NW 288 (S. D. 1914); *First Dakota Nat'l Bank v. First National Bank of Plainview,* 2010 WL 2557562 (D. S.D. June 22, 2010); *C & H Farm Serv. Co. of Iowa v. Farmer Sav. Bank,* 449 N.W. 866, 876-77 (Iowa 1989).

We pointed out in the Bank's summary judgment brief that because of the nature of bank accounts and the common use of provisional credits in such accounts, applying deposits to an existing overdraft is not the same as being paid on a debt, and does not constitute a set off. (See Pinnacle Bank's Memorandum in Support of Summary Judgment, pp. 19-21, and cases cited therein). As a result, the overdraft cases were, we think, improperly decided.

But more importantly, the bank statement for Account 161 clearly shows that the Dinsdale Bros. wire was not used to pay any bank overdraft. When the Dinsdale funds came to Account 161, on October 1, 2015, the account already had a positive balance. The funds were used not to repay an overdraft, but rather to pay various other checks that were presented to the bank on October 2-5. Below and continuing on the following page are excerpts from the account statement, which is part of Doc. 106 (Exh. 1 to the Kimball Declaration) which prove this point.

| | Debits | Credits | Date | Bal. |
|---|---|---|---|---|
| ****Statement Produced**** | | | Sep 30, 2015 | $276,283.84 |
| Deposit | | $29,981.39 | Oct 01, 2015 | $306,265.23 |
| Deposit | | $36,109.91 | Oct 01, 2015 | $342,375.14 |
| Deposit | | $608,242.24 | Oct 01, 2015 | $950,617.38 |
| WIRE/IN-201527400454;ORG<br>DINSDALE BROTHERS INC | | $1,004,361.49 | Oct 01, 2015 | $1,954,978.87 |
| NSF PAID ITEM(S) FEE | $32.00 | | Oct 01, 2015 | $1,954,946.87 |
| WIRE/OUT-201527400454<br>;NEBR24 INCOMING FEES | $12.00 | | Oct 01, 2015 | $1,954,934.87 |
| Check #20022 | $403,906.37 | | Oct 01, 2015 | $1,551,028.50 |
| Check #20042 | $181.95 | | Oct 01, 2015 | $1,550,846.55 |

Above, the court can see that the last balance in Account 161 on September 30 was positive in the amount of $276,283.84. The Dinsdale wire came in the next day, October 1 (see below) and at no point on October 1 was the account in overdraft or negative status. On October 1 and 2, a total of 19 checks were presented on the account. That is how the Dinsdale funds were expended—they did not satisfy an overdraft and they were not paid to the bank.

| | | | | |
|---|---|---|---|---|
| Check #19999 | $10,000.00 | | Oct 01, 2015 | $1,540,846.5 |
| Check #20024 | $187,468.04 | | Oct 01, 2015 | $1,353,378.5 |
| Check #2278 | $250,276.74 | | Oct 01, 2015 | $1,103,101.7 |
| Check #20021 | $340,962.11 | | Oct 01, 2015 | $762,139.6 |
| Deposit | | $20,214.50 | Oct 02, 2015 | $782,354.1 |
| Deposit | | $60,315.37 | Oct 02, 2015 | $842,669.5 |
| WIRE/IN-201527500268;ORG N A<br>TIMMERMAN INC;REF 15230 | | $254,874.94 | Oct 02, 2015 | $1,097,544.4 |
| WIRE/IN-201527500438;ORG TRUE<br>RANCHES | | $255,218.95 | Oct 02, 2015 | $1,352,763.4 |
| WIRE/OUT-201527500268<br>;NEBR24 INCOMING FEES | $12.00 | | Oct 02, 2015 | $1,352,751.4 |
| WIRE/OUT-201527500438<br>;NEBR24 INCOMING FEES | $12.00 | | Oct 02, 2015 | $1,352,739.4 |
| Check #20029 | $183.44 | | Oct 02, 2015 | $1,352,555.9 |
| Check #20023 | $869.51 | | Oct 02, 2015 | $1,351,686.4 |
| Check #20028 | $2,995.00 | | Oct 02, 2015 | $1,348,691.4 |
| Check #20061 | $29,000.00 | | Oct 02, 2015 | $1,319,691.4 |
| Check #20007 | $57,995.89 | | Oct 02, 2015 | $1,261,695.5 |
| Check #19996 | $70,089.31 | | Oct 02, 2015 | $1,191,606.2 |
| Check #20014 | $89,882.25 | | Oct 02, 2015 | $1,101,724.0 |
| Check #20006 | $104,696.68 | | Oct 02, 2015 | $997,027.34 |
| Check #20033 | $108,000.00 | | Oct 02, 2015 | $889,027.34 |
| Check #20005 | $264,361.51 | | Oct 02, 2015 | $624,665.83 |
| Check #20013 | $277,168.58 | | Oct 02, 2015 | $347,497.25 |
| Check #20019 | $595,560.59 | | Oct 02, 2015 | ($248,063.34) |
| Check #20026 | $1,507,302.46 | | Oct 02, 2015 | ($1,755,365.80) |

**C. Two of the Cases are "Trust" Cases in Which the Court Found that the Funds at Issue Were Actually Subject to a Trust Known To The Bank.**

The third category of cases cited by Plaintiff are trust account cases, and each of them also shows up as either an overdraft or a set off case. *American National Bank of St. Paul v. National Indemnity Co. of Omaha*, 222 F. 2d 513 (8th Cir. 1955) and *Cady v. S. Omaha Nat'l Bank*, 65 N.W. 906 (Neb. 1896). In these cases, the funds at issue were determined by the court to be trust funds, by agreement between the bank and its depositor or account holder. The bank was held liable because, knowing the trust nature of the funds, it either took them for itself, or applied them to an overdraft. In the case at bar, Rezac has neither pleaded nor proved that the funds paid by Dinsdale Bros. on the Leonard invoice were trust funds, and of course the bank did not seize or take them.

**II. Plaintiff Argues that Neither Set Off Nor Seizure of Funds Is Necessary to Hold a Bank Liable For Conversion. The Courts Consistently Disagree.**

The Plaintiff challenges the notion that conversion of a bank account is not a cognizable cause of action, but without support. The cases in both Kansas and Nebraska hold that funds deposited in a bank account become the bank's money, and the account holder merely holds a debt owed to him or her by the bank. *Farm Bureau Mutual Insurance v. Carmody*, 32 Kan.App.2d 754, 760, 88 P.3d 1250, 1255 (2004). See also *Moore v. State Bank of Burden*, 240 Kan. 382, 386, 729 P.2d 1205 (1986), cert. denied 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987); *Glass v. Nebraska St. Bank*, 175 Neb. 673, 122 N.W. 2d 882 (1963). *Peter Kiewit & Sons, Inc. v. Douglas County*, 172 Neb. 710, 111 N.W. 2d 734 (1961). It follows that a claim for conversion does not lie against a bank because, conceptually, the bank cannot convert a debt (it is not goods or personal

property) and the bank cannot convert the funds themselves because they already belong to the bank.

In *Four Circle Co-op v. Kansas State Bank and Trust*, 771 F. Supp. 1144 (D. Kan. 1991), cited in Pinnacle Bank's Summary Judgment memorandum, this court, in a case similar to this one (except that unlike this one it involved a bank set-off) ruled that the Plaintiff, which held a check from a grain buyer that had been returned due to insufficient funds in the grain buyer's account, had *no claim in conversion* against the bank on which the check was drawn. In that case, the Bank had set off against the grain buyer's account and had applied more than a million dollars from the account to that indebtedness otherwise owed to the bank prior to dishonoring the plaintiff's check.

The court discussed the nature of bank accounts and the problem with the check-holder's conversion claim. (Note that UCC 3-408 was, at that time, UCC 3-409(1) in the Kansas statutes.) In responding to an argument very similar to that made by Rezac, the court said:

> The plaintiffs urge the court to accept its argument that once the checks were issued to the plaintiffs, the funds in Fleming's [the grain buyer] account were converted from proceeds of accounts receivable (from grain buyers) into funds committed for accounts payable (to plaintiffs) in which KSBT had no interest, and that KSBT agreed to this transition in form, particularly when Fleming was "holding the money close." This argument simply ignores K.S.A. 84–3–409, which provides in pertinent part: (1) A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.

*Id.* at 1153. The Four Circle Court further noted that the payee of a check (Rezac) has no recourse against the drawee bank (Pinnacle Bank) for the dishonor of a check. *Id*. at 1153 (there

is "not one ounce of privity between the holder of a check and the drawee bank, assuming no certification and no retention beyond the midnight deadline." Nor, said the Four Circle court "can the holder sue the drawee bank for wrongful dishonor of an insolvent depositor's check just because the bank dishonored the item in order to protect its own interests."

The court rejected the check payee's claim based in part, on the inability of the check payee to show that the funds it was claiming were in the account at the time of the bank's set off. The Plaintiff here has the same problem. A review of the account statement excerpted earlier in this brief shows the Dinsdale wire funds had been expended by the time the Rezac check was presented on Leonard's account. *See also, Meyer v. Norwest Bank, Iowa*, 112 F.3d 946 (8th Cir. 1997).

**III. Rezac's Claim that the Bank and Dinsdale Bros. "Acted in Concert to Take Actions that Damaged Rezac" Lacks both Factual and Legal Substance.**

In this portion of its brief, Rezac essentially argues that three facts prove the alleged conspiracy:

1. The Bank and Dinsdale shared information that they did not share with Rezac;

2. The sharing of information was unusual;

3. The Bank and Dinsdale determined not to pay Rezac directly, and "discussed and orchestrated the handling of the St. Marys proceeds."

As we pointed out in our Summary Judgment Brief, the alleged civil conspiracy claim fails because the Bank did not commit or contribute to an actionable offense. If no conversion occurred, there can be no civil conspiracy to commit conversion. Beyond that, items one and two above do not prove or contribute to a conspiracy. We find no support for the proposition that failure to share information with a check payee amounts to or is in furtherance of a conspiracy. To the contrary, as we pointed out in our Summary Judgment Brief, a bank generally owes no duty to non-

customers. 9 C.J.S. Banks and Banking, §246 (citing *Quintero Community Assoc. v. F.D.I.C.*, 792 F. 3d 1087 (8th Cir. 2015). See also, *IBP v. Mercantile Bank of Topeka*, 6 F. Supp 2d 1258, (D. Kan. 1998) (…"nearly every court has reasoned that a bank owes no duty of care to a non-customer with whom it has no relationship.") It follows that neither the Bank nor Dinsdale owed a duty to share information with Rezac about the status of Leonard's account.

As to point number 3, the evidence recited by Plaintiff in its own version of the Uncontroverted Facts proves that the parties did not "orchestrate" the handling of the funds. One Pinnacle Banker, Marc Hock, indicated that Dinsdale Bros. might want to pay Rezac directly (See Rezac's Uncontroverted Fact No. 33: "Hock suggested Dinsdale Bros. pay Rezac directly.") But Dinsdale Bros. elected to pay Leonard--the party with which it had a contract. That is not concerted activity. It reflects a disagreement rather than agreement. Additionally, the Bank did not know when the Rezac check would be presented. The emails reflect that it thought it might be presented on September 30, or October 1, but it did not show up that day or on October 2 or 5. (See Rezac Uncontroverted Fact Nos. 35 and 40, in which the bankers indicate that they do not know when the Rezac check will be presented.) By the time it was presented (October 6) the Dinsdale wire had been received and expended. As the emails referenced by Plaintiff indicate, neither party "orchestrated" the presentment of the Rezac check. They were unable to predict when it would be presented. Since a check clears or does not clear based on the then balance in the account, the Bank could not have orchestrated matters relating to the Rezac check.

**IV. The Dinsdale Wire was Not a Special Deposit.**

On page 22 of its brief, Plaintiff argues that the Dinsdale wire was a "special deposit" which, it asserts, gets special treatment under the law. However, as pointed out in the Bank's Summary Judgment Brief, the Kansas Supreme Court describes special deposits this way: A

special deposit of money in a bank is made where moneys, such as bills in packages or specie in boxes, are entrusted to the bank, not to be used, but to be kept safely, and *specifically* returned. An ordinary bank deposit is made when a voluntary credit is taken with the bank, and for which no bank note, bill, or similar evidence of debt is given, and for which there exists a right to draw unconditionally." *Bloomheart v. Foster*, 114 Kan. 786, 221 P. 279, 280 (1923) (Emphasis added.)

In the case at bar, there was no "special deposit".  There is no evidence that Leonard gave bills in package or specie in boxes, and no evidence that he entrusted the bank to keep the Dinsdale funds segregated or specifically returned.  Rather, the Dinsdale wire was deposited in the same account he used to pay all of his business as well as personal obligations.  The Bank treated them as any other general deposit and was not asked by its customer to do otherwise.

## CONCLUSION

After the Court dismissed Plaintiff's initial Complaint, Plaintiff staked its case on one of the "exceptions" to the rule that conversion of a bank account is not a cognizable claim—where the bank sets off against the account when it knows the funds belong to another.  But no such set off occurred.  Realizing this problem with its case, Plaintiff now argues that set offs do not matter—only knowledge by the bank of the purpose of the deposit matters.   No case we are aware of goes that far.  To do so would make banks liable for their customers' bad checks simply upon notification by the account customer or a check payee of the connection between a deposit and an outstanding check.  Banks cannot be the guarantors of their customers' bad checks, and imposing liability on that basis would upend more than a century of banking law.

Respectfully submitted,

PINNACLE BANK, Defendant,

By: /s/Timothy A. Shultz
    Timothy A. Shultz
    Goodell, Stratton, Edmonds & Palmer, LLP
    515 S. Kansas Ave.
    Topeka, KS 66603
    Phone:  (785) 233-0593
    tshultz@gseplaw.com

    and

    T. Randall Wright
of    BAIRD HOLM LLP
    1700 Farnam Street, Suite 1500
    Omaha, NE  68102-2068
    Phone:  402-344-0500
    rwright@bairdholm.com
    **ATTORNEYS FOR DEFENDANT PINNACLE BANK**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 13th day of July, 2018, I electronically filed the foregoing pleading with the Clerk of the United States District Court using CM/ECF system which sent notification of such filing to the following parties:

Michelle Masoner
Robert Thompson
Bryan Cave, LLP
1200 Main St., Ste. 3800
Kansas City, MO 64105
michelle.masoner@bryancave.com
rmthompson@bryancave.com
**ATTORNEYS FOR PLAINTIFF**

Scott Sandberg
John O'Brien
Spencer Fane, LLP
1700 Lincoln St., Ste. 2000
Denver, CO 80203
ssandberg@spencerfance.com
jobrien@spencerfane.com
**ATTORNEYS FOR DEFENDANT DINSDALE BROS.**

/s/ Timothy A. Shultz