**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

Civil Action No.    15-CV-4958-DDC-KGS

REZAC LIVESTOCK COMMISSION CO., INC.

      Plaintiff,

v.

PINNACLE BANK; and DINSDALE BROS., INC.,

      Defendants.

---

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

---

Pursuant to Local Rule 56.1(b), Defendant, Dinsdale Bros., Inc. d/b/a Dinsdale Brothers, Inc. (**"Dinsdale Bros."**), submits this Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 111).

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 2

STATEMENT OF MATERIAL DISPUTED FACTS ..................................... 3

ADDITIONAL RELEVANT FACTS .............................................................. 5

ARGUMENT ....................................................................................................... 6

I.    FACTUAL DISPUTES BAR SUMMARY JUDGMENT FOR REZAC .................... 7

     A.    Rezac Misrepresents the Leonard-Dinsdale Bros. Re-Sale .................................. 7

     B.       Rezac Misrepresents Dinsdale Bros.' Relationship and Communications with Pinnacle Bank .................................................................................................... 9

     C.    Rezac Contrives Damages ................................................................................. 9

II.    REZAC LACKS LEGAL ENTITLEMENT TO SUMMARY JUDGMENT ............. 9

     A.    Dinsdale Bros. Took Good Title to the Cattle ........................................................ 9

     B.    Dinsdale Bros. was a Good Faith Purchaser for Value ...................................... 10

     C.    Rezac Cannot Meet its Burden of Proving an Agency Relationship with Leonard ............................................................................................................ 13

     D.    Rezac Cannot Meet its Burden of Proving the Elements of Conversion ........... 13

     E.    Rezac Cannot Meet its Burden of Proving the Elements of Conspiracy ............ 16

     F.    Rezac Cannot Meet its Burden of Proving Damages for any Claim .................. 17

CONCLUSION ................................................................................................. 18

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Atkins v. Heavy Petroleum Partners, 86 F. Supp.3d 1188, 1208 (D. Kan. 2015) .........................17

Bankers Trust v. U.S., 25 P.3d 877 (Kan. App. 2001) ....................................................................12

Baum v. Great W. Cities, 703 F.2d 1197 (10th Cir. 1983)..............................................................15

Boyz Sanitation v. City of Rawlins, 889 F.3d 1189 (10th Cir. 2018) ........................................6, 16

Desbien v. Penokee Farmers Union, 552 P.2d 917 (Kan. 1976) ....................................................14

Dick Hatfield Chevrolet v. Bob Watson Motors, 69 P.2d 566 (Kan. App. 1985)..........................11

Dick Hatfield Chevrolet v. Bob Watson Motors, 708 P.2d 494 (Kan. 1985)..........................10, 12

Fish v. Kobach, 304 F. Supp.3d 1027, 1027 (D. Kan. 2018)......................................................7, 10

Geer v. Cox, 242 F. Supp.2d 1009 (D. Kan. 2003) ........................................................................14

Gossett v. Oklahoma, 245 F.3d 1172 (10th Cir. 2001).....................................................................6

Hammer v. Thompson, 129 P.3d 609 (Kan. App. 2006)..................................................................11

Hartig v. Safelite Glass, 819 F. Supp. 1523 (D. Kan. 1993)..........................................................15

Iola State Bank v. Bolan, 679 P.2d 720 (Kan. 1984)......................................................................12

Leone v. Owsley, 810 F.3d 1149 (10th Cir. 2015) ...........................................................................7

McCarter v. West, 910 F. Supp. 519 (D. Kan. 1995) .....................................................................15

Meyer v. Christie, 634 F.3d 1152 (10th Cir. 2011) ........................................................................17

In re Motor Fuel Litigation, 534 F. Supp.2d 1214 (D. Kan. 2008)................................................17

North Texas Production Credit v. McCurtain County Nat'l Bank, 222 F.3d 800
    (10th Cir. 2000)............................................................................................................................16

Parsells v. Manhattan Radiology Group, 255 F. Supp.2d 1217 (D. Kan. 2003) ....................13, 14

Parsons v. Davis, 1997 WL 446264 (D. Kan. 1997) ......................................................13

Queen v. Lynch Jewelers, 55 P.3d 914 (Kan. App. 2002)............................................15

Ranchers and Farmers Livestock v. Honey, 552 P.2d 313 (Colo. App. 1976)............................12

Redmond v. Hassan, 523 B.R. 729 (Bankr. D. Kan. 2014) ...........................................17

Regal Ware v. Vita Craft, 653 F. Supp.2d 1146 (D. Kan. 2006)....................................14

Ronald Odette Family Ltd. v. AGCO Finance, 129 P.3d 95 (Kan. App. 2005).....................13, 17

Security Nat'l Bank v . Belleville Livestock, 619 F.2d 840 (10th Cir. 1979) ..............................15

Shirley v. Glass, 241 P.3d 134 (Kan. App. 2010)..........................................................17

Stoldt v. City of Toronto, 678 P.2d 153 (Kan. 1984) ..............................................16, 17

Vulcan Materials v. Atofina Chemicals, 355 F. Supp.2d 1214 (D. Kan. 2005) ...........................16

**Statutes**

K.S.A. § 84-1-201 ...................................................................................... 10-11, 14

K.S.A. § 84-2-403 .........................................................................................9, 10, 14

**Other Authorities**

Wright, Miller & Kane, Fed. Prac. & Pro. Civil 3d, § 2730.........................................15

**EXHIBIT LIST**

| EXHIBIT | DESCRIPTION |
|---|---|
| Doc. 103-1 | Affidavit of David Wahlert |
| Doc. 103-2 | Invoices from September 29, 2015 sale from Rezac to Leonard |
| Doc. 103-3 | Check from Leonard to Rezac |
| Doc. 103-4 | Invoices from September 29, 2015 sale from Leonard to Dinsdale Bros. |
| Doc. 103-5 | Deposition of Charles Leonard |
| Doc. 103-6 | Deposition of Rezac |
| Doc. 103-7 | 2015 Packers & Stockyards Report for Leonard |
| 8 | Affidavit of David Wahlert in Opposition to Plaintiff's Motion for Summary Judgment |

## **INTRODUCTION**

Far from showing entitlement to summary judgment, Rezac's Motion underscores why the Court should dismiss Rezac's claims.  The most disputed facts here are the least material.  Rezac makes those facts the showpiece of its Motion.  In the unlikely event they are found material, the facts offered by Rezac are belied by record evidence.  Along with requesting paper findings on disputed facts, Rezac asks this Court to infer facts, including inferences about knowledge and intent.

But factual disputes are Rezac's smallest problem.  Even under Rezac's misstated facts, Dinsdale Bros. took good title to the Cattle in question and, under the UCC, Leonard's bounced check does not affect Dinsdale Bros.' title.  The UCC also dictates that Dinsdale Bros. purchased the Cattle in good faith.  And Rezac's Motion does not fill in the agency void that bars all its claims.  Dinsdale Bros. undisputedly received the Cattle through a valid and documented purchase agreement, providing Dinsdale Bros. with the authorization that bars Rezac's conversion claim.  Rezac undisputedly gave up possession in a valid and documented purchase by Leonard, depriving Rezac of the possessory right needed for its conversion claim.  All this leaves Rezac with no wrongful conduct or agreement to support its conspiracy claim.  And Rezac never owned, paid for, or assumed liability to pay for the Cattle—Rezac's damage claim comes from nowhere.

Rezac tries to fill these holes with misstated facts, misstated and inapposite law, and requests for findings that have no place in summary judgment.  Removing those frivolities leaves Rezac with a claim to pick Dinsdale Bros.' pocket to backstop Rezac's voluntary dealings with Leonard.   Neither the facts nor the law permit such claims.

## STATEMENT OF MATERIAL DISPUTED FACTS[1]

5.     The same individuals do not own Dinsdale Bros. and Pinnacle Bank.   As confirmed in deposition testimony from both Chris and Sid Dinsdale, each entity was separately owned by numerous separate people, only some of whom had some ownership in both entities. Exhibit B at 13:4-19 72:14-73:11; Exhibit C at 14:8-15:4, 16:3-24.

16.     Dinsdale Bros. did not communicate regularly or daily with Pinnacle Bank about the Leonard account or the Rezac transaction.  As confirmed in deposition testimony from both Chris and Sid Dinsdale, any such communications were occasional and sporadic.  Exhibit B at 141:7-17; Exhibit C at 72:4-24.

18.     Pinnacle Bank did not tell Dinsdale Bros. about Leonard's overdrafts well before the Rezac transaction.   Any communications during that time with Chris Dinsdale about overdrafts concerned several Bank customers and were made solely in Mr. Dinsdale's capacity as a Director of Pinnacle Bank's holding company, not as a Dinsdale Bros. representative. Exhibit D at 101:6-14.

23.     Mr. Wahlert did not, as Rezac claims, give Leonard an order to purchase cattle. Nor did Mr. Wahlert make "instructions" of cattle weights or types.  Doc. 103-1, ¶¶ 7-11; Doc. 103-5, 16:12-18:8, 172:20-173:1, 188:16-189:21; Exhibit A, 25:15-26:19.

26.     Leonard charged no commission to Dinsdale Bros.  Even after heavy coaching from Rezac's attorney, Leonard conceded that his price markup "really isn't a commission" and that he sold cattle to Dinsdale Bros. "[n]ot on a commission basis, but on a sold-to basis" as

---

[1] Dinsdale Bros. admits no factual claims stated in Rezac's Motion and Dinsdale Bros. reserves the right to dispute all of Rezac's factual claims, if necessary, at trial.

expressly stated on Leonard's invoice.  Doc. 103-5, 39:17-21, 247:15:248:1.  The invoices Leonard provided to Dinsdale Bros. do not state or imply a commission.  Doc. 103-4.  Leonard reported the transaction to the IRS as a dealer markup, not an agent's commission.  Doc. 103-5, 342:3-25.

Nor did Leonard engage in "performing the service of buying the cattle for Dinsdale Bros."  Leonard reported the transaction, in a sworn statement to a federal agency, as undertaken as a dealer for his own account, not on commission for the account of others.  Doc. 103-4; Doc. 103-5, 344:13-346:4; Doc. 103-7.  That was, in fact, how Leonard functioned at the September 29, 2015 sale.  Exhibit 5, 11:4-11, 17:22-171:1; Exhibit 1, ¶ 3; Exhibit 6, 24:17-19, 125:12-15.  "Leonard purchased" the Cattle, not Dinsdale Bros.  Doc. 101, ¶ 2.a.6.

32.  Dinsdale Bros. did not wire funds to Leonard's account to pay Leonard's check to Rezac's account.  Dinsdale Bros. wired the funds to pay for cattle that Dinsdale Bros. purchased from Leonard.  Dinsdale Bros. paid Leonard this way because Leonard instructed Dinsdale Bros. to do so, as he had always done.  Doc. 103-5, 211:18-212:23, 212:15-16; Doc. 103-4; Doc. 103-1, ¶ 15.

37-43.  Having purchased from Leonard, Dinsdale Bros. sent payment for Cattle to Leonard—not Pinnacle Bank—as Leonard instructed.  Doc. 103-5, 211:18-212:23, 212:15-16; Doc. 103-4; Doc. 103-1, ¶ 15; Doc. 101, ¶¶ 2.a.4, 8.

52.  The transaction in question—Dinsdale Bros.' purchase of the Cattle from Leonard—was normal and consistent with hundreds of other transactions with Leonard.  The payment method—paying the seller, Leonard, by wire—was normal and consistent with prior

4

transactions.  Dinsdale Bros. was not on "both sides of the transaction."  Dinsdale Bros. occupied neither side of the Rezac-Leonard re-sale.  Dinsdale Bros. acted solely as the buyer in the Leonard-Dinsdale Bros. purchase.  Exhibit 8 ; Docs. 103-1, 103-2, 103-3, 103-4.

54.     Dinsdale Bros. did not know that Rezac was not paid for the Cattle when it took possession.  When it received the Cattle, Dinsdale Bros. had never heard of Rezac and had no knowledge of Leonard's dealings with or payments to Rezac.  Doc. 103-1, ¶ 8.  It was not until after Dinsdale Bros. took possession that Chris Dinsdale learned that Leonard had some financial concerns.  Exhibit B, 97:11-100:13.

56.     Rezac demanded possession from D&D Feedlot, not Dinsdale Bros.  Exhibit J.

58.     Rezac has incurred no discernable damages.  Rezac never owned the Cattle, it sold the Cattle on consignment for other sellers.  Rezac did not pay those sellers for the Cattle.  A second entity funded the payment to the Cattle's sellers.  Then, a third entity took out a loan to pay for the second entity's payment to the Cattle's sellers.  The third entity is the sole entity obligated to repay that loan.  Rezac has purportedly contributed a few interest payments toward the third entity's loan, but Rezac has no contractual obligation to make those interest payments and has produced no evidence of those interest payments.   Doc. 103-6, 38:3-42:15.

Dinsdale Bros. incorporates each of the disputed facts set forth in Pinnacle Bank's Response to Plaintiff's Motion for Summary Judgment.

## ADDITIONAL RELEVANT FACTS

1.     Dinsdale Bros. incorporates all the facts in its Statement of Undisputed Material Facts in its Memorandum in Support of its Motion for Summary Judgment, Doc. 103 at 3-10.

2.      Dinsdale Bros.' purchase of the Cattle was consistent with about 100 other cattle purchase transactions with Leonard during the prior 12 months.  Exhibit 8, ¶ 5.

3.      In those transactions Leonard contracted to sell cattle to Dinsdale Bros. and Dinsdale Bros. paid Leonard Cattle the purchase price by wire transfer.  Id., ¶ 6.

4.      In all those prior transactions, Dinsdale Bros. contracted solely with Leonard and Leonard was the only seller.  Id., ¶ 7.

5.      In all those prior transactions, Dinsdale Bros. also received good title to the subject cattle.  Id., ¶ 8.

6.      Dinsdale Bros. followed this same practice with the Cattle to effectuate an honest transaction that comported with reasonable commercial standards of fair dealing.  Id., ¶ 9.

7.      Leonard—the only seller with whom Dinsdale Bros. contracted and the only person with title to the Cattle—instructed Dinsdale Bros. to pay Leonard directly by wire. Leonard never stated or implied that the purchase price should be sent anywhere else.  Id., ¶ 10.

## ARGUMENT

"'Where, as here, we are presented with cross-motions for summary judgment, we must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor.'"  Boyz Sanitation v. City of Rawlins, 889 F.3d 1189, 1195 (10th Cir. 2018)(citation omitted).  "The court 'may not make credibility determinations or weigh the evidence,' and 'must disregard all evidence favorable to the moving party that the jury is not required to believe.'"  Gossett v. Oklahoma, 245 F.3d 1172, 1174 (10th Cir. 2001)(citation omitted).  "To prevail on a motion for summary judgment on a claim upon which the moving

party also bears the burden of proof at trial, the moving party must demonstrate 'no reasonable trier of fact could find other than for the moving party.'" Fish v. Kobach, 304 F. Supp.3d 1027, 1027 (D. Kan. 2018)(citation omitted).  "'Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact.'" Leone v. Owsley, 810 F.3d 1149, 1153 (10th Cir. 2015)(citation omitted).

## I.     FACTUAL DISPUTES BAR SUMMARY JUDGMENT FOR REZAC

Rezac asks the Court to undertake a paper trial on fact-intensive and subjective elements based on a story concocted from misstatements and falsehoods.  Most of these misstatements and falsehoods concern Rezac's spin on emails and conversations occurring after Dinsdale Bros. had taken title to the Cattle from Leonard in a valid sale transaction.  Those allegations do not affect claims against Dinsdale Bros.  To the extent the Court finds such facts material, they are disputed with record evidence.

### A.     Rezac Misrepresents the Leonard-Dinsdale Bros. Re-Sale

First and foremost, Rezac misrepresents the Cattle's sale from Leonard to Dinsdale Bros. Contrary to Rezac's claims, Dinsdale Bros. did not order or instruct Leonard to attend Rezac's auction—Leonard came to the auction and purchased cattle for his own account every Tuesday. Leonard confirmed he did that on September 29, 2015.  Mr. Wahlert gave general indications of being in the market below certain weights and nothing more.  After misstating these facts in its fact statement, Rezac mushrooms these misrepresentations in its Argument.  General weight indications—with no quantity or price terms—become "a sizeable buy."  Leonard's independent

decision to attend and bid at the Rezac auction morphs into the notion that "Dinsdale Bros. sent Leonard" to the auction.

Before the Leonard-Dinsdale Bros. sale, Leonard acquired possession and title in a valid sales transaction documented by Rezac.  Rezac sold the Cattle to Leonard and documented the sale with Leonard as the buyer.  Leonard even paid as instructed by Rezac—with a check—the check just bounced.  After that, Leonard sold the Cattle to Dinsdale Bros.

Leonard documented his sale of his Cattle to Dinsdale Bros. as a valid sale transaction, listing himself (not Rezac) as seller and stating that that "100% of sales made by Leonard Cattle Company are on a sold to basis."  Rezac falsely claims that Leonard charged a commission to Dinsdale Bros.  Leonard himself disclaimed that notion in invoices and testimony and tax and regulatory findings.  Rezac also falsely claims that, in buying the Cattle at the Rezac auction, Leonard performed some kind of service for Dinsdale Bros.  Again, Leonard himself disclaimed that notion.

Rezac misrepresents Dinsdale Bros.' payment for the Cattle as benefiting Pinnacle Bank or intended for Rezac.  Dinsdale Bros. wired the funds to Leonard's account because compliance with the Leonard-Dinsdale Bros. sale terms—the only contract Dinsdale Bros. entered—required it.  Rezac also urges this Court to make the false inference that Dinsdale Bros. was somehow privy to Rezac's dealings with Leonard.  Those dealings, including payment arrangements, were solely between Leonard and Rezac.  And Rezac misrepresents the September 29 transaction as somehow unusual.  That transaction proceeded like hundreds before:  Dinsdale Bros. acted solely as seller, purchased cattle owned by Leonard, and paid as Leonard instructed.

8

**B.**     **Rezac Misrepresents Dinsdale Bros.' Relationship and Communications with Pinnacle Bank**

Rezac asks this Court to make a false finding that Dinsdale Bros. and Pinnacle Bank are jointly owned or operated or controlled.  While there are some common owners, each entity is separate and owned by numerous separate people.  Rezac also asks this Court to falsely conflate Chris Dinsdale's role as Dinsdale Bros.' President with his role as a Director of Pinnacle Bank's holding company.  And Rezac asks the Court to make false findings about communications regarding Leonard.

**C.**     **Rezac Contrives Damages**

Rezac tries to slip a $980,361 damage finding under the door, baldly claiming it lost cattle value in that amount.  Rezac never owned the Cattle, it merely auctioned them for other sellers.  When Leonard's check bounced, Rezac did not step up and pay those sellers.  Another entity did that.  Rezac did not obligate itself to repay that second entity.  Instead, a third entity took out a loan to pay that second entity.  Rezac lost no Cattle or Cattle value and Rezac has no contractual or other obligation to pay the amounts paid to the Cattle's owners.  In sum, Rezac has lost nothing and has contrived its damages from whole cloth.

**II.**     **REZAC LACKS LEGAL ENTITLEMENT TO SUMMARY JUDGMENT**

**A.**     **Dinsdale Bros. Took Good Title to the Cattle**

The UCC expressly undermines Rezac's challenge to Dinsdale Bros.' title.  "A purchaser of goods acquires all title which his transferor had or had power to transfer."  K.S.A. § 84-2-403(1).  So Dinsdale Bros. acquired all title to the Cattle which Leonard had the power to transfer.  Leonard acquired the Cattle from Rezac in a transaction of purchase, not entrustment.

"When goods have been delivered under a transaction of purchase the purchaser has such power even though . . . the delivery was in exchange for a check which is later dishonored."   Id. at (1)(b).   Under this statute "when goods have been delivered under a transaction of purchase the purchaser has power to transfer good title even though the delivery was in exchange for a check which is later dishonored."   Dick Hatfield Chevrolet v. Bob Watson Motors, 708 P.2d 494, 497 (Kan. 1985).   In other words, Leonard had the power to transfer the Cattle to Dinsdale Bros. even though Leonard took delivery of the Cattle from Rezac in exchange for a check which was later dishonored.   Section 84-2-403(1) ends the question there—the later dishonor of Leonard's check does not render the title taken by Dinsdale Bros. voidable.   The factual morass offered by Rezac cannot alter this legal mandate.

### B.     Dinsdale Bros. was a Good Faith Purchaser for Value

Even if it applied, the good faith inquiry does not re-vest Rezac with the title it sold to Leonard.   "'Good faith' . . . means honesty in fact and the observance of reasonable commercial standards of fair dealing."   K.S.A. § 84-1-201(20).   "Although 'fair dealing' is a broad term that must be defined in context, it is clear that it is concerned with the fairness of conduct rather than the care with which an act is performed.   This is an entirely different concept than whether a party exercised ordinary care in conducting a transaction."   Id. at cmt. 20.   And fact finders determine honesty in fact "in terms of subjective honesty."   Id.

Dinsdale Bros. purchased and took title to the Cattle honestly and fairly in an ordinary sale of goods.   Dinsdale Bros.' subjective intent was to comply with a course of dealing set forth in the written sale contract and cemented by hundreds of prior transactions.   The "'course of

dealing, and course of performance are relevant in establishing reasonable commercial standards.'" Hammer v. Thompson, 129 P.3d 609, 617 (Kan. App. 2006)(citation omitted). Dinsdale Bros. did not undertake this transaction with reference to Rezac and Dinsdale Bros. never dealt with Rezac before, during, or after the transaction.   Later notice of Leonard's financial troubles did not entitle Dinsdale Bros. to back out of its purchase agreement, and it certainly did not somehow negate Dinsdale Bros.' good faith.  A party's knowledge "that a seller has not been paid for products purchased by its debtor does not mean that the  . . . party lacks good faith.  Lack of knowledge of third-party claims is not required to achieve a good-faith purchaser status." Dick Hatfield Chevrolet v. Bob Watson Motors, 69 P.2d 566, 573 (Kan. App. 1985)(citing Shell Oil v. Mills Oil, 717 F.2d 208 (5th Cir. 1983)(rev'd on other grounds at 708 P.2d 494 (1985)).

To muddy these waters, Rezac urges an apples-and-oranges approach to § 84-2-403. Rezac devotes much of its argument to a claim that Dinsdale Bros. failed to act with ordinary care in an alleged "series of misguided decisions" that amount to "negligence."  Doc. 111 at 12-17.  But good faith "is an entirely different concept than whether a party exercised ordinary care in conducting a transaction." K.S.A. § 84-1-201 cmt. 20.  Rezac then pivots to claiming some kind of entrustment relationship with Leonard.   But Rezac undisputedly sold the Cattle in a purchase transaction, not some arrangement involving Leonard caring for Rezac's cattle.  Section 84–1–201(30) defines a purchaser as "a person who takes by purchase."  Section 84–1–201(29) defines purchase as including "taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift or any other voluntary transaction creating an interest in property."  Leonard

undisputedly took the Cattle by sale in a transaction that constituted a purchase, not an entrustment.  Doc. 103-2.

Rezac then pivots to claiming principles of equity, even though neither Rezac nor Dinsdale Bros. seek equitable relief.[2]  Rezac cannot even characterize itself consistently, alternately calling itself the "prior owner" (meaning it no longer owned the Cattle), the "ultimate seller" and a party with a claim against Leonard, but never articulating a legal duty attached to any of these labels.  Rather than invoke actual duties, Rezac mischaracterizes case law.[3]

Rezac then insists that these inapposite precepts require Dinsdale Bros. to tender (again) the Cattle's value, even though Rezac undisputedly never lost the Cattle's value.  Finally, Rezac litters its good faith argument with the false facts detailed above.  Rezac espouses all these tactics to request a paper ruling on a subjective issue that does not apply here.  That is no path to summary judgment and Rezac's Motion should be denied.

---

[2] Rezac cites Bankers Trust v. U.S., 25 P.3d 877 (Kan. App. 2001), a subrogation decision that had nothing to do with sales or the UCC.

[3] Rezac cites Dick Hatfield Chevrolet v. Bob Watson Motors, 708 P.2d 494 (Kan. 1985), in which the Kansas Supreme Court confirmed that "when goods have been delivered under a transaction of purchase the purchaser has power to transfer good title even though the delivery was in exchange for a check which is later dishonored."  Id. at 497.  The court based its good faith findings on banking industry and regulatory conduct which have no place here.  See id. Rezac also cites Ranchers and Farmers Livestock v. Honey, 552 P.2d 313 (Colo. App. 1976), a case against a buyer whose check was dishonored, i.e. Leonard, and his cohorts.  The Colorado Court of Appeals found that title passed to the party in Leonard's position, but they could not be deemed a good faith purchaser.  See id. at 317.  This case confirms that Rezac should have sued Leonard instead of Dinsdale Bros.  And Rezac cites Iola State Bank v. Bolan, 679 P.2d 720 (Kan. 1984), a case finding a bank acted in bad faith concerning its security interest but finding that good faith by the purchaser of goods from a seller whose check was later dishonored.

**C.** **Rezac Cannot Meet its Burden of Proving an Agency Relationship with Leonard**

Rezac's claims against Dinsdale Bros. survived dismissal because Rezac pled an agency relationship between Leonard and Dinsdale Bros.  Doc. 55 at 5, 6, 29, 32.  Rezac's agency pleading did not bear out in discovery, and Rezac's key allegations proved false.  Dinsdale Bros. incorporates the agency points and authorities in its summary judgment Memorandum, Doc. 103 at 11-19.  Those points and authorities establish a fundamental defect in Rezac's conversion claim and bar summary judgment on that claim.

**D.** **Rezac Cannot Meet its Burden of Proving the Elements of Conversion**

Rezac alleges that Dinsdale Bros. took the Cattle through a valid sale, not through conversion.  To "establish a claim of conversion, the plaintiff must prove that the defendant's exercise of ownership over the chattel is unauthorized."  <u>Ronald Odette Family Ltd. v. AGCO Finance</u>, 129 P.3d 95, 100 (Kan. App. 2005).  When taking "the property was authorized by law, an essential element of the conversion claim [is] missing."  <u>Id.</u> at 101.  To show conversion of the Cattle, Rezac must show "that Dinsdale exercised ownership over them without authorization."  Doc. 55 at 31.  <u>See also</u> <u>Parsells v. Manhattan Radiology Group</u>, 255 F. Supp.2d 1217, 1238 (D. Kan. 2003)(property validly purchased by defendant is "not 'converted' or 'stolen'"); <u>Parsons v. Davis</u>, 1997 WL 446264, *5 (D. Kan. 1997)(dismissing conversion claim).  As this Court noted, a plaintiff may not maintain tort claims when "'the conduct is permitted by the express provisions of a contract.'"  Doc. 55 at 28 (quoting <u>Burcham v. Unison Bancorp</u>, 77 P.3d 130, 145 (Kan. 2003)).

"A plaintiff asserting a conversion cause of action must prove that the defendant intentionally exercised wrongful dominion or control over property of the plaintiff that so severely interferes with the plaintiff's right to control the property that the court may justly require the defendant to pay full value of the property." Geer v. Cox, 242 F. Supp.2d 1009, 1022-23 (D. Kan. 2003). A party who takes possession to property under a valid contract "does not commit conversion." Id. See also Parsells v. Manhattan Radiology Group, 255 F. Supp.2d 1217, 1238 (D. Kan. 2003)(property purchased and paid for by defendants "was not 'converted' or 'stolen' by defendants"). In such cases the plaintiff "must rely upon its breach of contract claim, rather than a conversion claim." Regal Ware v. Vita Craft, 653 F. Supp.2d 1146, 1152 (D. Kan. 2006).

Rezac does not and cannot dispute that Dinsdale Bros. purchased the cattle in a transaction that gave Dinsdale Bros. authority to possess the Cattle. See K.S.A. §§ 84-2-403(1), 84–1–201(29). Title to goods passes upon delivery under a purchase contract, not payment. See Desbien v. Penokee Farmers Union, 552 P.2d 917, 924 (Kan. 1976). So the "mere fact that the [purchaser] did not pay . . . the purchase price for [the goods] on the agreed date of payment did not make the [defendant] guilty of a conversion." Id.

Instead, Rezac devotes its argument to subsuming conversion elements into good faith purchaser elements, re-hashing its good faith purchaser arguments with no reference to conversion elements. Setting aside the irrelevance and factually-disputed nature of its good faith purchaser argument, Rezac cites no case law wedding conversion liability to good faith purchaser determinations. No such case law exists.

14

Also, the "plaintiff in a conversion action assumes the burden of proving a sufficient interest in the property allegedly converted." Security Nat'l Bank v . Belleville Livestock, 619 F.2d 840, 849 (10th Cir. 1979).  "'To maintain an action for conversion, a plaintiff must have actual possession of the property or a right to immediately take possession of the property.'" Queen v. Lynch Jewelers, 55 P.3d 914, 921 (Kan. App. 2002)(citation omitted).  Rezac gave Leonard possession of the Cattle before Dinsdale Bros. took possession.  After that, Rezac had no immediate right to take possession.  Rezac relinquished any such right when it dropped its replevin claim to preserve jurisdiction here. Compare Doc. 1-1 with Doc. 6.

Finally, Rezac's conversion argument asks this Court to resolve factual disputes over Dinsdale Bros.' knowledge and intent.  Almost every sentence of Rezac's argument begins with a disputed claim about what Dinsdale Bros. knew or intended.  A party's knowledge and state of mind are improper summary judgment findings. See McCarter v. West, 910 F. Supp. 519, 523 (D. Kan. 1995)("Summary judgment is normally inappropriate where an individual's state of mind and intent are implicated"); Hartig v. Safelite Glass, 819 F. Supp. 1523, 1532 (D. Kan. 1993)("Whether defendant had knowledge . . . should not be resolved on this motion for summary judgment"). See also Baum v. Great W. Cities, 703 F.2d 1197, 1210–11 (10th Cir. 1983); 10B Wright, Miller & Kane, Fed. Prac. & Pro. Civil 3d, § 2730.

Far from showing entitlement to summary judgment, Rezac's Motion reveals myriad defects in its conversion claim.  Rezac's Motion should be denied.

### E.  Rezac Cannot Meet its Burden of Proving the Elements of Conspiracy

Rezac seeks summary judgment on a non-existent conspiracy.  In Kansas, "the elements of a civil conspiracy include: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."  Stoldt v. City of Toronto, 678 P.2d 153, 161 (Kan. 1984).

Rezac cannot articulate, let alone prove, meeting of the minds.  Instead, Rezac alleges a series of emails and discussions about how Pinnacle Bank would handle a problem account. Most or all of these communications involved only Bank representatives, and Chris Dinsdale acting as a Director of Pinnacle Bank's holding company, not as a Dinsdale Bros. representative. Exhibit D at 101:6-14.  In this regard, a "corporation is not capable of conspiring with itself," depriving Rezac of the two parties needed for conspiracy.  Vulcan Materials v. Atofina Chemicals, 355 F. Supp.2d 1214, 1239 (D. Kan. 2005).  If anything, Rezac alleges an *absence* of meeting of minds, claiming that Dinsdale Bros. did not accept a Bank officer's suggestion.  Doc. 111 at 7.  This defect alone bars summary judgment.  See North Texas Production Credit v. McCurtain County Nat'l Bank, 222 F.3d 800, 815 (10th Cir. 2000)(factual issues as to meeting of minds barred summary judgment on conspiracy claim).[4]

Nor can Rezac articulate or prove any unlawful act. "Conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy."

---

[4] Rezac also asks the Court to infer a meeting of minds from errant emails and conversations, ignoring the mandate that the Court "draw all reasonable inferences in [Dinsdale Bros.'] favor." Boyz Sanitation v. City of Rawlins, 889 F.3d 1189, 1195 (10th Cir. 2018).

Stoldt, 678 P.2d at 161.[5]  "The claim must be based on a valid, actionable underlying tort."  In re

Motor Fuel Litigation, 534 F. Supp.2d 1214, 1236 (D. Kan. 2008).  So where "there are no

allegations of a valid, underlying cause of action independent of the conspiracy" and "all of the

previous causes of action . . . fail to state a claim and thus they cannot be the underlying

independent action," the "conspiracy claim fails."  Atkins v. Heavy Petroleum Partners, 86 F.

Supp.3d 1188, 1208 (D. Kan. 2015).  As detailed above, Rezac cannot prove conversion.  And

Rezac does not even try to prove any other wrongs in its summary judgment Motion.

Rezac concedes that its claims, at best, boil down to allegations of negligence.  Doc. 111

at 15.  But negligence does not qualify as an unlawful act for conspiracy purposes:  since "'it

would be illogical to find a 'meeting of the minds' (conspiracy) to act negligently' . . . . parties

cannot engage in a civil conspiracy to be negligent."  Shirley v. Glass, 241 P.3d 134, 157 (Kan.

App. 2010).  Rezac has no viable conspiracy claim and its Motion should be denied.

## F.    Rezac Cannot Meet its Burden of Proving Damages for any Claim

Rezac asks this Court to award close to $1 million for property Rezac never owned, value

Rezac never lost, and losses incurred by other entities.  Every claim Rezac asserts  has a damage

or loss element.  See, e.g., Stoldt, 678 P.2d at 161; Ronald Odette Family Ltd. v. AGCO Finance,

129 P.3d 95, 100 (Kan. App. 2005).  Rezac never lost the Cattle or their value—Rezac never

owned the Cattle, it merely auctioned them for other owners.  Rezac never paid the sellers or

anyone else for the Cattle's value—a separate entity made that payment.  Nor is Rezac obligated

---

[5] See also Meyer v. Christie, 634 F.3d 1152, 1156 (10th Cir. 2011).  The "'existence of a civil
conspiracy is not an actionable wrong by itself; it is really a means for impos[ing] vicarious
liability for concerted action.'"  Redmond v. Hassan, 523 B.R. 729, 743 (Bankr. D. Kan. 2014).

to pay those amounts in the future—yet another entity purportedly took out a loan for to cover the second entity's outlay.  Rezac claims, at best, to have contributed a couple of interest payments but Rezac has no obligation to make such contributions and Rezac has produced no evidence of those contributions.

Lacking undisputed facts, evidence, and legal entitlement, Rezac demands that this Court award it something for nothing.  In addition to denying Rezac's Motion for Summary Judgment, the Court should find that Rezac's lack of damages bars all of its claims.

## CONCLUSION

Faced with Defendants' summary judgment motions, Rezac has made a transparent attempt to muddy the waters with its own summary judgment motion.  This offense-as-defense ploy sheds more light on the legal and factual failings of Rezac's claims.  The Court should deny Rezac's Motion for Summary Judgment and grant summary judgment for Dinsdale Bros.

Dated:  July 13, 2018.

*s/ Thomas Hiatt*
Scott C. Sandberg, Admitted Pro Hac Vice
John O'Brien, Admitted Pro Hac Vice
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, CO  80203
Telephone:  303.839.3800 / Fax:  303.839.3838
ssandberg@spencerfane.com; jobrien@spencerfane.com

Thomas Hiatt
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
thiatt@spencerfane.com

***Attorneys for Defendant Dinsdale Bros., Inc.***

18

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2018, a copy of the foregoing was served via the Court's Electronic Case Filing System on the following:

Robert M. Thompson
Michelle M. Masoner
Stephanie C. Bradshaw
Bryan Cave LLP
1200 Main Street, Suite 3800
Kansas City, Missouri 64105
Telephone:  816-374-3200
rmthompson@bryancave.com;
michelle.masoner@bryancave.com;
stephanie.bradshaw@bryancave.com
*Attorneys for Rezac Livestock Commission Co.*

Timothy A. Shultz, KS #16060
Goodell, Stratton, Edmonds & Palmer, LLP
515 S. Kansas Ave.
Topeka, KS 66603
Phone: 785-233-0593
tshultz@gseplaw.com
*and*
T. Randall Wright *PRO HAC VICE*
Baird Holm LLP
1700 Farnam Street, Suite 1500
Omaha, NE 68102
Phone: 402-344-0500
rwright@bairdholm.com
*Attorneys for Pinnacle Bank*

*s/Pamela Thede*
for Spencer Fane LLP

19