**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

Civil Action No.   15-CV-4958-DDC-KGS

REZAC LIVESTOCK COMMISSION CO., INC.

     Plaintiff,

v.

PINNACLE BANK; and DINSDALE BROS., INC.,

     Defendants.

---

**REPLY IN SUPPORT OF DEFENDANT DINSDALE BROS., INC.'S
MOTION FOR SUMMARY JUDGMENT**

---

       Pursuant to Local Rule 56.1(a), Defendant, Dinsdale Bros., Inc. d/b/a Dinsdale Brothers, Inc. (**"Dinsdale Bros."**), submits this Reply in Support of Dinsdale Bros.' Motion for Summary Judgment.[1]

---

[1] Dinsdale Bros. incorporates its Memorandum in Opposition (Doc. 115) in this Reply.

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................2

RESPONSE TO REZAC'S ADDITIONAL FACTS ...........................................2

ARGUMENT.......................................................................................................4

    I.  ALL MATERIAL FACTS REMAIN UNDISPUTED ................................4

    II.  EACH OF REZAC'S CLAIMS HINGE ON AN AGENCY RELATIONSHIP BETWEEN DINSDALE BROS. AND LEONARD (ALL COUNTS)...........................8

    III. THE UNDISPUTED FACTS SHOW THAT NO AGENCY RELATIONSHIP EXISTED BETWEEN DINSDALE BROS. AND LEONARD (ALL COUNTS) .............................................................9

        A.  Principal-Agent Relationship ....................................... 10

            1.  Control by the Principal ......................................10

            2.  Assent..................................................................11

            3.  Benefit to the Principal .......................................11

        B.  Authority ...................................................................... 12

            1.  Actual Express Authority .....................................12

    IV. REZAC CANNOT SHOW BREACH OF CONTRACT (COUNT I).......................13

    V.  REZAC CANNOT SHOW CONVERSION (COUNT II) ...........................15

    VI. REZAC CANNOT SHOW UNJUST ENRICHMENT OR QUANTUM MERUIT (COUNTS III & V)........................................................17

    VII.  REZAC CANNOT SHOW CONSPIRACY (COUNT VI).......................18

CONCLUSION ...............................................................................................19

i

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

<u>AgriStor Leasing v. Meuli</u>, 634 F. Supp. 1208 (D. Kan. 1986)......................................................9

<u>Brady Campaign v. Brownback</u>, 110 F. Supp.3d 1084, 1101 .....................................................10

<u>C.A. Karlan Furniture v. Richardson</u>, 324 P.2d 180 (Kan. 1958) ...............................................14

<u>Desbien v. Penokee Farmers Union</u>, 552 P.2d 917 (Kan. 1976) ...............................................8, 16

<u>Golden Rule Ins. v. Tomlinson</u>, 335 P.3d 1178 (Kan. 2014) ............................................9, 11, 12

<u>Grandi v. Thomas</u>, 391 P.2d 35 (Kan. 1964) ...............................................................................14

<u>J.W. Thompson Co. v. Welles Products</u>, 758 P.2d 738 (Kan. App. 1988)..............................17, 18

<u>Pioneer Centres v. Alerus Financial</u>, 858 F.3d 1324 (10th Cir. 2017) ..........................................4

<u>Queen v. Lynch Jewelers</u>, 55 P.3d 914 (Kan. App. 2002)..........................................................16

<u>Regal Ware v. Vita Craft</u>, 653 F. Supp.2d 1146 (D. Kan. 2006)..................................................15

<u>School-Link Tech. v. Applied Resources</u>, 471 F. Supp.2d 1101 (D. Kan. 2007).........................17

<u>Stoldt v. City of Toronto</u>, 678 P.2d 153 (Kan. 1984) ..................................................................18

**Statutes**

K.S.A. § 84-2-202.......................................................................................................................13

K.S.A. § 84-2-305.......................................................................................................................13

K.S.A. § 84-2-306.......................................................................................................................13

K.S.A. § 84-2-403.......................................................................................................................16

K.S.A. § 84–1–201(29) ...............................................................................................................16

**EXHIBIT LIST**

| EXHIBIT | DESCRIPTION |
|---|---|
| Doc. 103-1 | Affidavit of David Wahlert |
| Doc. 103-2 | Invoices from September 29, 2015 sale from Rezac to Leonard |
| Doc. 103-3 | Check from Leonard to Rezac |
| Doc. 103-4 | Invoices from September 29, 2015 sale from Leonard to Dinsdale Bros. |
| Doc. 103-5 | Deposition of Charles Leonard |
| Doc. 103-6 | Deposition of Rezac |
| Doc. 103-7 | 2015 Packers & Stockyards Report for Leonard |
| Doc. 115-1 | Affidavit of David Wahlert in Opposition to Plaintiff's Motion for Summary Judgment |

## INTRODUCTION

In this lawsuit Rezac tries to make Dinsdale Bros. cover Rezac's business dealings with Leonard.  To support this gambit, Rezac asserts a host of novel legal theories, all of which hinge on the notion that Leonard acted as agent and fiduciary rather than dealer and seller.  Dinsdale Bros.' Motion for Summary Judgment confirmed that Leonard undisputedly acted as a dealer purchasing on his own account and reselling to Dinsdale Bros.—not Dinsdale Bros.' agent. Dinsdale Bros.' Motion also confirmed that Dinsdale Bros. bought, and did not convert, the cattle in question.  And Dinsdale Bros.' Motion confirmed that Rezac conferred no benefit on Dinsdale Bros. and that Rezac seeks to recover for Leonard's contractual breaches, barring unjust enrichment/quantum meruit claims.

In response, Rezac confirms almost all material facts, fails to support a denial of any material fact, and offers unsupported, incorrect, or inapposite additional facts.  Rezac's case boils down to the notion that a phone call about market interest transformed Leonard into Dinsdale Bros.' agent, and that post-sale communications about Leonard's financial troubles undid a valid cattle sales transaction.  Undisputed facts and law undermine this theory, removing the need for a trial on Dinsdale Bros.' claims.

### RESPONSE TO REZAC'S ADDITIONAL FACTS

"59.    Dinsdale Bros. gave Leonard an order to buy cattle on September 29, 2015."

This non-existent "order" undisputedly could only ocur in a phone call between two people:  Dave Wahlert and Leonard.  Leonard undisputedly already decided to attend the Rezac auction and Mr. Wahlert undisputedly did not instruct him to attend.  Nor did they discuss price or quantity—the essential elements of an order.  Rather, they discussed the market in general and

Dinsdale Bros.' interest in purchasing heifers under 800 pounds and steers under 900 pounds from Leonard, not Rezac (who Wahlert had never heard of).  Doc. 103-1, ¶¶ 5-9; Doc. 103-5 at 16:12-18:8.

"60.   Leonard understood from Wahlert that Leonard should purchase Rezac's entire supply of cattle that fit Dinsdale Bros.' specifications."

Leonard never testified that he had such an understanding and the cited testimony confirms only the lack of any discussion about quantity or price, *i.e.* the lack of an order. Leonard testified that buying Rezac's entire supply was a "a hypothetical question I never had to deal with."   Doc. 103-5, 26:5-16.

"61. Leonard arranged for the trucks to transport the St. Marys Livestock to Dinsdale Bros. *before* the Rezac sale because Leonard knew he had an order to fill for Dinsdale Bros."

Leonard did not have such an order and he only asked his dispatcher prepare to ship livestock to Nebraska, not Colorado where Leonard ultimately shipped the Cattle.  Doc. 103-1, ¶¶ 5-9; Doc. 103-5 at 16:12-18:8.  The referenced testimony comes from a dispatcher who was neither privy to the conversation between Mr. Wahlert and Leonard, nor to the inner workings of Leonard's mind.

"62.    Leonard specifically purchased cattle to comply with Dinsdale Bros.' order."

Leonard undisputedly had no order from Dinsdale Bros.  Doc. 103-1, ¶¶ 5-9; Doc. 103-5 at 16:12-18:8.  Leonard purchased the Cattle as a dealer and on his own account.  Doc. 103-5, 180:19-25; 345:12-346:4; Doc. 103-7; Doc. 103-4 at 2, Section 3.

"63.    Leonard turned down an offer from another buyer for some of the St. Marys Livestock because he bought them for Dinsdale Bros."

Nothing in the record suggests that Leonard discussed this alleged other offer with Dinsdale Bros., because no such conversation occurred.

"64.    Leonard would not have bought the St. Marys Livestock without the order from Dinsdale Bros."

Leonard undisputedly had no order from Dinsdale Bros.  Doc. 103-1, ¶¶ 5-9; Doc. 103-5 at 16:12-18:8.  Leonard purchased the Cattle as a dealer and on his own account.  Doc. 103-5, 180:19-25; 345:12-346:4; Doc. 103-7; Doc. 103-4 at 2, Section 3.

## ARGUMENT

### I.    ALL MATERIAL FACTS REMAIN UNDISPUTED

The parties have admitted all facts needed to save the time and expense of a trial on Rezac's claims against Dinsdale Bros.  "After the moving party has met its initial burden of showing an absence of a genuine issue of material fact, 'the burden then shifts to the nonmoving party, who must offer evidence of specific facts that is sufficient to raise a genuine issue of material fact.  To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.'"   Pioneer Centres v. Alerus Financial, 858 F.3d 1324, 1334 (10th Cir. 2017)(citations omitted).

Rezac, who bears the burden of proof, presents no genuine or material factual dispute.  Rezac makes a vague and unfounded attempt to dispute a few facts set forth in Dinsdale Bros.'

Statement of Material Undisputed Facts.[2]   But Rezac devotes the lion's share of its response to admissions couched as disputes and "objections" about legal conclusions (with no legal cites) and materiality and reciting the same false additional facts referenced above.

When its dust has settled, Rezac does not and cannot dispute that

- On September 29, 2015, and all other times, Leonard acted as a "cattle dealer," meaning he bought and sold cattle on his own account, not for Dinsdale Bros.

- Leonard's September 29, 2015 sale to Dinsdale Bros. proceeded like all prior transactions: Leonard bought cattle on his own account and resold them to Dinsdale Bros., and Dinsdale Bros. had no dealings with anyone but Leonard.

- Leonard paid all transportation and insurance costs associated with the Cattle himself.

- On September 29, 2015, like all other days before it, Leonard could purchase cattle for anyone he liked.   Depending on what Leonard purchased, Dinsdale Bros. could purchase some or all the cattle from Leonard.   Dinsdale Bros. never suggested to Leonard that he had to purchase cattle for Dinsdale Bros.

---

[2] Rezac purports to dispute the nature of the telephone conversations between Mr. Wahlert and Mr. Leonard on September 28-29, 2015, as set forth in ¶¶ 6-8 of Dinsdale Bros.' Statement. Rezac claims that Dinsdale Bros. "gave Leonard specific instructions on what cattle to buy. Wahlert knew Leonard was buying cattle for Dinsdale Bros. from Rezac on September 29, 2015."  The record shows that Mr. Wahlert only told Leonard the kinds of cattle Dinsdale Bros. was *not* considering and nowhere in the cited testimony, or anywhere else, did Mr. Wahlert state that Leonard was buying cattle for Dinsdale Bros.   Rezac also purports to dispute the fact that Leonard sold only part of the cattle he purchased from Rezac to Dinsdale Bros., as confirmed in ¶¶ 28-30 of Dinsdale Bros.' Statement.   Leonard testified that, after purchasing cattle from Rezac, he took off the little light cattle that didn't fit, resold them, got rid of them" to buyers other than Dinsdale Bros.  Doc. 103-5, 309:10-310:13.

5

- On September 29, 2015, like all other days before it, Dinsdale Bros. had no control over whether Leonard attended an auction, the location of any auction Leonard attended, or whether or under what terms Leonard purchased cattle.

- Dinsdale Bros. never exercised control over how Leonard conducted his business.  Whether and how often and at what quantities Leonard sold to Dinsdale Bros. was up to Leonard.

- Rezac's entire agency theory boils down two short telephone conversations with two people: Dave Wahlert and Leonard.  During these two calls:

    – Leonard confirmed that he attended the Rezac auction on his own volition;

    – No purchase price or quantity was discussed;

    – Mr. Wahlert stated that Dinsdale Bros. was in the market for cattle; and

    –  Mr. Wahlert mentioned cattle weights for which Dinsdale Bros. was not in the market.

- Leonard attended Rezac's auction almost every Tuesday, purchased cattle every time, and only attended the auction for yearlings.

- Rezac listed Leonard, and only Leonard, as the buyer for the September 29 sale and Rezac's invoices for the September 29 sale do not mention Dinsdale Bros.

- Neither Rezac nor Leonard provided the Rezac invoice to Dinsdale Bros.

- Leonard bought cattle outside the weight range for which Dinsdale Bros. was in the market, and Leonard did not sell Dinsdale Bros. all the cattle he bought from Rezac on September 29.

- Rezac knew nothing about the two Leonard-Wahlert phone callsand Rezac would have sold the cattle to Leonard regardless.

- Leonard, not Dinsdale Bros., wrote Rezac a check for the cattle he purchased from Rezac.

6

- Leonard did not inform Dinsdale Bros. what he paid Rezac for the cattle or provide Dinsdale Bros. with any invoice or other documentation of Leonard's purchase from Rezac.

- Leonard re-sold part of the cattle he purchased from Rezac to Dinsdale Bros. and issued invoices solely from Leonard to Dinsdale Bros.

- All of Leonard's invoices stated on their face that "100% of sales made by Leonard Cattle Company are on a sold to basis."

- Leonard instructed Dinsdale Bros.—as he did with all his customers—to pay by wire, which Dinsdale Bros. did, paying Leonard $1,004,351.49 for the Cattle.

- Leonard's invoices to Dinsdale Bros. listed himself, and only himself, as the seller.

- Dinsdale Bros. could refuse to purchase the Cattle from Leonard.

- Leonard received no authority or property from Dinsdale Bros.

- Leonard reported the September 29 transaction to the IRS and PSA as a resale transaction in which he purchased cattle from Rezac on his own account, marked up the price, and resold them to Dinsdale Bros.

- Leonard's sworn reports to Packers & Stockyards disclaim any agency relationship.

As detailed in Dinsdale Bros.' opening Memorandum and below, these facts are both undisputed and dispositive of Rezac's claims against Dinsdale Bros.

II.   **EACH OF REZAC'S CLAIMS HINGE ON AN AGENCY RELATIONSHIP BETWEEN DINSDALE BROS. AND LEONARD** (ALL COUNTS)

Rezac does not dispute what this Court already found[3]:  Rezac's only hope of making Dinsdale Bros. pay twice for the Cattle lies in the alleged agency relationship between Leonard and Dinsdale Bros.  Rezac does not allege a direct contractual relationship with Dinsdale Bros., nor does Rezac claim to have sold the Cattle to Dinsdale Bros.  Rezac's documentation of its Cattle sale lists only Leonard as the buyer and never mentions Dinsdale Bros.  And Dinsdale Bros. undisputedly did not write or bounce the check Rezac took for the Cattle.

Rezac undisputedly delivered the Cattle to Leonard and title to goods passes upon delivery under a purchase contract, not payment.  See Desbien v. Penokee Farmers Union, 552 P.2d 917, 924 (Kan. 1976).  So the "mere fact that the [purchaser] did not pay . . . the purchase price for [the goods] on the agreed date of payment did not make the [subsequent purchaser] guilty of a conversion."  Id.

Rezac bestowed the Cattle and any benefits from the Cattle on Leonard, not Dinsdale Bros.  Rezac undisputedly gave Dinsdale Bros. no benefit at all.  In fact, Dinsdale Bros. had undisputedly never heard of Rezac before this lawsuit and Rezac undisputedly did not know of Dinsdale Bros. when selling the cattle to Leonard.  Rezac and Leonard undisputedly had no dealings at all, let alone dealings that could support any of Rezac's claims.

This leaves Rezac with only one hook to impose liability on Dinsdale Bros. for the check that Leonard undisputedly bounced:  proving that Leonard somehow became Dinsdale Bros.' agent.  Despite all its spin on post-sale communications with Pinnacle Bank, Rezac does not and

_____

[3] Doc. 56 at 5-6, 29, 32.

8

cannot deny this fundamental fact.  And, as its Response confirms, Rezac cannot meet its heavy burden of proving this agency relationship.

## III.   THE UNDISPUTED FACTS SHOW THAT NO AGENCY RELATIONSHIP EXISTED BETWEEN DINSDALE BROS. AND LEONARD (ALL COUNTS)

Summary judgment can and should be decided on Rezac's agency failures.  "'What constitutes agency and whether there is competent evidence reasonably tending to prove the relationship is a question of law.'"  Golden Rule Ins. v. Tomlinson, 335 P.3d 1178, 1187 (Kan. 2014)(citation omitted).  Rezac tries to evade this mandate by noting that, "resolution of conflicting evidence" is for the finder of fact.  Id.  But Rezac must have competent conflicting agency evidence to bother with a trial.  Without that evidence, the Court can decide the issue on summary judgment.  Id.  The record shows no conflicting evidence—the evidence consistently undermines any agency claim.

And Rezac cannot evade summary judgment with just any evidence.  The "party relying on agency to establish his claim has the burden of establishing its existence by clear and convincing evidence, and whether there is any competent evidence tending to prove the relationship is a question of law for the court."  AgriStor Leasing v. Meuli, 634 F. Supp. 1208, 1215 (D. Kan. 1986)(citing CIT Financial Servs. v. Gott, 615 P.2d 774, 779 (Kan. App. 1980)).  Within the legal framework established by Golden Rule and confirmed by this Court's prior Order, Rezac cannot meet this burden.

9

### A.   <u>Principal-Agent Relationship</u>

#### 1.   **Control by the Principal**

The lack of control remains the fundamental defect in Rezac's claims. "'Indeed, the essential feature of agency is the right of control, which right includes the right to dictate the means and details of the agent's performance.'" <u>Brady Campaign v. Brownback</u>, 110 F. Supp.3d 1084, 1101 n.73 (D. Kan. 2015)(quoting 3 Am.Jur.2d <u>Agency</u> § 2). Dinsdale Bros.' Motion established Dinsdale Bros.' undisputed complete lack of control over Leonard. Leonard attended and bid and shipped and insured by his own. He acted only as a dealer buying on his own account. Dinsdale Bros. had no right or ability to control any of this.

In response to these undisputed facts, Rezac offers false claims. Contrary to Rezac's urging, Dinsdale Bros. had no role in Leonard's decision to attend the Rezac auction—Leonard made his own decision to attend, like he did every Tuesday.[4] Nor did Dinsdale Bros. tell Leonard what to buy—Mr. Wahlert generally suggested that Dinsdale Bros. was in the market and gave no price or quantity terms.[5] And Leonard purchased cattle at almost every Rezac auction and purchased cattle on September 29 that he sold to others—he did not purchase solely for Dinsdale Bros.[6] Finally, Leonard confirmed in sworn testimony and sworn statements to federal authorities that he attended and bought the Cattle as a dealer buying on his own account.[7]

The record belies all of Rezac's claims contrary to these undisputed facts. Whatever

---

[4] Doc. 103-1, ¶¶ 5-7, 10; Doc. 103-5, 16:12-18:8, 172:20-173:1, 355:16-356:15.
[5] Doc. 103-1, ¶ 9; Doc. 103-5, 16:12-18:8.
[6] Doc. 103-5, 172:20-173:1, 185:11-14, 188:16-189:21.
[7] Doc. 103-5, 342:3-25, 344:13-21, 345:12-346:4; Doc. 103-7.

attenuated implications remain cannot satisfy the clear and convincing burden by which Rezac must prove control.  This failure dispenses with all Rezac's claims.

### 2.    Assent

To meet its burden, Rezac must show assent by both agent and principal.  As to Dinsdale Bros., Rezac alleges only Mr. Wahlert's statement of market interest.  This statement cannot show assent to have Leonard represent Dinsdale Bros. at the auction or assent to be bound by Leonard's bids.

As to Leonard, Rezac offers only unilateral purchase and transport decisions.  Just bidding on cattle cannot support Leonard's assent to act as Dinsdale Bros.' fiduciary, nor can arranging transportation.  And Leonard did not purchase cattle solely at the weights for which Dinsdale Bros. was in the market.[8]  Nor did Leonard sell all the cattle he purchased to Dinsdale Bros.[9]

Rezac must show—by clear and convincing evidence—words or conduct affirmatively and mutually assenting to entering an agency relationship.  See Golden Rule, 335 P.3d at 1188.  General statements of being in the market do not fit this bill.  Nor do a dealer's unilateral decisions.  Again, Rezac cannot establish a fundamental agency element.

### 3.    Benefit to the Principal

Rezac cannot dispute that, on September 29, 2015, Leonard did what he did every other Tuesday:  attend and bid at the Rezac auction.  Nor can Rezac dispute that Dinsdale Bros. did not receive the benefit of exclusivity in weight or sale:  Leonard bought cattle above the

---

[8] Doc. 103-5, 308:16-309:1.
[9] Doc. 103-5, 309:10-310:13.

weights for which Dinsdale Bros. was in the market and resold cattle to other buyers.  The only benefit that Dinsdale Bros. could have received from an agent at the Rezac auction would be knowing the terms of Leonard's purchase from Rezac.  But Leonard carefully concealed those terms from Rezac, like any reseller would.

In any sale transaction—be it a cattle sale or a consumer retail purchase—sellers deliver the goods that buyers want to purchase.  But that does not amount to a benefit supporting an agency.[10]  That proof gap compels summary judgment for Dinsdale Bros.

## B.    <u>Authority</u>

### 1.    **Actual Express Authority**

Rezac has abandoned all but the most direct and overt type of authority—actual express authority.  The undisputed facts undermine any such authority.  An alleged principal must state express authority "'in very specific or detailed language.'"  <u>Golden Rule</u>, 335 P.3d at 1188 (quoting <u>Restatement (Third) of Agency</u> § 2.01 cmt. b)).  Far from specific or detailed language, Dinsdale Bros. neither told Leonard to attend the auction (he was already going) nor how many head to purchase nor what price to pay.  No document surrounding the transaction hints at actual express authority.

Against this backdrop, Rezac asks this Court to *imply* authority to support a claim of actual *express* authority.  Rezac points to past dealings, Leonard's unilateral shipping decision, and the weights of cattle for which Dinsdale Bros. was in the market.  Setting aside the frail

---

[10] In one of many inconsistencies in its claims, Rezac simultaneously claims that *Leonard* conferred a benefit on Dinsdale Bros. for Rezac's agency claims, and that *Rezac* conferred the benefit for its unjust enrichment/quantum meruit claims.  Rezac got away with such inconsistencies at the pleading stage but cannot do so at this late stage.

basis these claims provide to imply an agency, Rezac does not and cannot point to specific or detailed language in which Dinsdale Bros. expressly granted actual agency authority.

Instead, Rezac points to K.S.A. §§ 84-2-305 & -306, UCC provisions governing sales, not agency. These provisions, like all other Article 2 provisions, govern sale transactions between sellers and buyers. See K.S.A. § 84-2-202. Certainly, the transactions here were strictly limited to sale transactions between a seller and a buyer (Rezac/Leonard then Leonard/Dinsdale Bros.). But Article 2 does not affect agency relationships and this Court should reject Rezac's invitation to turn every Article 2 sale into an agency inquiry. Dinsdale Bros.' short communications with Leonard were "indefinite" under §§ 2-305 & -306 because they left their dealings open to a future sales transaction. That indefiniteness removes actual express authority for agency purposes. Under the statutes it cites, Rezac's agency theory fails and its claims fail along with the theory. The Court should grant summary judgment for Dinsdale Bros.

## IV.    REZAC CANNOT SHOW BREACH OF CONTRACT (COUNT I)

Rezac concedes the failure of its breach of contract claim: the claim rises and falls with Rezac's agency theory. Rezac dwells on the unremarkable fact that, if an agency relationship exists, an authorized agent may represent his principal at an auction. But such a relationship undisputedly did not exist between Leonard and Dinsdale Bros. As detailed above: Leonard attended and bid at the auction without Dinsdale Bros.' control; neither Dinsdale Bros. nor Leonard assented to an agency relationship; Dinsdale Bros. received the benefit of a sale, not an

13

agency; and Leonard lacked actual express authority.  These defects in Rezac's contract claim are borne out in testimony, documents, and government filings from Leonard and Dinsdale Bros.

The cases cited by Rezac further bear out these defects.  Rezac cites <u>Grandi v. Thomas</u>, 391 P.2d 35 (Kan. 1964), in which the court found that a principal could be bound by the auction bid of a bidder "who is in fact the agent of [the principal] for that purpose, and such agency is disclosed by the memorandum of sale."  <u>Id.</u> at 744.  Dealings outside those confines do not bind the principal.  <u>See id.</u> at 745.  Rezac also cites <u>C.A. Karlan Furniture v. Richardson</u>, 324 P.2d 180 (Kan. 1958), which also involved an actual agency created by express instructions and confirmed when the television in question was delivered to the principal in a truck bearing the seller's name.  <u>See id.</u> at 182.

Unlike these cases, Leonard was not in fact Dinsdale Bros.' agent.  Dinsdale Bros. gave no instructions to Leonard before he purchased the Cattle from Rezac.  After that, Leonard delivered the Cattle and documented his resale in his own name, not Rezac's name, on a "100% . . . sold to basis."  And no such agency was disclosed to Rezac.  Before completing the sale to Leonard, Rezac had no idea that Leonard had spoken to Dinsdale Bros. and certainly did not undertake the sale believing an agency existed.  After the sale, Leonard noted only that he planned to resell the Cattle to Dinsdale Bros.  At all times Rezac would have sold the Cattle to Leonard with or without the Dinsdale Bros. resale.[11]

Rezac's argument boils down to the notion that, by merely attending the auction after a conversation about Dinsdale Bros.' market interests, Leonard became Dinsdale Bros.' agent.

---

[11] Doc. 103-6, 132:24-133:13, 134:13-135:3, 174:5-9; Doc. 103-5, 20:6-13, 204:7-205:17.

That argument fails to establish an agency or contractual privity and Rezac's contract claim should be dismissed.

## V.    REZAC CANNOT SHOW CONVERSION (COUNT II)

Rezac continues asserting a conversion claim anchored in facts and law that do not bear on the tort of conversion.  First, behind all the dealings claimed by Rezac are two express written contracts—the Rezac/Leonard sale contract and the Leonard/Dinsdale Bros. resale contract. Conversion claims are barred when a "contract created and defined the rights to the property which was subject matter of the conversion claim."  Regal Ware v. Vita Craft, 653 F. Supp.2d 1146, 1152 (D. Kan. 2006).  When a plaintiff transfers "pursuant to specific provisions of" a contract, the plaintiff "must rely upon its breach of contract claim, rather than a conversion claim."  Id.

Rezac tries to skirt these mandates by claiming an independent conversion claim arising from communications with Pinnacle Bank.  The most Rezac can spin from these communications is an unfounded claim of lack of good faith purchaser status.  But Rezac cites no case law wedding conversion liability to good faith purchaser determinations because no such case law exists.  Post-contract conversations cannot change the fact that a contract created and defined the rights to the property underlying the conversion claim.  Nor can post-contract conversations change the fact that the Cattle were transferred under specific contract provisions.

After all this time, Rezac still wants it both ways—asserting dual claims for breach of a contract to purchase the Cattle, while simultaneously claiming conversion of the same cattle.

15

Rezac does not even attempt to square these two claims because doing so would concede the obvious:  Rezac cannot claim conversion of Cattle transferred under a contract.

Second, Dinsdale Bros. undisputedly had express contractual authorization to receive the Cattle.  That contract gave Dinsdale Bros. authority to possess the Cattle.  See K.S.A. §§ 84-2-403(1), 84–1–201(29).   Title to goods passes upon delivery under a purchase contract, not payment.  See Desbien v. Penokee Farmers Union, 552 P.2d 917, 924 (Kan. 1976).  So the "mere fact that the [purchaser] did not pay . . . the purchase price for [the goods] on the agreed date of payment did not make the [defendant] guilty of a conversion."  Id.  Rezac insists that Dinsdale Bros.' authorization somehow vanished when Dinsdale Bros. learned of Rezac's problems with Leonard.  But Dinsdale Bros. had received the Cattle in a purchase transaction and when "goods have been delivered under a transaction of purchase the purchaser has such power even though . . . the delivery was in exchange for a check which is later dishonored."  K.S.A. § 84-2-403(1)(b).

Finally, while it retained claims against Leonard for a bad check, Rezac undisputedly gave up possession of the Cattle.  "'To maintain an action for conversion, a plaintiff must have actual possession of the property or a right to immediately take possession of the property.'"  Queen v. Lynch Jewelers, 55 P.3d 914, 921 (Kan. App. 2002)(citation omitted).  Rezac claims, at best, some contingent right to possess the Cattle.[12]  Rezac cites no authority for the notion that a payment dispute entitled Rezac to immediate possession because no such authority exists.

---

[12] An immediate right to possession would require a replevin claim.  Rezac initially claimed replevin, but then abandoned that claim to avoid litigating its claims in Colorado, where the Cattle were located.

In addition to lacking any support in agency law, Rezac's conversion claim seeks to use tort law to enforce contract rights, converting every failed sale under Article 2 into a tort. Kansas law does not permit such claims and neither should this Court.

## VI.   REZAC CANNOT SHOW UNJUST ENRICHMENT OR QUANTUM MERUIT (COUNTS III & V)

Rezac does not and cannot refute three fundamental failures of its unjust enrichment/quantum meruit claims.  First, Rezac does not dispute that its claims against Dinsdale Bros. arise out of Rezac's contract with a third person, Leonard.  "'A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person.'"  J.W. Thompson Co. v. Welles Products, 758 P.2d 738, 744 (Kan. App. 1988)(quoting Restatement of Restitution § 110).  Rezac does not even try to dispute that, any benefit it claims to have conferred upon Dinsdale Bros. arose from Rezac's written contract with Leonard.  Nor does Rezac dispute that it may not pursue these claims against Dinsdale Bros. merely due to Leonard's performance failure.  Yet that is what Rezac asks this Court to allow.

Second, Rezac undisputedly conferred no benefit upon Dinsdale Bros.  One of the "basic elements of an unjust enrichment claim under Kansas law . . .  'a benefit conferred upon the defendant by the plaintiff.'"  School-Link Tech. v. Applied Resources, 471 F. Supp.2d 1101, 1116 (D. Kan. 2007)(citation omitted).  Rezac does not dispute its complete lack of dealings with Dinsdale Bros. and Rezac does not even try to articulate some benefit it conferred upon Dinsdale Bros.  Instead, Rezac insinuates that Dinsdale Bros.' post-sale knowledge of Rezac's troubles

with Leonard somehow amounts to a benefit conferred by Rezac.  That does not equate to a benefit—factually or legally.[13]

Third, Dinsdale Bros. had no dealings with Rezac at all, let alone dealings that could support some kind of promise on which Rezac could change its position to its detriment.  See J.W. Thompson, 758 P.2d at 745.  Rezac alleges no such dealings or change in position in its Response.  Instead, Rezac relies only on alleged conversations between Dinsdale Bros. and Pinnacle Bank.  Those conversations cannot support a promise by Dinsdale Bros. or reliance by Rezac, leaving Rezac with no support for this element of unjust enrichment/quantum meruit.

Finally, no inequitable circumstances support unjust enrichment when the plaintiff "did not change its position to its detriment as a result of any promise implied by law on the part of" the defendant.  J.W. Thompson, 758 P.2d at 745.  Dinsdale Bros. undisputedly had no dealings at all with Rezac and Dinsdale Bros., let alone dealings involving a promise on which Rezac relied.  The lack of such inequitable circumstances once again leaves Rezac without unjust enrichment/quantum meruit claims.

## VII.   REZAC CANNOT SHOW CONSPIRACY (COUNT VI)

Rezac defends its conspiracy claim with its spin on communications between Dinsdale Bros. and Rezac.  But a trial on those communications would only waste time.  "Conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy."  Stoldt v. City of Toronto, 678 P.2d 153, 161 (Kan. 1984).  Despite all the

---

[13] Rezac supports its agency claim with the notion that *Leonard*, not Rezac, conferred a benefit on Dinsdale Bros.  Indulging this inconsistency was acceptable at the pleading stage, but not on summary judgment.

18

intrigue it claims, Rezac cannot spin this intrigue into unlawful conduct.  None of the alleged communications are actionable as an independent tort, leaving Rezac without a conspiracy claim.

## CONCLUSION

With trial upon it, Rezac can no longer cling to the saving graces that carried it through the pleading stage.  Rezac seeks to recover a debt from a business it never dealt with.  It seeks to upend the UCC's normal sales process, turn that process into an agency trap, and commingle tort and contract law.  To accomplish these feats, Rezac must sidestep undisputed facts that undermine its claims.  Dinsdale Bros.' Motion for Summary Judgment established what Rezac's Response confirmed:  none of this is proper trial fodder.  This Court should grant summary judgment dismissing Rezac's claims against Dinsdale Bros.

Dated:  July 27, 2018.

*s/ Thomas Hiatt*
Scott C. Sandberg, Admitted Pro Hac Vice
John O'Brien, Admitted Pro Hac Vice
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, CO  80203
Telephone:  303.839.3800 / Fax:  303.839.3838
ssandberg@spencerfane.com; jobrien@spencerfane.com

Thomas Hiatt
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
thiatt@spencerfane.com

*Attorneys for Defendant Dinsdale Bros., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2018, a copy of the foregoing was served via the Court's Electronic Case Filing System on the following:

Robert M. Thompson
Michelle M. Masoner
Stephanie C. Bradshaw
Bryan Cave LLP
1200 Main Street, Suite 3800
Kansas City, Missouri 64105
Telephone:  816-374-3200
rmthompson@bryancave.com;
michelle.masoner@bryancave.com;
stephanie.bradshaw@bryancave.com
*Attorneys for Rezac Livestock Commission Co.*

Timothy A. Shultz, KS #16060
Goodell, Stratton, Edmonds & Palmer, LLP
515 S. Kansas Ave.
Topeka, KS 66603
Phone: 785-233-0593
tshultz@gseplaw.com
*and*
T. Randall Wright *PRO HAC VICE*
Baird Holm LLP
1700 Farnam Street, Suite 1500
Omaha, NE 68102
Phone: 402-344-0500
rwright@bairdholm.com
*Attorneys for Pinnacle Bank*


*s/Pamela Thede*
for Spencer Fane LLP

20