# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

REZAC LIVESTOCK COMMISSION CO., INC.,

    Plaintiff,

v.

PINNACLE BANK, et al.,

    Defendants.

Case No. 15-4958-DDC

## MEMORANDUM AND ORDER

Plaintiff Rezac Livestock Commission Co., Inc., asserts claims against defendants Dinsdale Bros., Inc., ("Dinsdale") and Pinnacle Bank ("Pinnacle") arising from a cattle sale gone wrong. The alleged facts underlying plaintiff's claims are briefly summarized as follows: Plaintiff sold cattle at an auction to Charles Leonard. Mr. Leonard wrote a check to plaintiff. Mr. Leonard sold those cattle to Dinsdale. And, Dinsdale wired funds to Mr. Leonard's bank account at Pinnacle. Ultimately, Mr. Leonard's check to plaintiff, presented against that same bank account, bounced when plaintiff tried to deposit it. Plaintiff asserts conversion, unjust enrichment, quantum meruit, and civil conspiracy claims. Dinsdale has counterclaimed seeking a declaratory judgment about its title to the cattle.

On December 19, 2019, the court held a final pretrial conference for the trial scheduled to begin in early January. At that conference the court provided rulings on certain pending motions in limine and heard argument from the parties on others. Below, the court memorializes its rulings on all motions in limine filed. And, the court briefly addresses the claims remaining for trial.

Five pending Motions in Limine (Docs. 170, 172, 175, 176, 178) are before the court. As the court explained at the pretrial conference, the rulings below are subject to change if the circumstances at trial merit a different conclusion. Any good faith arguments to that end by the parties must be raised with the court outside the presence of the jury. But, the court has considered the parties' arguments asserted in their briefings on these motions carefully and memorializes its rulings based on the current state of affairs below.

1. **Plaintiff's Motion in Limine to Exclude Testimony of John Barthel (Doc. 175)**

Plaintiff's motion to exclude the testimony of defendant Dinsdale's expert witness, John Barthel, is granted. This expert's testimony addresses whether Mr. Leonard acted as an agent of Dinsdale when he purchased the cattle in September 2015. Because the court ruled on summary judgment that the evidence was insufficient to support a finding that Mr. Leonard acted in an agent capacity, the court grants the motion to exclude his testimony.

2. **Plaintiff's Motion in Limine to Exclude Evidence Regarding Collateral Source Payment by Other Rezac Entities (Doc. 176)**

Plaintiff's motion to exclude evidence about collateral source payment by other related entities is granted. The collateral source rule bars evidence of payments made by a party independent of the tortfeasor to an injured party to cover damages caused by a tortfeasor. *See Gregory v. Carey*, 791 P.2d 1329, 1333 (Kan. 1990) ("[T]he collateral source rule provides that benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer.").

Defendant Dinsdale argues the timing of the payments between plaintiff and its related entities makes the collateral source rule inapplicable to this case. But, the court is not persuaded. Plaintiff alleges to have suffered damages when it sold cattle at auction to Mr. Leonard, paid the parties who provided the cattle to be auctioned, then never received payment for the cattle it sold.

The parties do not dispute that plaintiff is the one who was owed over $980,000 from the cattle sale but never was paid, and thus plaintiff is the "real party in interest." *See R.J. Enstrom Corp. v. Interceptor Corp.*, 520 F.2d 1217, 1219 (10th Cir. 1975). Defendant has not shown how the movement of money between plaintiff and related corporate affiliates to cover the payments due to the cattle sellers/owners until plaintiff receives the payment owed from its transaction with Mr. Leonard eradicates plaintiff's status as the interested party or otherwise eliminates plaintiff's damages. Thus, the court grants plaintiff's motion.

**3. Defendant Dinsdale's Motion in Limine to Exclude Evidence of Direct Payment Measure (Doc. 170)**

Defendant Dinsdale moves to exclude evidence of its direct payment measure. Defendant Pinnacle, who is alleged to have conspired with Dinsdale, asserts a similar argument in its Motion in Limine (Doc. 178). Dinsdale argues the court should exclude evidence of its practice of paying sale barns directly for certain purchases as a subsequent remedial measure because it was instituted after the events at issue here. Dinsdale also argues such evidence is irrelevant to the issues here, and even if relevant, would confuse the jury and unfairly prejudice Dinsdale. Dinsdale contends such evidence is not probative to determine whether it acted in good faith at the time of the initial transaction.

Plaintiff responds that such evidence is not remedial, but shows what is required to observe reasonable commercial standards of fair dealing. Plaintiff argues such evidence is relevant to both Dinsdale's counterclaim for a declaration that it has clear title to the cattle as a good faith purchaser and to plaintiff's conversion claim. Plaintiff characterizes this evidence as an admission of a party-opponent, showing that Dinsdale knew it would not have good title to the cattle at issue here if it didn't pay plaintiff directly. And, even if the evidence was determined to be remedial, plaintiff argues such evidence shows the feasibility of direct

payment—*i.e.*, that Dinsdale could have paid plaintiff directly.[1] Plus, plaintiff believes the impeachment exception under Fed. R. Evid. 407 will apply here—it plans to use such evidence to impeach testimony from Dinsdale that it had no obligation to pay plaintiff directly to secure good title to the cattle.

Under Fed. R. Evid. 407, evidence of a subsequent remedial measure is not admissible to prove culpable conduct. Fed. R. Evid. 407; *see also* Kan. Stat. Ann. § 60-451 ("When after the occurrence of an event remedial or precautionary measures are taken, which, if taken previously would have tended to make the event less likely to occur, evidence of such subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event."); *Stahl v. Bd. of Cty. Comm'rs of the Unified Gov't of Wyandotte Cty./Kansas City, Kan.*, 101 F. App'x 316, 321–322 (10th Cir. 2004) (upholding district court's exclusion of evidence that defendant suspended use of a fitness test under Rule 407 over plaintiff's arguments such evidence establishes a pretext for gender discrimination because Rule 407 forbids admission of subsequent remedial measures to prove culpable conduct). "But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407; *see also Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1212–13 (10th Cir. 2006) (explaining that the "impeachment exception to Rule 407 is necessary to prevent litigants from taking unfair advantage of the Rule by adopting a position at trial that is inconsistent with their previous decision to take remedial measures after" the incident in question, but also that this exception "must be read narrowly" and used only where "necessary to prevent the jury from being misled" (internal citations and quotation omitted)); *Hull v. Chevron U.S.A., Inc.*, 812 F. 2d 584, 586–87 (10th Cir. 1987) (describing how

---

[1] Defendants report they will not dispute feasibility at trial.

4

Rule 407 seeks to balance competing interests of admitting evidence for probative purposes with encouraging people to take remedial measures).

Evidence showing Dinsdale contemplated paying plaintiff directly for the sale at issue here appears relevant and admissible. Whether evidence of direct payments to sale barns after this particular sale is admissible is a tougher question. Under Fed. R. Evid. 104(a), "[t]he court must decide any preliminary question about whether . . . evidence is admissible." And, under Fed. R. Evid. 104(c)(3), the court "must conduct any hearing on a preliminary question so that the jury cannot hear it if . . . justice so requires." At present, defendants have not met their burden for the court to exclude such direct payment evidence. But, in the words of Rule 104, "justice requires" a hearing of the evidence about those direct payment measures—and how plaintiff will use that evidence—outside the presence of the jury, before the court can determine its admissibility. After hearing the evidence, the court will be in a better position to determine whether these direct payments are a subsequent remedial measure that is being offered to prove culpable conduct. The court thus grants the motion in part and denies it in part. It denies any aspect of the motion seeking to exclude evidence that Dinsdale contemplated paying plaintiff directly for the Rezac cattle. It grants the remainder of the motion, however, until it can conduct a hearing on the threshold question whether Dinsdale's policy change is a subsequent remedial measure.

The court will hold such hearing as early during the trial as the parties' schedules permit. If a ruling is needed before jury selection, the court can conduct the hearing at 8:15 a.m. on the first day of trial. Otherwise, the court could conduct the hearing over the lunch hour, at the end of the day, or in the morning before bringing the jurors into the courtroom. The parties are

5

directed to coordinate with one another and contact the Courtroom Deputy about which scheduled trial day and time they will use to present the direct payment evidence to the court.

**4.      Defendant Dinsdale's Motion in Limine to Exclude Evidence of Unrelated Dealings (Doc. 172)**

Defendant Dinsdale's motion to exclude evidence of unrelated dealings is denied. Dinsdale asks the court to exclude evidence of livestock joint ownership and financing dealings between Dinsdale and Mr. Leonard. Dinsdale contends such evidence is irrelevant and will confuse the jury and result in unfair prejudice to Dinsdale. The court finds Dinsdale's previous dealings with Mr. Leonard likely will provide probative value at trial. The court will be able to determine more appropriately whether and to what extent such dealings should be admissible in context, at trial. As discussed at the pretrial conference, the court will determine what crosses the line from relevant, admissible evidence to inadmissible evidence under Fed. R. Evid. 402 or 403 upon hearing such an objection at trial.

**5.      Defendant Pinnacle's Motion in Limine (Doc. 178)**

The court addresses defendant Pinnacle's motion in four parts, grouping the issues in the manner addressed in Pinnacle's Memorandum in Support of its Motion in Limine (Doc. 179).

### i. Timmerman Certificate of Deposit and Related Employee Firing

First, Pinnacle urges the court to exclude evidence that Mr. Timmerman pledged a Certificate of Deposit as collateral security for Mr. Leonard's Line of Credit with Pinnacle. And, Pinnacle moves to exclude evidence that it terminated an employee for releasing the Certificate of Deposit and related funds to Mr. Timmerman. Pinnacle contends this evidence is irrelevant and highly prejudicial. Plaintiff responds that this evidence will show that defendants handled their dealings with Mr. Leonard differently than others, supporting its conspiracy claim.

The court grants Pinnacle's motion. At at this stage, plaintiff has not met its burden to establish the probative value of this evidence. And, as explained below, the court predicts the only claim that will survive against Pinnacle Bank is unjust enrichment. If plaintiff believes, based on the development of the case at trial, such evidence is probative and admissible within the balance of Fed. R. Evid. 401 and 403, it may re-raise the issue with the court outside presence of the jury. The court then will determine—in light of the evidence presented at trial— whether such evidence is admissible.

### ii. Change in Business Practices

Next, Pinnacle asks the court to exclude evidence that Dinsdale changed its business practices and is now paying sale barns directly for some sales. As discussed above for Dinsdale's equivalent motion (Doc. 170), the court will conduct a hearing on this evidence outside the presence of the jury to determine admissibility.

### iii. Conversion and Conspiracy Evidence; Unjust Enrichment Claim Against Pinnacle

Pinnacle requests exclusion of any evidence purporting to show that the bank converted funds from Mr. Leonard's account or engaged in any conspiracy to convert such funds. The court previously determined plaintiff's conversion claim against Pinnacle fails as a matter of law. Accordingly, any conspiracy claim based upon such conversion of sale proceeds also fails. So, Pinnacle argues, this evidence is irrelevant. And, now that the conversion claim against it is no longer in the case, Pinnacle argues the civil conspiracy claim against it fails as a matter of law. It contends each defendant must have committed an actionable tort for such defendant to be liable for civil conspiracy. And, Pinnacle asserts, the remaining unjust enrichment claim against it cannot support a civil conspiracy claim.

Plaintiff argues Pinnacle's motion is too broad and vague for the court to exclude any evidence on these topics at this stage. Instead, plaintiff argues, the better course of action is to determine what evidence should be excluded at trial when the facts have started to develop. And, plaintiff asserts its civil conspiracy claims against both defendants remain, based on the conversion claim against Dinsdale.

After reviewing Kansas law on this issue, the court agrees with Pinnacle that, under Kansas law, the civil conspiracy claims fail as a matter of law. But, this issue is not properly before the court. And, the court agrees with plaintiff that Pinnacle's motion to exclude conversion and conspiracy evidence is too vague. The court instead will determine at trial what evidence is no longer relevant as opposed to what evidence is probative to remaining claims.

A brief recap of this case's history is helpful. Plaintiff's Second Amended Complaint (Doc. 46) asserted five claims against Dinsdale—breach of contract, conversion (of the cattle), quantum meruit, unjust enrichment, and civil conspiracy. Plaintiff asserted three claims against Pinnacle—conversion (of proceeds of the cattle), unjust enrichment, and civil conspiracy. Specifically, on the conspiracy claim, the Second Amended Complaint alleged Pinnacle and Dinsdale conspired "to convert, misappropriate, and inequitably retain amounts due" to plaintiff. Doc. 46 at 14. Dinsdale asserted a Counterclaim seeking a declaration that it has good title to the cattle. Doc. 37 at 6–8. In the Pretrial Order, which supersedes all pleadings and controls the case, plaintiff asserted in the "Legal Claims and Defenses" section claims for conversion and conspiracy to convert against Pinnacle and Dinsdale based on both the cattle and the sale proceeds. Doc. 101 at 10–11. Plaintiff also asserted breach of contract and unjust enrichment claims against Dinsdale. *Id.* at 11. However, plaintiff did not reference an unjust enrichment

claim against Pinnacle in this section of the Pretrial Order. *See id.* Yet, Pinnacle addressed unjust enrichment in its defenses. *Id.* at 13.

In December 2018, the court considered all claims on summary judgment. The court granted summary judgment to Dinsdale on the breach of contract claim against it. Doc. 125 at 38–47. Initially, all other claims survived summary judgment. *See* Doc. 125. But, on a motion to reconsider, the court granted summary judgment to Pinnacle on the conversion claim against it. *See* Doc. 157. While the court reconsidered the conversion claim against Pinnacle and determined it fails as a matter of law, Pinnacle did not ask the court to reconsider any other claims against it—*i.e.*, the unjust enrichment and civil conspiracy claims. *See* Docs. 127, 128.

Now that trial looms, just two weeks away, Pinnacle reminds the court that much of its summary judgment discussion of claims against Pinnacle was tied, at least in part, to the conversion claim that now has been dismissed. However, only the motions in limine are before the court—these arguments were not raised before the court in the motion to reconsider. Below, the court addresses Pinnacle's arguments with respect to the civil conspiracy claim. Then, the court addresses the unjust enrichment claim. In the next section of this Order, the court addresses the punitive damages request against Pinnacle. However, the court addresses these issues to set the stage for trial, and confines its rulings to the motions pending before the court now.

### *The Civil Conspiracy Claims Against Defendants Fail as a Matter of Law*

At the final pretrial conference, the court raised the question whether the conversion claim against Dinsdale was sufficient to support the civil conspiracy claim against both defendants. Indeed, conspiracy often is "invoked to support liability of one person for a tort committed by another." *Soni v. Boston Med. Ctr. Corp.*, 683 F. Supp. 2d 74, 100 (D. Mass.

9

2009). And, in some jurisdictions, an actionable tort or unlawful act by one defendant could support a civil conspiracy claim against another defendant who itself did not commit an actionable tort or unlawful act—provided the other civil conspiracy elements, *e.g.*, an agreement and common goal, are proved.[2]

But, Kansas law requires something more. For a civil conspiracy claim to be actionable, Kansas law requires a "commission of some wrong giving rise to a cause of action independent of the conspiracy." *Stoldt v. City of Toronto, Kan.*, 234 Kan. 957, 967 (Kan. 1984). As explained below, a review of Kansas case law and binding precedent from the Tenth Circuit makes it clear: the defendant against whom a civil conspiracy is alleged must personally have committed an unlawful act. If the defendant himself has committed an unlawful act, then he also could be held liable for an act done by another member of the conspiracy. *See Vetter v. Morgan*,

---

[2] A number of courts have addressed civil conspiracy claims in this manner. *See, e.g.*, *PFS Distrib. Co. v. Raduechel*, 574 F.3d 580, 592–94 (8th Cir. 2009) (upholding district court's determination that a new trial was not warranted where jury verdict found no civil conspiracy under Iowa law, which requires "an agreement between the actor and the party sought to be held liable" and thus requires an agreement "between two persons to commit a wrong against another" because evidence existed that these defendants had no knowledge of two other defendant's scheme to breach fiduciary duties or misappropriate trade secrets and thus lacked the intent necessary enter into a conspiracy); *Novak v. Merced Police Dep't*, No. 1:13-CV-1402 AWI BAM, 2014 WL 730725, at *5 (E.D. Cali. Feb. 24, 2014) (explaining under California law a civil conspiracy claim may "impose[] liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration" because by participating the co-conspirator "adopts as his or her own the torts of other coconspirators," provided that the defendant "[has] actual knowledge that a tort is planned" (internal quotations and citations omitted); *Harris v. Commerce City*, No. 09-cv-01728-MSK-KMT, 2010WL 3307465, at *4 n.8 (D. Colo. Aug. 18, 2010) (applying Colorado law and explaining that civil conspiracy is "a legal theory by which one defendant can be held liable for substantive wrongs committed by another" and if plaintiff could not show that one defendant "himself performed a certain unlawful act" but could show that defendant "entered into an agreement with someone else by which that person would perform the unlawful act, the doctrine of civil conspiracy might allow" the plaintiff to hold that defendant "liable for damages caused by the other person's conduct"); *Johnstown Feed & Seed, Inc. v. Cont'l W. Ins. Co.*, 641 F. Supp. 2d 1167, 1183–84 (D. Colo. 2009) (explaining under Colorado law that a civil conspiracy allows a plaintiff to "impose liability on one party for unlawful conduct engaged in by another" and to state a claim against defendant for civil conspiracy, the plaintiffs must show "that [defendant] reached a meeting of the minds with another person as to an objective or course of action, the other person engaged in an unlawful act in furtherance of that agreement, and that the Plaintiffs were damaged as a result," and "the unlawful act committed by the co-conspirator must be independently actionable"); *Liberty Sav. Bank, FSB v. Webb Crane Serv., Inc.*, No. Civ.A03CV2218REBCBS, 2005 WL 1799300, at *6 (D. Colo. July 27, 2005) (applying Colorado law's civil conspiracy elements—which are similar to Kansas law's elements—and holding on summary judgment that a civil conspiracy claim could be asserted against GE, despite GE's arguments that plaintiff could not establish any unlawful acts by GE, because the "performance of an unlawful act by another party to the conspiracy . . . would be sufficient" if the other elements were satisfied).

913 P.3d 1200, 1205–06 (Kan. Ct. App. 1995) ("When all elements are present, any act done by a member of the conspiracy in furtherance of the common object and in accordance with the general plan becomes the act of all, and each conspirator is responsible for the act. . . . Consequently, the existence of the conspiracy may be proved by proving the acts of the various defendants.").

A plaintiff alleging a civil conspiracy claim under Kansas law must prove the following requirements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Citizens State Bank, Moundridge v. Gilmore*, 603 P.2d 605, 613 (Kan. 1979). And, for civil conspiracy to be actionable against a defendant, *that defendant* must have committed an actionable underlying unlawful act. *See Meyer v. Christie*, 634 F.3d 1152, 1157 (10th Cir. 2011) ("[A] defendant cannot be liable for civil conspiracy under Kansas law where that defendant did not commit an independent actionable tort, regardless of whether tort claims have been alleged against other defendants."); *Pepsi-Cola Bottling Co. of Pittsburgh, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1268 (10th Cir. 2005) (upholding grant of summary judgment against civil conspiracy claim against defendants PepsiCo and Bottling Group because no actionable tort against PepsiCo existed, even though actionable tort against Bottling Group for tortious interference remained); *see also JP Morgan Tr. Co., Nat'l Ass'n v. Mid-America Pipeline Co.*, 413 F. Supp. 2d 1244, 1269 (D. Kan. 2006) (explaining that the Kansas Supreme Court has looked to the Restatement (Second) of Torts for guidance on civil conspiracy claims, which defines civil conspiracy as a means of holding a person liable "for harm resulting to a third person from the tortious conduct of another if he or she does a tortious act in concert with the other or pursuant to a common design" (internal quotations and citation omitted)). If no

independent tort claim is alleged against a defendant, "the conspiracy claim against it cannot be upheld as a matter of law." *Meyer*, 634 F.3d at 1157.

Here, no independent tort claim remains against Pinnacle. The only remaining claim against Pinnacle—unjust enrichment—is quasi-contractual in nature and cannot be used to support a civil conspiracy claim. *See Meyer*, 634 F.3d at 1157–58, 1162 (explaining that the underlying cause of action to support a civil conspiracy claim must be tortious in nature and reversing jury's finding of liability against limited liability company on a civil conspiracy claim where no independent actionable tort against it was alleged, but upholding finding of liability for unjust enrichment); *JP Morgan Tr. Co.*, 413 F. Supp. 2d at 1269 (predicting the Kansas Supreme Court would require "a civil conspiracy claim [to] be based on a valid, actionable, underlying tort" and not based on a breach of contract claim); *Univ. of Kan. Hosp. Auth. v. Bd. of Comm'rs of Cty. Of Wabaunsee*, 327 P.3d 430, 441 (Kan. 2014) (explaining unjust enrichment/quantum meruit are equitable doctrines under Kansas law); *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 846 (Kan. 1996) (explaining unjust enrichment is a quasi-contract action and equitable in nature under Kansas law). Because no unlawful overt act that is tortious in nature by Pinnacle remains, the court predicts any civil conspiracy claim against Pinnacle, upon a proper motion, is likely to fail as a matter of law and could not be submitted to the jury. *See Meyer*, 634 F.3d at 1156–58. But, at this stage of the proceedings, the civil conspiracy claim against Pinnacle remains because it was not addressed by the parties in the motion to reconsider.

If the civil conspiracy claim against Pinnacle fails as a matter of law, the civil conspiracy claim against Dinsdale also seems unlikely to qualify for submission to the jury. Civil conspiracy requires "two or more persons." *Citizens State Bank*, 603 P.2d at 613. Without a viable conspiracy claim against Pinnacle this element would be missing. *See Pepsi-Cola*

*Bottling Co.*, 431 F.3d at 1268 (concluding civil conspiracy claim failed as a matter of law because "two parties are needed to engage in a civil conspiracy"). But, on the current record, the civil conspiracy claims remain in the case.

In sum, the court predicts the civil conspiracy claims are unlikely to survive a motion for judgment as a matter of law. But, because these claims were not taken up in the motion to reconsider they remain in the case at this time. And, based on this prediction, the court, on a high level, agrees that evidence purporting to show Pinnacle is liable for conversion or civil conspiracy is unlikely to be relevant. But, because Pinnacle's motion does not pinpoint which evidence it seeks to exclude, the court is unwilling to exclude evidence based on a broad reference to evidence surrounding these claims. The court thus denies Pinnacle's motion in this respect. Instead, the court will determine at trial upon an objection whether plaintiff's evidence is probative to remaining claims or crosses the line into inadmissible evidence solely based on claims that properly have been determined to fail as a matter of law.

### *Unjust Enrichment and the Pretrial Order*

Pinnacle's motion asserts that plaintiff has not alleged an unjust enrichment claim against it in the Pretrial Order, so no unjust enrichment claim remains in this case. Plaintiff argues Pinnacle moved for summary judgment on this claim after the date of the Pretrial Order and so the Pretrial Order should not control the case. Instead, plaintiff contends, the parties briefed the unjust enrichment claim at summary judgment, the court denied Pinnacle's motion on this claim, and now it should be a part of the trial. Plaintiff's unjust enrichment claim asserts Pinnacle kept Mr. Leonard's account open to continue to collect fees—*i.e.*, it was unjustly enriched by using Dinsdale's wire to keep the account open. *See* Doc. 125 at 33–35.

"[A] pretrial order defines the scope of an action for trial . . . ." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1220 (10th Cir. 2000); *see also Sunderman v. Westar Energy, Inc.*, 520 F. Supp. 2d 1269, 1278 (D. Kan. 2007) ("The pretrial order is the controlling document for trial. . . . Claims not included in the pretrial order are waived."); *McCain Foods USA, Inc. v. Central Processors, Inc.*, 61 P.3d 68, 80 (Kan. 2002) ("The pretrial order . . . controls the course of the action unless modified to prevent manifest injustice. An issue or claim for relief that is not contained in the pretrial order should not be entertained by the trial court."). Fed. R. Civ. P. 16(d) provides the Pretrial Order "controls the course of the action unless the court modifies it." And, under Fed. R. Civ. P. 16(e), the "court may modify the order issued after a final pretrial conference only to prevent manifest injustice."

But, while the Pretrial Order should be adhered to, it also "'should be liberally construed to cover any of the legal or factual theories that might be embraced by [its] language.'" *Koch*, 203 F.3d at 1220–21 (quoting *Trujillo v. Uniroyal Corp.*, 608 F.3d 815, 818 (10th Cir. 1979); *see also In re Cessna 208 Series Aircraft Prod. Liab. Litig.*, No. 05-md-1721-KHV, 2009 WL 1247096, at *3 (D. Kan. May 5, 2009). "The decision to exclude facts or issues as not found in the pretrial order is committed to the trial court's sound discretion." *Lewis v. Glickman*, No. 98-4154-SAC, 2000 WL 1863407, at *1 (D. Kan. Nov. 1, 2000). The court thus considers whether the unjust enrichment claim against Pinnacle has been waived or if it should continue to trial. *See* Koch, 203 F.3d at 1222 (interpreting plaintiff's arguments opposing defendant's assertion in a motion in limine that an issue was not in the pretrial order as the equivalent of a motion to amend by plaintiff).

Here, the court finds the Pretrial Order, liberally construed, is broad enough to support an unjust enrichment claim against Pinnacle. And, the court finds allowing the unjust enrichment

claim is justified. Pinnacle clearly was on notice of the unjust enrichment claim despite it not being included in the "legal claims of plaintiff" section of the Pretrial Order. *See Lewis*, 2000 WL 1863407, at *3 (explaining "[i]n construing pretrial orders, the court pays more attention to substance than to form" and considering whether the government was on notice of the claims against it). In plaintiff's factual contentions in the Pretrial Order, plaintiff asserted that "Pinnacle used the money specifically intended for [plaintiff] to keep Leonard's checking account afloat for yet another week." Doc. 101 at 5. And, in Pinnacle's contentions, it agreed that it "did charge ordinary wire fees and NSF check fees" totaling $231 during the period from when the Dinsdale wire was deposited and when plaintiff's check was returned for insufficient funds. *Id.* at 10. Pinnacle also included as a defense that it "has no liability . . . on an unjust enrichment claim." *Id.* at 13. Then, Pinnacle moved for summary judgment against this claim, which the court denied. *See* Doc. 125 at 33–35. When it filed a motion for reconsideration, Pinnacle did not ask the court to reconsider this conclusion. *See* Docs. 127, 128. The court thus concludes the unjust enrichment claim against Pinnacle remains for trial.

### iv. Financial Condition

Finally, Pinnacle moves the court to exclude evidence about its financial condition or ability to pay alleged punitive damages. Pinnacle asserts this evidence is irrelevant and highly prejudicial. Plaintiff opposes this portion of Pinnacle's motion, arguing Pinnacle is improperly seeking a summary judgment ruling on a motion in limine. Plaintiff again argues that the conversion claim against Dinsdale supports its civil conspiracy claim against both defendants. And it relies on this civil conspiracy claim to support its request for punitive damages against Pinnacle.

As discussed at the pretrial conference, the court has decided to bifurcate the trial into two phases—a liability phase and a damages phase. *See* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite or economize, the court may order a separate trial of one or more separate issues."). The court finds expedition and economy would be served in this trial by trying these issues separately.

However, the court predicts these bifurcated phases will not affect Pinnacle. The court has summarized, above, how the civil conspiracy claim against Pinnacle is likely to fail as a matter of law at trial now that the conversion claim against Pinnacle is no more. Plaintiff has not identified any Kansas cases to the contrary. But, the court agrees with plaintiff—the issue is not properly before the court at this time. The court considers the punitive damages request in light of this prediction below, but rules only the motion in limine.

"In diversity cases, state law governs the substantive elements upon which a punitive damages award may be based. In Kansas, a plaintiff may recover damages if he or she proves by clear and convincing evidence that the defendant acted with willful conduct, wanton conduct, fraud, or malice." *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1200 (10th Cir. 2012) (internal citations and quotations omitted). "In the absence of a tort, there can be no claim for punitive damages." *Kirk v. Nat'l Carriers, Inc.*, No. Civ.A. 05-1199MLB, 2006 WL 618136, at *5 (D. Kan. Mar. 10, 2006); *see also Zurn Constructors, Inc. v. B.F. Goodrich Co.*, 746 F. Supp. 1051, 1057 (D. Kan. 1990) ("It is undisputed that, under Kanas law, punitive damages may not be recovered under a breach of contract claim . . . unless the plaintiff pleads and proves an independent tortious act causing additional injury."); *Farrell v. Gen. Motors Corp.*, 815 P.2d 538, 549 (Kan. 1991) ("Breach of contract, standing alone, does not call for punitive damages even if the breach is intentional and unjustified, but such damages are allowable if there is some

16

independent tort present. Having held there is no conversion, there is no tort for punitive damages to be based on." (internal citation omitted)). "The proper measure of damages for unjust enrichment is restitution of the value of the benefit conferred upon the defendant." *Estate of Hetrick ex rel. Hetrick v. Cessna Aircraft Co.*, No. 99,987, 2009 WL 1692025, at *6 (Kan. Ct. App. June 12, 2009); *see also Walsh v. Weber*, No. 113,972, 2014 WL 4750102, at *23–25 (Kan. Ct. App. Sept. 9, 2016); *Ball v. Credit Bureau Servs., Inc.*, No. 111,144, 2015 WL 4366440, at *3 (Kan. Ct. App. June 26, 2015).

If the conversion and civil conspiracy claims against Pinnacle are determined to fail as a matter of law at trial, no legal basis will exist to support a punitive damages submission against Pinnacle. *See* Doc. 125 at 35–37 (discussing in summary judgment order how plaintiff's punitive damages claim was premised on its conversion claim against Pinnacle, and that plaintiff must show defendant acted with willful conduct, wanton conduct, fraud or malice to support a claim against defendant for punitive damages). At present though, the civil conspiracy claim remains and consequently a tort exists on which punitive damages could be based. The court thus grants in part and denies in part Pinnacle's motion to exclude evidence about its financial condition or ability to pay alleged punitive damages. The court will bifurcate the liability and damages phases of trial, and evidence on Pinnacle's financial condition or ability to pay alleged punitive damages will be excluded unless and until the second phase is reached.

**IT IS THEREFORE ORDERED THAT** plaintiff's Motion in Limine to Exclude Testimony of John Barthel (Doc. 175) is granted.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion in Limine to Exclude Evidence Regarding Collateral Source Payment by Other Rezac Entities (Doc. 176) is granted.

**IT IS FURTHER ORDERED THAT** defendant Dinsdale's Motion in Limine to Exclude Evidence of Direct Payment Measure (Doc. 170) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** defendant Dinsdale's Motion in Limine to Exclude Evidence of Unrelated Dealings (Doc. 172) is denied.

**IT IS FURTHER ORDERED THAT** defendant Pinnacle's Motion in Limine (Doc. 178) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 23rd day of December, 2019, at Kansas City, Kansas.**

                                      **s/ Daniel D. Crabtree**
                                      **Daniel D. Crabtree**
                                      **United States District Judge**